UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHRISTOPHER UNDERWOOD, LOUIS OBERLANDER, and ZENEYDA PATIN on behalf of themselves and all others similarly situated,<br><br>              Plaintiffs,<br><br>      v.<br><br>COINBASE GLOBAL, INC.,<br><br>              Defendant. | Case No. 1:21-cv-08353-PAE |

**LOUIS OBERLANDER, HENRY RODRIGUEZ, AND CHRISTOPHER UNDERWOOD'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR APPOINTMENT AS LEAD PLAINTIFFS AND APPROVAL OF SILVER GOLUB & TEITELL LLP AND SELENDY & GAY PLLC AS CO-LEAD COUNSEL**

Steven L. Bloch
Ian W. Sloss
SILVER GOLUB & TEITELL LLP
184 Atlantic Street
Stamford, CT 06901
Tel: 203-325-4491
isloss@sgtlaw.com
sbloch@sgtlaw.com

Jordan A. Goldstein
Mitchell Nobel
SELENDY & GAY, PLLC
1290 Avenue of the Americas
New York, NY 10104
Tel: 212-390-9000
jgoldstein@selendygay.com
mnobel@selendygay.com

*Attorneys for Louis Oberlander, Henry Rodriguez, and Christopher Underwood*

# **TABLE OF CONTENTS**

**Pages**

INTRODUCTION ...................................................................................................................1

SUMMARY OF ACTION.....................................................................................................3

PROCEDURAL BACKGROUND.........................................................................................4

ARGUMENT..........................................................................................................................4

I.      Oberlander, Rodriguez, and Underwood Should Be Appointed Lead Plaintiffs.................4

      A.      Oberlander, Rodriguez, and Underwood Have Timely Filed a Motion to Be Appointed Lead Plaintiffs' ................................................................5

      B.      Oberlander, Rodriguez, and Underwood Have Extensive Financial Interests ........................................................................................................6

      C.      Oberlander, Rodriguez, and Underwood Satisfy the Typicality and Adequacy Requirements of Rule 23 .....................................................................8

            1.      Oberlander, Rodriguez and Underwood's Claims Are Typical...................9

            2.      Oberlander, Rodriguez, and Underwood Will Fairly and Adequately Protect the Interests of the Class ...........................................10

II.      SGT and Selendy & Gay Should Be Approved as Co-Lead Counsel ...............................11

CONCLUSION................................................................................................................15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Aratana Therapeutics Inc. Sec. Litig.*,
  17-cv-1446-PAE, 2017 WL 2491494 (S.D.N.Y. June 6, 2017) ........................................6, 9, 10

*Balestra v. ATBCOIN*,
  380 F. Supp. 3d 340 (S.D.N.Y. 2019).................................................................................8, 9

*Batter v. Hecla Mining Co.*,
  19-cv-05719-ALC, 2020 WL 1444934, (S.D.N.Y. Mar. 25, 2020), *reconsideration denied sub nom. Batte v. Hecla Mining Co.*, 19-cv-4883-ALC, 2021 WL 516546 (S.D.N.Y. Feb. 11, 2021) ...............................................................................................................................11

*Bo Young Cha v. Kinross Gold Corp.*,
  12-cv-1203-PAE, 2012 WL 2025850 (S.D.N.Y. May 31, 2012) ...............................................6

*In re EpiPen Direct Purchaser Litigation*,
  No. 20-cv-00827 (D. Minn. Jan. 15, 2021)..............................................................................12

*Foley v. Transocean Ltd.*,
  272 F.R.D. 126 (S.D.N.Y. 2011) .............................................................................................12

*Jakobsen v. Aphria, Inc.*,
  2019 WL 1522598 (S.D.N.Y. Mar. 27, 2019) .........................................................................11

*Khunt v. Alibaba Grp. Holding Ltd.*,
  102 F. Supp. 3d 523 (S.D.N.Y. 2015)......................................................................................11

*Kuebler v. Vectren Corp.*,
  2018 WL 8370052 (S.D. Ind. Aug. 10, 2018) ...........................................................................5

*Kux-Kardos v. VimpelCom, Ltd.*,
  151 F. Supp. 3d 471 (S.D.N.Y. 2016)......................................................................................11

