UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------

CHRISTOPHER UNDERWOOD et al., *Individually and on Behalf of All Others Similarly Situated*,

          Plaintiffs,

    -v-

COINBASE GLOBAL, INC.,

          Defendant.

21 Civ. 8353 (PAE)

ORDER

------------------------------------------------------------

PAUL A. ENGELMAYER, District Judge:

  This decision appoints lead plaintiffs and counsel in a putative securities class action. On October 8, 2021, plaintiffs Christopher Underwood ("Underwood"), Louis Oberlander ("Oberlander"), and Zeneyda Patin ("Patin") filed this action under federal securities laws on behalf of all persons and entities who have ever purchased, sold, or otherwise transacted in securities on Coinbase Global, Inc.'s ("Coinbase") two digital asset trading platforms. Plaintiffs claim, *inter alia*, that Coinbase's two platforms each qualify as an "exchange" under federal securities laws, but are unregistered as such, and therefore operate in violation of Section 5 of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78a *et seq*. Underwood, Oberlander, and Patin sought to recover the costs and fees associated with their purchases of Digital Asset Securities—orders for digital assets alleged to be "investment contracts, and therefore securities," Dkt. 1 ("Compl.") ¶ 2—on Coinbase's platforms.

  After plaintiffs filed suit, Underwood, Oberlander, and Henry Rodriguez ("Rodriguez") (collectively, "Prospective Lead Plaintiffs") together sought appointment as lead plaintiffs. No other motions for appointment were filed. Prospective Lead Plaintiffs represent that together they had extensive financial interests in tokens purchased on Coinbase platforms and contend

that they are adequate and typical to represent the putative class, as Federal Rule of Civil Procedure 23 requires. Dkt. 17 ("Memo") at 8.

For the reasons that follow, the Court grants the unopposed motion, and appoints (1) Underwood, Oberlander, and Rodriguez as lead plaintiffs; and (2) Silver Golub & Teitell LLP ("SGT") and Selendy & Gay PLLC ("Selendy & Gay") as co-lead counsel.

## I.   Background

### A.   The Complaint's Allegations[1]

Coinbase operates two digital asset platforms, sometimes referred to as a "cryptoexchanges." Compl. ¶ 2. Each platform enables customers to buy and sell crypto-assets. *Id.* ¶ 3. Crypto-assets are digital assets designed to work as mediums of exchange and/or stores of value, and they rely on the blockchain. *Id.* ¶ 12. The blockchain is a digital ledger of transactions that allows for the secure transfer of digital assets between users across the internet. *Id.* ¶¶ 12–15.

Among the crypto-assets traded on Coinbase are digital tokens that are also, allegedly, securities, as defined by federal and state securities laws. Memo at 3. The Prospective Lead Plaintiffs allege that these tokens are securities because they represent the investment of money in a common enterprise with a reasonable expectation of profits to be derived from the efforts of others. *Id.* Moreover, digital tokens such as the securities bought and sold on Coinbase are offered through a centralized process, which plaintiffs allege is in contrast to decentralized cryptocommodities such as Bitcoin and Ethereum. *Id.*

---

[1] The following facts are drawn from the Complaint, Dkt. 1 ("Compl."), and the parties' submissions on the lead plaintiff motion. The Court accepts these facts as true solely for the purpose of resolving this motion.

Coinbase lists a large number of tokens that allegedly constitute securities. Compl. ¶¶ 56–71. Coinbase profits from the sale of each token by charging fees on the Coinbase platform, *id.* ¶¶ 26–32, and by charging membership fees and transaction fees on the Coinbase Pro platform, *id.* ¶¶ 31–37. Prospective Lead Plaintiffs allege that Coinbase's listing and sale of these tokens violate federal and state securities laws in three ways. First, Coinbase violates Section 5 of the Exchange Act because it has failed to register with the U.S. Securities and Exchange Commission ("SEC") as an exchange selling securities to the public. *Id.* ¶¶ 268–76 (citing 15 U.S.C. §§ 78e, 78cc). Second, Coinbase violates Section 15 of the Exchange Act because it operates as a broker-dealer of these securities without registering as a lawful exchange with the SEC. *Id.* ¶¶ 277–286 (citing 15 U.S.C. §§ 78o, 78cc). Under Section 29(b) of the Exchange Act, these violations entitle purchasers to rescind their unlawful trades. *See id.* ¶¶ 268–86. Finally, Coinbase violates state laws by selling securities and transacting as an unregistered broker-dealer. *See, e.g., id.* ¶¶ 287–301 (citing Cal. Corp. Code § 25501.5(a); Fla. Stat. § 517.2111).