*Lax v. First Merchants Acceptance Corp.*,
  97-cv-2715-DHC, 1997 WL 461036 (N.D. Ill. Aug. 11, 1997) ................................................6

*Salinger v. Sarepta Therapeutics, Inc.*,
  19-cv-8122-VSB, 2019 WL 6873807 (S.D.N.Y. Dec. 17, 2019)..................................4, 5, 8, 9

*Sgalambo v. McKenzie*,
  268 F.R.D. 170 (S.D.N.Y. 2010) ..........................................................................................9, 10

*Freeman ex rel. Tesla, Inc. v. Musk*,
  324 F.R.D. 73 (D. Del. 2018) ....................................................................................................5

**Statutes**

15 U.S.C. § 77z-1 ...................................................................................................................1, 4

15 U.S.C. § 78cc .........................................................................................................................3, 9

15 U.S.C. § 78e ...........................................................................................................................3, 9

15 U.S.C. § 78o ...........................................................................................................................3, 9

15 U.S.C. § 78u-4 ....................................................................................................................1, 2, 4

Cal. Corp. Code § 25501.5(a) ........................................................................................................4

Fla. Stat. § 517.2111 ......................................................................................................................4

**Other Authorities**

Fed. R. Civ. P. 23 .................................................................................................................. *passim*

Pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. §§ 77z-1(a)(3)(B)(i), 78u-4(a)(3)(B)(i), Louis Oberlander ("Oberlander"), Henry Rodriguez ("Rodriguez"), and Christopher Underwood ("Underwood") respectfully submit this memorandum of law in support of their motion for appointment as lead plaintiffs and approval of their selection of Silver Golub & Teitell LLP ("SGT") and Selendy & Gay, PLLC ("Selendy & Gay," and together with SGT, "Counsel") as co-lead counsel (the "Motion").

## INTRODUCTION

This case is a securities class action against Coinbase Global, Inc. ("Coinbase" or "Defendant") based on its unlawful sale of digital tokens that are securities. Coinbase operates a digital platform on which customers can buy and sell securities, but Coinbase is not registered with the U.S. Securities Commission as an exchange or broker-dealer. Oberlander and Underwood brought the complaint in this action, which is the first-filed complaint concerning this subject matter, on behalf of a proposed class consisting of all persons or entities in the United States who, from the beginning of any applicable limitations period through the date of certification (the "Class Period"), purchased, sold, or otherwise transacted in securities on the Coinbase Digital Asset Platforms (the "Class"). The named plaintiffs presently seek to represent two subclasses. The first subclass (the "Florida Subclass") consists of persons or entities who were or are citizens of the State of Florida who, during the Class Period, purchased, sold, or otherwise transacted in securities on the Coinbase Digital Asset Platforms. The second subclass (the "California Subclass") consists of all persons or entities who were or are citizens of the State of California who, during the Class

Period, purchased, sold, or otherwise transacted in securities on the Coinbase Digital Asset Platforms.[1]

The PSLRA directs the Court to appoint as lead plaintiff the class member the Court "determines to be most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). Under the applicable standards, Oberlander, Rodriguez, and Underwood are the "most adequate plaintiff[s]" to represent the Class. *See id.* § 78u-4(a)(3)(B)(iii).

Oberlander, Rodriguez, and Underwood timely filed the Motion, have substantial financial interests in this action, and satisfy the typicality and adequacy factors under Rule 23 of the Federal Rules of Civil Procedure. Oberlander, Rodriguez, and Underwood will fairly and adequately protect the Class's interests by prosecuting this litigation and seeking the fullest recovery for the Class, and they are not subject to unique defenses that would render them incapable lead plaintiffs. Oberlander, Rodriguez, and Underwood have also selected qualified, experienced counsel—SGT and Selendy & Gay—who will provide the Class the highest caliber representation against this sophisticated defendant. For these reasons, Oberlander, Rodriguez, and Underwood respectfully request that the Court: (a) appoint Louis Oberlander, Henry Rodriguez, and Christopher Underwood as lead plaintiffs; and (b) approve their selection of SGT and Selendy & Gay as co-lead counsel.

---

[1] If appointed lead plaintiffs, Plaintiffs will add a third subclass to represent persons or entities who were or are citizens of the State of New Jersey who, during the Class Period, purchased, sold, or otherwise transacted in securities on the Coinbase Digital Asset Platforms.