### B. Relevant Procedural History

#### 1. The Complaint

On October 8, 2021, Underwood, Oberlander, and Patin filed the Complaint against Coinbase. Dkt. 1. On October 13, 2021, SGT published the requisite Private Securities Litigation Reform Act ("PSLRA") notice of this action through PR Newswire. Dkt. 18 ("Bloch Decl."), Ex. A. *See* 15 U.S.C. § 78u–4(a)(3)(A)(i); *see also, e.g., City of Sunrise Firefighter's Pension Fund v. Citigroup Inc.*, No. 20 Civ. 10360 (AJN), 2021 WL 396343, at *2 (S.D.N.Y. Feb. 4, 2021) ("PR Newswire has been deemed sufficient by numerous courts in the district"). That same day, counsel served the Complaint on Coinbase. Dkt. 5.

### 2. Motions for Appointment of a Lead Plaintiff

On December 13, 2021, the deadline to move for appointment as lead plaintiff, the Prospective Lead Plaintiffs moved to be appointed.[2]  Dkts. 15–19.

## II. Selecting the Lead Plaintiff: The PSLRA Requirements

Motions for appointment of lead plaintiff and approval of lead counsel in putative class actions brought under the securities laws are governed by the PSLRA.  *See In re Millennial Media, Inc. Sec. Litig.*, 87 F. Supp. 3d 563, 568–69 (S.D.N.Y. 2015); *Bo Young Cha v. Kinross Gold Corp.*, No. 12 Civ. 1203 (PAE), 2012 WL 2025850, at *2 (S.D.N.Y. May 31, 2012).  The PSLRA directs the Court to appoint as lead plaintiff the party or parties "most capable of adequately representing the interests of class members."  15 U.S.C. § 78u–4(a)(3)(B)(i).

Under the PSLRA, there is a rebuttable presumption that the most adequate plaintiff is the person or group of persons that: (1) has either "filed the complaint or made a motion in response to a notice," *id.* § 78u–4(a)(3)(B)(iii)(I)(aa); (2) in the determination of the Court, has the "largest financial interest in the relief sought by the class," *id.* § 78u–4(a)(3)(B)(iii)(I)(bb); and (3) satisfies all the requirements of Federal Rule of Civil Procedure 23, which governs class actions, *see id.* § 78u–4(a)(3)(B)(iii)(I)(cc).

As Underwood, Oberlander, and Rodriguez are the only movants who seek appointment as lead plaintiff, the Court will consider only their joint motion for appointment and for appointment of their chosen counsel as lead co-counsel.

---

[2] December 13, 2021 was the deadline because notice of the action was published on October 13, 2021.  *See* 15 U.S.C. § 78u–4(a)(3)(A)(i)(II) ("[N]ot later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.").

### A. Timeliness

The Prospective Lead Plaintiffs satisfy the first requirement, as they timely moved for lead plaintiff status. *See id.* § 78–u4(a)(3)(B)(iii)(I); *City of Monroe Emps. Ret. Sys. v. Hartford Fin. Servs. Grp., Inc.*, 269 F.R.D. 291, 293 (S.D.N.Y. 2010); *supra* n.2.

### B. Financial Interest

In determining who has the largest financial stake in the litigation, courts in this Circuit have traditionally applied a four-factor test, first set forth in *Lax v. First Merchants Acceptance Corp.*, No. 97 Civ. 2715 (DHC), 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997). These *Lax* factors include:

> (1) the total number of shares purchased during the class period;
> (2) the net shares purchased during the class period (in other words, the difference between the number of shares purchased and the number of shares sold during the class period);
> (3) the net funds expended during the class period (in other words, the difference between the amount spent to purchase shares and the amount received for the sale of shares during the class period); and
> (4) the approximate losses suffered.

*City of Monroe*, 269 F.R.D. at 293.

Of these factors, courts have consistently held that the fourth, the magnitude of the loss suffered, is most significant. *See, e.g.*, *Kaplan v. Gelfond*, 240 F.R.D. 88, 93 (S.D.N.Y. 2007) ("Although courts have differed on how much weight to assign to each of the *Lax* factors, we, as have other courts, shall place the most emphasis on the last of the four factors: the approximate loss suffered by the movant."), *reconsidered on other grounds*, *In re IMAX Sec. Litig.*, No. 06 Civ. 6128 (NRB), 2009 WL 1905033 (S.D.N.Y. June 29, 2009); *Bo Young Cha*, 2012 WL 2025850, at *2; *Reimer v. Ambac Fin. Group Inc.*, No. 08 Civ. 411 (NRB), 2008 WL 2073931, at *3 (S.D.N.Y. May 9, 2008); *Bhojwani v. Pistiolis*, No. 06 Civ. 13761 (CM) (KNF), 2007 WL 2197836, at *6–7 (S.D.N.Y. July 31, 2007); *Strougo v. Brantley Capital Corp.*, 243 F.R.D. 100,

104–05 (S.D.N.Y. 2007); *see also Foley v. Transocean Ltd.*, 272 F.R.D. 126, 128 (S.D.N.Y. 2011) ("[I]n determining the largest financial interest, most courts simply determine which potential lead plaintiff has suffered the greatest total losses.") (quotation marks omitted).