## SUMMARY OF ACTION

This case concerns the sale of crypto-assets, which are digital assets that rely on the blockchain. ECF No. 1 at ¶ 12. The blockchain is a digital ledger of transactions that allows for the secure transfer of digital assets between users across the internet. *Id.* ¶¶ 12–15.

Coinbase operates two digital asset platforms, sometimes referred to as a "crypto-exchanges": Coinbase and Coinbase Pro. *Id.* ¶ 2. Each of these platforms enables customers to buy and sell crypto-assets. *Id.* ¶ 3.

Among the crypto-assets traded on Coinbase are digital tokens that are also securities, as defined by federal and state securities laws. These tokens are securities because they represent the investment of money in a common enterprise with a reasonable expectation of profits to be derived from the efforts of others. Moreover, digital tokens such as the securities bought and sold on Coinbase are offered through a centralized process, in contrast to decentralized crypto-commodities such as Bitcoin and Ethereum.

Coinbase lists a large number of tokens that constitute securities. *Id.* ¶¶ 56–71. Coinbase profits from the sale of each token by charging fees on the Coinbase platform, *id.* ¶¶ 26–32, and by charging membership fees and transaction fees on the Coinbase Pro platform, *id.* ¶¶ 31–37.

Coinbase's listing and sale of these tokens violate federal and state securities laws. *First*, Coinbase violated Section 5 of the Securities Exchange Act of 1934 ("Exchange Act") because it failed to register with the U.S. Securities and Exchange Commission ("SEC") as an exchange selling securities to the public. *Id.* ¶¶ 268–276 (citing 15 U.S.C. §§ 78e, 78cc). *Second*, Coinbase violated Section 15 of the Exchange Act because it operated as a broker-dealer of these securities without registering as a lawful exchange with the SEC. *Id.* ¶¶ 277–286 (citing 15 U.S.C. §§ 78o, 78cc). Under Section 29(b) of the Exchange Act, these violations entitle purchasers to rescind their unlawful trades. *See id.* ¶¶ 268–86. *Finally*, Coinbase violated state laws by selling securities and

transacting as an unregistered broker-dealer. *See, e.g.*, *id.* ¶¶ 287–301 (citing Cal. Corp. Code § 25501.5(a); Fla. Stat. § 517.2111).

## PROCEDURAL BACKGROUND

On October 8, 2021, Oberlander and Underwood filed the Complaint against Defendant, which was the first-filed complaint alleging the claims described therein. ECF No. 1. On October 13, SGT published the requisite PSLRA notice through PR Newswire. Declaration of Steven L. Bloch ("Bloch Decl."), Ex. A (PSLRA Notice). On October 13, 2021, Counsel effected service of process on Defendant. ECF No. 5.

On December 13, 2021, Oberlander and Underwood, joined by Rodriguez, timely filed this Motion seeking appointment as lead plaintiffs and approval of SGT and Selendy & Gay as co-lead counsel.

## ARGUMENT

**I.     Oberlander, Rodriguez, and Underwood Should Be Appointed Lead Plaintiffs**

The PSLRA provides that the Court shall adopt a presumption that the most adequate plaintiff is the person or group of persons that:

> (aa) has either filed the complaint or made a motion in response to a notice . . .;
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. §§ 77z-1(a)(3)(B)(iii), 78u-4(a)(3)(B)(iii). Accordingly, "[i]f a movant satisfies the three statutory factors—making a timely motion, demonstrating the largest financial interest, and otherwise satisfying Rule 23—then the court shall adopt a presumption that the movant is the most adequate plaintiff." *Salinger v. Sarepta Therapeutics, Inc.*, 19-cv-8122-VSB, 2019 WL 6873807,

at *3 (S.D.N.Y. Dec. 17, 2019) (internal quotation marks omitted). "[O]ther members of the purported class may try to rebut the statutory presumption by showing that the presumptive lead plaintiff will not fairly and adequately protect the interests of the class or is incapable of adequately representing the class because of 'unique defenses.'" *Id.* (internal quotations marks omitted).

As shown below, Oberlander, Rodriguez, and Underwood satisfy each requirement. Oberlander and Underwood filed the Complaint, and all three plaintiffs have timely moved for leave to be appointed lead plaintiffs, have the largest financial interest, and satisfy the applicable Rule 23 factors.