Here, the Prospective Lead Plaintiffs adequately represent that they have significant financial interests under each of the four *Lax* factors. First, as their certifications reveal, each purchased a specified number of tokens, which for purposes of this analysis the Court equates to shares. Rodriguez purchased 5,648,179,943.80 tokens. Dkt. 19 ("Goldstein Decl."), Ex. B-1. Oberlander purchased 820,407,570.97 tokens. *Id.*, Ex. A-1. And Underwood purchased 267,177,503.14 tokens. *Id.*, Ex. C-1.

Second, Rodriguez sold 5,644,139,420.40 of the tokens he purchased on Coinbase and Coinbase Pro, meaning his net purchase was 4,040,523.40 tokens.[3] *Id.*, Ex. B-1. Oberlander sold 814,708,405.84 of the tokens he purchased on Coinbase and Coinbase Pro, meaning his net purchase was 5,699,165.13 tokens. *Id.*, Ex. A-1. And Underwood sold 266,667,784.41 of the tokens he purchased on Coinbase, meaning his net purchase was 509,718.74 tokens. *Id.*, Ex. C-1.

Third, each plaintiff expended significant funds on purchases of tokens on Coinbase. Rodriguez expended $222,981.01. *Id.*, Ex. B-1. Oberlander expended $24,707.04. *Id.*, Ex. A-1. And Underwood expended $10,895.96. *Id.*, Ex. C-1.

Fourth, aggregating all the tokens he sold on Coinbase and Coinbase Pro, Rodriguez suffered a net realized loss of $221,023.59. *Id.*, Ex. B-1. Oberlander suffered a net realized loss of $4,088.87. *Id.*, Ex. A-1. Underwood suffered a net realized loss of $10,220.19. *Id.*, Ex. C-1.

---

[3] Rodriguez's Loss Summary chart erroneously states that his net purchase is 4,040,517.81. *See* Dkt. 19, Ex. B-1.

That the Prospective Lead Plaintiffs are a coalition of three individuals does not impair their bid. The PSLRA expressly permits "a group of persons" to be appointed lead plaintiff. 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I). And courts in this District have recognized that a small group may appropriately be appointed lead plaintiff. *See, e.g.*, *Janbary v. Canadian Solar, Inc.*, 272 F.R.D. 112, 119 (S.D.N.Y. 2010) (appointing as lead plaintiff a group of "sophisticated individuals who have demonstrated their intent to participate directly in this litigation and their willingness and ability to serve as class representatives"); *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 391–92 (S.D.N.Y. 2008) ("[I]n this District . . . unrelated investors [may] join together as a group seeking lead-plaintiff status on a case-by-case basis, if such a grouping would best serve the class."); *but see Goldberger v. PXRE Gr., Ltd.*, 06 Civ. 3410 (KMK), 2007 WL 980417, at *3–5 (S.D.N.Y. Mar. 30, 2007) (declining to appoint a group of seven individual investors as lead plaintiff notwithstanding that, in the aggregate, the group had the largest financial interest in action).

To ascertain whether a lead plaintiff group is appropriate, courts generally consider three factors: "(1) the size of the group; (2) the relationship between the parties; and (3) any evidence that the group was formed in bad faith." *Peters v. Jinkosolar Holding Co.*, No. 11 Civ. 7133 (JPO), 2012 WL 946875, at *7 (S.D.N.Y. Mar. 19, 2012); *see also Varghese,* 589 F. Supp. 2d at 392 (describing factors as "(1) the existence of a pre-litigation relationship between group members; (2) involvement of the group members in the litigation thus far; (3) plans for cooperation; (4) the sophistication of its members; and (5) whether the members chose outside counsel, and not vice versa").

By those standards, the Prospective Lead Plaintiffs qualify for group appointment. First, the group is "relatively small and therefore presumptively cohesive." *Janbay*, 272 F.R.D. at 119.