### A. Oberlander, Rodriguez, and Underwood Have Timely Filed a Motion to Be Appointed Lead Plaintiffs'

On October 8, 2021, Plaintiffs Oberlander and Underwood, through their undersigned counsel SGT, filed the Complaint. It is the only Complaint that has been filed concerning this matter. On October 13, 2021, Plaintiffs caused to be published the requisite PSLRA notice through PR Newswire. Bloch Decl., Ex. A (PSLRA Notice). On December 13, 2021, Oberlander, Rodriguez, and Underwood timely filed this Motion seeking appointment as lead plaintiffs and approval of SGT and Selendy & Gay as co-lead counsel.

Although not dispositive, Plaintiffs Oberlander and Underwood's first-to-file Complaint status should be accorded weight where no other complaint has been filed and the claims were the product of substantial investigation, as they were here. *See Kuebler v. Vectren Corp.*, 2018 WL 8370052, at *2 (S.D. Ind. Aug. 10, 2018) (proposed lead plaintiff group "vigorously prosecuted the interests of the class: it was the first to file a complaint, publish the necessary notice, and move for a preliminary injunction," which was "enough to show that the [plaintiff group] has satisfied the threshold requirements of Rule 23"); *Freeman ex rel. Tesla, Inc. v. Musk*, 324 F.R.D. 73, 84-85 (D. Del. 2018) (where proposed lead plaintiffs "were the first to 'identify, draft, and file [the]

5

federal claims,"' court observed that such "efforts to identify and bring these federal claims says something about the work that they are willing to put in to seek legal redress on behalf of the corporation and its shareholders"). Here, the undersigned SGT counsel invested substantial time in bringing the instant claims through the filing of the Complaint.

### B. Oberlander, Rodriguez, and Underwood Have Extensive Financial Interests

The PSLRA does not specify a method for calculating who has the "largest financial interest," but courts in this District commonly look to the four factors set forth in *Lax v. First Merchants Acceptance Corp.*, 97-cv-2715-DHC, 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997), in making this determination: "(1) the total number of shares purchased during the class period; (2) the net shares purchased during the class period (in other words, the difference between the number of shares purchased and the number of shares sold during the class period); (3) the net funds expended during the class period (in other words, the difference between the amount spent to purchase shares and the amount received for the sale of shares during the class period); and (4) the approximate losses suffered." *In re Aratana Therapeutics Inc. Sec. Litig.*, 17-cv-1446-PAE, 2017 WL 2491494, at *3 (S.D.N.Y. June 6, 2017). Courts have "consistently held that the fourth, the magnitude of the loss suffered, is most significant." *Id.*

Under all of these factors, Oberlander, Rodriguez, and Underwood have extensive financial interests in this litigation.[2] *First*, as their certifications reveal, each of them purchased a substantial number of shares. Rodriguez purchased 5,648,179,943.80 tokens. Goldstein Decl. Ex. B-1.

---

[2] All calculations referenced herein were made using the "Last-In-First-Out" method of accounting. *See Bo Young Cha v. Kinross Gold Corp.*, 12-cv-1203-PAE, 2012 WL 2025850, at *3 (S.D.N.Y. May 31, 2012) (recognizing that "the overwhelming trend both in this district and nationwide has been to use LIFO to calculate" PSLRA losses). These calculations do not include transactions in the following digital assets, which are not alleged in the Complaint to be securities: Bitcoin, Bitcoin Cash, Ethereum, Ethereum Classic, and Litecoin.

Oberlander purchased 820,407,570.97 tokens. Goldstein Decl. Ex. A-1. And Underwood purchased 267,177,503.14 tokens. Goldstein Decl. Ex. C-1.

*Second*, Rodriguez sold 5,644,139,420.40 of the tokens he purchased on Coinbase and Coinbase Pro, meaning his net purchase was 4,040,517.81 tokens. Ex. B-1. Oberlander sold 814,708,405.84 of the tokens he purchased on Coinbase and Coinbase Pro, meaning his net purchase was 5,699,165.13 tokens. Ex. A-1. And Underwood sold 266,667,784.41 of the tokens he purchased on Coinbase, meaning his net purchase was 509,718.74 tokens. Ex. C-1.