It consists of just three individual investors. *Cf. Peters*, 2012 WL 946875 at *7 ("[C]ourts appear to generally agree that a group comprising five or fewer members is appropriate."). Second, by filing together, the three have demonstrated their ability to work cooperatively. Each professes to be committed to working as "a representative party on behalf of a Class of investors who purchased or acquired digital asset securities on the trading platforms operated by Coinbase during the class period."[4] Bloch Decl., Exs. A ¶ 4, B ¶ 4, C ¶ 4. This sufficiently "demonstrate[s] their intent to participate directly in this litigation and their willingness and ability to serve as class representatives." *Janbay*, 272 F.R.D. at 119. Third and finally, there is no indication that the group was formed in bad faith. *See Peters*, 2012 WL 946875, at *9 (contrasting "a group that is able to obtain lead plaintiff status only by aggregating the much smaller losses of a number of class members," which "potentially runs afoul" of the PSLRA, with one that "comprises the class members with, far and away, the largest financial interest of any individual or group (that has otherwise come forward)," in which case the PSLRA's policy is "not disserved by allowing those individuals to join together"). There is, for example, no suggestion that the group was formed to box out an outside candidate for lead plaintiff; on the contrary, had the group not been formed, the $221,023.59 loss claimed by its member Rodriguez would have been highest of the three.

In sum, all considerations favor the Prospective Lead Plaintiffs, the group of individuals with the largest—indeed, the only—losses of any applicant to serve as lead plaintiff.

---

[4] The proposed Class Period is "the beginning of any applicable limitations period through the date of certification." *See* Compl. ¶ 253.

### C. Rule 23 Requirements

The PSLRA's final requirement is that the proposed lead plaintiffs satisfy Rule 23's requirements for class certification: numerosity, commonality, typicality, and adequacy. At this early stage of litigation, however, "only the last two factors—typicality and adequacy—are pertinent." *Bo Young Cha*, 2012 WL 2025850, at *6 (quoting *Constance Sczesny Tr. v. KPMG LLP*, 223 F.R.D. 319, 324 (S.D.N.Y. 2004)).

Lead plaintiffs' claims are typical where "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Sgalambo v. McKenzie*, 268 F.R.D. 170, 173–74 (S.D.N.Y. 2010) (citations omitted). A lead plaintiff is adequate where they "do not have interests that are antagonistic to the class that [they] seek[] to represent and ha[ve] retained counsel that is capable and qualified to vigorously represent the interests of the class that [they] seeks to represent." *Glauser v. EVCI Ctr. Colls. Holding Corp.*, 236 F.R.D. 184, 189 (S.D.N.Y. 2006) (citing *Dietrich v. Bauer*, 192 F.R.D. 119, 126 (S.D.N.Y. 2000)).

No party or movant has contested the Prospective Lead Plaintiffs' typicality. The Court finds that the "claims of [the Prospective Lead Plaintiffs] are typical of the class because their claims and injuries arise from the same conduct from which the other class members' claims and injuries arise." *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 49–50 (S.D.N.Y. 1998) (citations omitted). And no party or movant has claimed that the Prospective Lead Plaintiffs "will not fairly and adequately protect the interests of the class" or is are subject to "unique defenses" that render them incapable of adequately representing the class. 15 U.S.C. § 78u–(4)(a)(3)(B)(iii)(II). Accordingly, the Court also finds that the Prospective Lead Plaintiffs are adequate.

Because the group consisting of Underwood, Oberlander, and Rodriguez satisfies all PSLRA requirements as of this early stage, the Court appoints them co-lead plaintiffs.

### III.   Appointing Lead Counsel

The most adequate plaintiff may retain counsel to represent the class, subject to the Court's approval. *Id.* § 78u–(4)(a)(3)(B)(v). The Prospective Lead Plaintiffs have selected the law firms of SGT and Selendy & Gay as co-lead counsel. Having reviewed the firms' submissions as to their pertinent background and experience, including their experience litigating securities class actions, the Court finds the two firms qualified to serve as co-lead counsel. Accordingly, the Court appoints them as co-lead counsel.

As similarly situated courts have noted, this joint appointment "is done with the understanding that there shall be no duplication of attorney[s'] services," and that counsel "will work together to maximize recovery for the proposed class." *In re Millennial Media*, 87 F. Supp. 3d at 572 (citing *In re Oxford Health Plans*, 182 F.R.D. at 50; *Gordon v. Sonar Capital Mgmt. LLC*, No. 11 Civ. 9665 (JSR), 2012 WL 1193844, at *2 (S.D.N.Y. Apr. 9, 2012)).

## CONCLUSION

For the reasons set out above, the Court grants Underwood, Oberlander, and Rodriguez's motion for appointment as lead plaintiffs, and appoints SGT and Selendy & Gay as co-lead counsel.

The Clerk of the Court is respectfully directed to terminate the motion pending at docket entry 15.

The Court directs the parties to meet and confer and, by **January 25, 2022**, to file a joint letter setting out an efficient proposed schedule for next steps in this case, including proposed dates for the filing of (1) a consolidated amended complaint and (2) defendants' response. If

10

defendant anticipates that its response will take the form of a motion to dismiss, the parties shall include proposed dates for the opposition and reply briefs as well.

SO ORDERED.

_____
PAUL A. ENGELMAYER
United States District Judge

Dated: January 11, 2022
       New York, New York