*Third*, each plaintiff expended substantial funds on purchases of tokens on Coinbase. Rodriguez expended $222,981.01. Ex. B-1. Oberlander expended $24,707.04. Ex. A-1. And Underwood expended $10,895.96. Ex. C-1 (Underwood summary chart).

*Fourth*, aggregating all the tokens he traded on Coinbase and Coinbase Pro, Rodriguez suffered a net realized loss of $221,023.59. Ex. B-1. Oberlander suffered a net realized loss of $4,088.87. Ex. A-1. Underwood suffered a net realized loss of $10,220.19. Ex. C-1.[3]

*Finally*, these three plaintiffs transacted in 91 unique tokens on Coinbase during the Class Period, including the 72 tokens that are enumerated in the Complaint. Specifically, Rodriguez transacted in 30 distinct tokens on Coinbase and Coinbase Pro, Ex. B-1; Oberlander transacted in 69 distinct tokens on Coinbase and Coinbase Pro, Ex. A-1; and Underwood transacted in 58 distinct tokens on Coinbase, Ex. C-1.

Of the 30 distinct tokens that Rodriguez traded on Coinbase and Coinbase Pro, he suffered net losses in 16 of them, which aggregates to $186,930.60 in realized losses and $7,058.80 in

---

[3] For avoidance of doubt, the calculation of these loss amounts is made without prejudice towards Plaintiffs' ultimate ability to seek statutory damages in excess of their losses.

7

unrealized losses with respect to those 16 tokens.[4] Ex. B-1. Of the 69 distinct tokens that Oberlander traded on Coinbase and Coinbase Pro, he suffered net losses in 28 of them, which aggregates to $4,026.34 in realized losses and $2,395.82 in unrealized losses with respect to those 28 tokens.[5] Ex. A-1. Of the 58 distinct tokens that Underwood traded on Coinbase, he suffered net losses in 22 of them, which aggregates to $15,071.08 in realized losses and $2,148.67 in unrealized losses with respect to those 22 tokens.[6] Ex. C-1.

Oberlander, Rodriguez, and Underwood are unaware of any lead plaintiff movant with a greater loss <u>or</u> with standing to bring claims as to a greater number of tokens, and thereby benefit the greatest number of Class members. See *Balestra v. ATBCOIN*, 380 F. Supp. 3d 340, 361 (S.D.N.Y. 2019) (appointing lead plaintiff who "had incurred losses of approximately $1,422.99 in connection with his purchase of ATB Coins during the Class Period ... has the largest financial interest of any class member seeking appointment as lead plaintiff, and ... is aware of no other class member with a larger financial interest").

### C. Oberlander, Rodriguez, and Underwood Satisfy the Typicality and Adequacy Requirements of Rule 23

"In making the determination of whether a movant otherwise satisfies the requirements of Rule 23, the movant must make a preliminary showing that it satisfies the typicality and adequacy requirements of Rule 23." *Salinger*, 2019 WL 6873807, at *3 (internal quotation marks omitted).

---

[4] Specifically, Rodriguez had net losses in the following 16 tokens: ACH, AGLD, AUCTION, CLV, DASH, FARM, GRT, GTC, ICP, LINK, NKN, SNKZ, TRIBE, USDC, XTZ, and YFI.

[5] Specifically, Oberlander had net losses in the following 28 tokens:1Inch, AAVE, AVAX, BAT, COMP, CTSI, CVC, DAI, DASH, FIL, ICP, LRC, MKR, MLN, NKN, OGN, PAINT, REN, RLC, STORJ, TRB, UMA, UNI, USDC, USDT, XLM, YFI, and ZEC.

[6] Specifically, Underwood had net losses in the following 22 tokens: ACH, AMP, ANKR, ARPA, BAND, BTRST, CGLD, CRV, DOGE, FARM, IOTX, LRC, NKN, NU, QUICK, RARI, SHIB, SKL, STORJ, USDT, XLM, and XYO.

*"This determination need not be as complete as would a similar determination for the purpose of class certification, and the movant is only required to make a *prima facie* showing that it meets the typicality and adequacy requirements."* *Id.* (citations and internal quotation marks omitted).

### 1.     Oberlander, Rodriguez and Underwood's Claims Are Typical

Rule 23(a)(3) requires that the claims or defenses of the representative party be typical of those of the class. This is satisfied where "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Aratana*, 2017 WL 2491494, at *4 (quoting *Sgalambo v. McKenzie*, 268 F.R.D. 170, 173–74 (S.D.N.Y. 2010)). "While the claims need not be identical, the claims of the proposed lead plaintiff must be substantially similar to the other members' claims." *Balestra*, 380 F. Supp. 3d at 362.

Oberlander, Rodriguez, and Underwood satisfy this requirement. Like every member of the Class, Oberlander, Rodriguez, and Underwood seek to recover under the federal securities laws for losses on investments in digital assets resulting from Defendants' unregistered sale of securities. Specifically, Oberlander, Rodriguez, and Underwood have claims against Defendants under Sections 5, 15(a)(1), and 29(b) of the Exchange Act (Counts I and II, ECF No. 1 ¶¶ 269–76, 278–86). Oberlander and Underwood also possess claims under California and Florida law, respectively (*e.g.*, Counts III and IV, ECF No. 1 ¶¶ 289–93, 296–301). (In addition, Rodriguez has similar claims under New Jersey law, which he intends to assert in an amended complaint.)

Oberlander, Rodriguez, and Underwood purchased digital asset securities on the Coinbase exchanges during the Class Period, and Defendants brokered, dealt, and sold those digital asset securities to Oberlander, Rodriguez, and Underwood without having registered Coinbase as an exchange or as a broker or a dealer, as required under federal and state securities laws. ECF No. 1 ¶¶ 53–70, 268–301. Because of that conduct, Oberlander, Rodriguez, and Underwood, like every

9

member of the Class, are entitled to obtain rescission for the securities they purchased on Coinbase and still hold, or for damages for such securities previously sold. *Id.* ¶¶ 276, 286, 293, 301. Oberlander, Rodriguez, and Underwood's claims are typical of those of the Class. *Id.* ¶ 262.

Oberlander and Rodriguez have the additional advantage that they each transacted on both Coinbase and Coinbase Pro. While both of these exchanges are unregistered, it is conceivable that Defendant may argue that different legal arguments apply to each exchange. As a result, the presence of named plaintiffs who transacted on both platforms ensures that there is a class representative with claims typical of users of each platform.

### 2. Oberlander, Rodriguez, and Underwood Will Fairly and Adequately Protect the Interests of the Class

A lead plaintiff is adequate when it "does not have interests that are antagonistic to the class that he seeks to represent and has retained counsel that is capable and qualified to vigorously represent the interests of the class that he seeks to represent." *Aratana*, 2017 WL 2491494, at *4 (S.D.N.Y. June 6, 2017) (quoting *Sgalambo*, 268 F.R.D. at 173). In considering the adequacy of a proposed lead plaintiff, a court must consider whether the proposed lead plaintiff: (1) maintains claims that conflict with those of the class; (2) has sufficient interest in the outcome of the case; and (3) has selected counsel that is qualified, experienced, and generally able to conduct the litigation in question." *Sarepta Therapeutics*, 2019 WL 6873807, at *3.

Each factor confirms the adequacy of Oberlander, Rodriguez, and Underwood. *First*, Oberlander, Rodriguez, and Underwood have no conflict with the Class. They purchased the digital assets that Defendants offered and sold on Coinbase. Members of the Class have identical claims based on purchases of securities on the Coinbase exchanges. Therefore, the interests of Oberlander, Rodriguez, and Underwood are directly aligned with, and not antagonistic to, those of the Class.

*Second*, Oberlander, Rodriguez, and Underwood have a sufficient interest in the case's outcome. Rodriguez, Underwood, and Oberlander have suffered $221,023.59, $10,220.19, and $4,088.87 in realized damages during that period, all caused by Defendants' maintenance of Coinbase and brokering, dealing, offering, and selling securities on the Coinbase exchanges. Because of those substantial losses, Oberlander, Rodriguez, and Underwood are each motivated to maximize the Class's recovery and will work closely together to achieve that end.

*Finally*, Oberlander, Rodriguez, and Underwood have chosen counsel who are qualified, experienced, and able to conduct this litigation efficiently and effectively, without duplicating work. As addressed more fully below, Counsel are ready, willing, and able to provide the Class with stellar legal representation.

In sum, Oberlander, Rodriguez, and Underwood have the incentives, willingness, and abilities to prosecute the claims in the interests of the Class. Thus, they have demonstrated their adequacy under Rule 23. *See Jakobsen v. Aphria, Inc.*, 2019 WL 1522598, at *5 (S.D.N.Y. Mar. 27, 2019) ("It also appears that [the movant] will fairly and adequately represent the proposed class because he has selected qualified and experienced counsel, there is no known conflict between him and the other putative members of the class, and his significant financial losses ensure that he will vigorously prosecute this case.").

## II.   SGT and Selendy & Gay Should Be Approved as Co-Lead Counsel

"The PSLRA vests authority in the lead plaintiff to select lead counsel, subject to approval by the Court." *Batter v. Hecla Mining Co.*, 19-cv-05719-ALC, 2020 WL 1444934, at *9 (S.D.N.Y. Mar. 25, 2020), *reconsideration denied sub nom. Batte v. Hecla Mining Co.*, 19-cv-4883-ALC, 2021 WL 516546 (S.D.N.Y. Feb. 11, 2021) (quoting *Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 540 (S.D.N.Y. 2015. Courts approve the selection of counsel who are "qualified, experienced, and generally able to conduct the litigation." *Kux-Kardos v. VimpelCom, Ltd.*, 151 F.

11

Supp. 3d 471, 477 (S.D.N.Y. 2016) (quoting *Foley v. Transocean Ltd.,* 272 F.R.D. 126, 131 (S.D.N.Y.2011)) (approving firm that "appears to be competent and experienced counsel, based on its past experience in securities fraud class actions").

Silver Golub & Teitell LLP undertook its first class action in 1983, serving as class counsel in an ERISA action that obtained additional pension benefits for more than 40,000 Xerox Corp. pensioners and is well qualified to represent Plaintiffs Underwood, Oberlander, Rodriguez, and the Class here. To date, SGT has recovered billions of dollars in settlements and judgments on behalf of private individuals, corporate whistleblowers, state and local governments, unions, and pensions funds, among others. In 1994 SGT achieved what was then the largest False Claims Act ("FCA") whistleblower award ever recovered in an FCA action against United Technologies Corporation which settled for $150 million. SGT also served as lead private counsel for the State of Connecticut in its action against the tobacco industry, recovering almost $4 billion for the State. This included $350 million awarded by an independent panel of former attorneys general which determined the Connecticut legal teams' contribution ranked in the top five among the 57 states and other entitles involved. More recently, SGT achieved a settlement of over $200 million while serving as court-appointed lead counsel for a class of more than 40,000 unionized employees alleging that the firing of over 3,000 union members violated the union's and its members' First Amendment rights of free speech and free association. *See State Emps. Bargaining Coalition v. Rowland*, No. 03-CV-221 (D. Conn.).

Currently, SGT is part of a committee with court-appointed interim co-lead counsel representing a proposed class of direct purchasers alleging overcharges predicated on inflated prices of EpiPen. *See In re EpiPen Direct Purchaser Litigation,* No. 20-cv-00827 (D. Minn.). On January 15, 2021, the *EpiPen* court "denied in substantial part" Defendants' motions to dismiss,

12

permitting plaintiffs' RICO and antitrust claims to proceed, including novel RICO claims based on state bribery laws and the Federal Anti-Kickback Statute. In addition, SGT currently represents municipal and union retirement funds as representatives of a proposed class of investors in Allianz Global Investors' Structured Alpha suite of hedge funds, alleging losses arising from, *inter alia,* Allianz's negligence and breach of fiduciary duty. In total, investors in Allianz's suite of hedge funds have alleged losses exceeding $5 billion. *See Retirement Program for Employees of the Town of Fairfield, et al. v. Allianz Global Investors U.S. LLC, et al.*, No. 20-cv-5817 (S.D.N.Y.). On September 30, 2021, Judge Failla, granted in part and denied in part Allianz's motion to dismiss, allowing claims of SGT's clients (and the proposed classes) to proceed.[7]

Selendy & Gay is qualified, experienced, and capable of effectively prosecuting this class action on behalf of Underwood, Oberlander, Rodriguez, and the Class.[8] Selendy & Gay has substantial experience in cases involving crypto-assets, complex financial transactions and class actions. Selendy & Gay's attorneys have litigated the entire spectrum of complex financial matters—from residential mortgage-backed securities to reinsurance contracts to credit default swaps—securing trial and appellate victories and numerous favorable settlements for their clients. For example, Selendy & Gay's attorneys have served as class counsel in several high-profile actions, including representing a class of public servants in an action against loan servicer Navient, *Hyland v. Navient Corp.*, No. 1:18-cv-9031-DLC (S.D.N.Y.) (Cote, J.), and having represented the American Federation of Teachers and other investors in a class action against Goldman Sachs,

---

[7] A full description of SGT's current representations in a leadership role are set forth in Exhibit B to the accompanying Declaration of Steven L. Bloch.

[8] A description of S&G's qualifications is set forth at Exhibit D to the accompanying Declaration of Jordan A. Goldstein.

Merrill Lynch, Barclays, Citigroup, and others alleging collusive violations of the Sherman Act arising out of the $13 trillion U.S. Treasuries market, *In re: Treasury Secs. Auction Antitrust Litig.*, No. 1:15-md-02673 (S.D.N.Y.). In the last decade, Selendy & Gay lawyers recovered tens of billions of dollars for their clients.

Selendy & Gay has also been appointed under the PSLRA as interim class co-counsel in multiple matters involving crypto assets in this District. Those cases include *Anderson et al. v. Binance et al.,* No. 1:20-cv-02803-ALC, (S.D.N.Y) (Carter, J.), *Hardin et al. v. Tron et al.,* No. 1:20-cv-02804-VSB (S.D.N.Y.) (Broderick, J.), and *Williams et al. v. KuCoin et al.,* No. 1:20-cv-02806-GBD (S.D.N.Y.) (Daniels, J), all of which, like this action, allege violations of the securities laws based on the sale of unregistered crypto-securities. In addition, as to the *KuCoin* matter, Magistrate Judge Lehrburger has filed a report and recommendation that the proposed class be certified. Selendy and Gay has also been appointed interim class co-counsel for purchasers asserting claims under the Commodity Exchange Act in an action filed in this District against the BitMEX crypto-asset exchange concerning the sale of futures contracts on digital assets. *See Messieh, et al. v. HDR Global Trading Limited, et al.*, No. 20-cv-3232-ALC (S.D.N.Y.) (Carter, J.).

In addition, Selendy & Gay has been appointed as interim class co-counsel in another large crypto-asset class action in this District. *See In re Tether and Bitfinex Crypto Asset Litigation,* No. 1:19-cv-09236-KPF (S.D.N.Y.) (Failla, J.). In that litigation, Selendy & Gay represents the plaintiffs in alleging that Bitfinex, a prominent crypto-exchange, and Tether, a prominent crypto-asset issuer, worked with major crypto-exchanges Bittrex and Poloniex to manipulate the market for crypto-assets in violation of various federal and state laws. On September 28, 2021, the *Tether*

Court denied a motion to dismiss plaintiffs' claims alleging violations of the Sherman Antitrust Act, the Commodity Exchange Act, and common-law fraud.

Accordingly, Oberlander, Rodriguez, and Underwood respectfully submit that Counsel are uniquely qualified to act as co-lead counsel in this litigation and will provide the Class with the highest caliber of representation.

## CONCLUSION

For the above reasons, Oberlander, Rodriguez, and Underwood respectfully request that this Court (i) appoint Oberlander, Rodriguez, and Underwood as Lead Plaintiffs and (ii) approve Oberlander, Rodriguez, and Underwood's choice of counsel as Lead Counsel for the Class.

Dated:  December 13, 2021                                    Respectfully submitted,
         New York, New York

By: */s/ Steven L. Bloch*                          By: */s/ Jordan A. Goldstein*
Steven L. Bloch                                    Jordan A. Goldstein
Ian W. Sloss                                       Mitchell Nobel
SILVER GOLUB & TEITELL LLP                         SELENDY & GAY, PLLC
184 Atlantic Street                                1290 Avenue of the Americas
Stamford, CT 06901                                 New York, NY 10104
Tel: 203-325-4491                                  Tel: 212-390-9000
sbloch@sgtlaw.com                                  jgoldstein@selendygay.com
isloss@sgtlaw.com                                  mnobel@selendygay.com

*Attorneys for Louis Oberlander, Henry Rodriguez, and Christopher Underwood*