UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHRISTOPHER UNDERWOOD, LOUIS OBERLANDER, and ZENEYDA PATIN on behalf of themselves and all others similarly situated,<br><br>                Plaintiffs,<br><br>                v.<br><br>COINBASE GLOBAL, INC.,<br><br>                Defendant. | Case No. 1:21-cv-08353-PAE |

**LOUIS OBERLANDER, HENRY RODRIGUEZ, AND CHRISTOPHER UNDERWOOD'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION BY ORDER TO SHOW CAUSE FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

Steven L. Bloch
Ian W. Sloss
SILVER GOLUB & TEITELL LLP
184 Atlantic Street
Stamford, CT 06901
Tel: 203-325-4491
isloss@sgtlaw.com
sbloch@sgtlaw.com

Jordan A. Goldstein
Mitchell Nobel
SELENDY & GAY, PLLC
1290 Avenue of the Americas
New York, NY 10104
Tel: 212-390-9000
jgoldstein@selendygay.com
mnobel@selendygay.com

*Attorneys for Louis Oberlander, Henry Rodriguez, and Christopher Underwood*

## TABLE OF CONTENTS

|  | Pages |
|---|---:|
| PRELIMINARY STATEMENT | 1 |
| BACKGROUND | 2 |
| ARGUMENT | 4 |
| I. Plaintiffs Are Likely to Prevail on the Merits of Their Request | 5 |
| II. Absent Relief, Plaintiffs Will Suffer Irreparable Harm | 10 |
| III. The Balance of Harms Favors Issuance of Relief | 11 |
| IV. The Public Interest Favors Relief | 12 |
| CONCLUSION | 12 |

# TABLE OF AUTHORITIES

**Cases**

*Armendariz v. Found. Health Psychare Servs.*, 6 P.3d 669 (Cal. 2000) .......................... 9

*Benavides v. Serenity Spa NY Inc.*, No. 15-CV-9189 (JLC), 2017 WL 3835880 (S.D.N.Y. Sept. 1, 2017) ...................... 7

*Cobell v. Norton*, 212 F.R.D. 14 (D.D.C. 2002) ............................. 11

*Geoffroy v. Washington Mut. Bank*, 484 F. Supp. 2d 1115 (S.D. Cal. 2007). ................. 9

*Gortat v. Capala Bros., Inc.*, 2009 WL 3347091 (E.D.N.Y. Oct. 16, 2009) .................. 7

*Gulf Oil Co. v. Bernard*, 452 U.S. 89 (1981) ............................. 6

*Humphrey v. Harvest Holdings, LP*, 2020 WL 7306405, at *17 (Cal. Ct. App. Dec. 11, 2020) ............................. 8

*In re Currency Conversion Fee Antitrust Litig.*, 361 F. Supp. 2d 237 (S.D.N.Y. 2005) ............ 6, 7

*Kater v. Churchill Downs Inc.*, 423 F. Supp. 3d 1055 (W.D. Wash. 2019) .................. 11

*Lim v. TForce Logistics, LLC*, 8 F.4th 992 (9th Cir. 2021) ............................. 9

*Nat'l Coal. on Black Civic Participation v. Wohl*, 498 F. Supp. 3d 457 (S.D.N.Y. 2020) ............ 5

*Nguyen v. Inter-Coast Int'l Training, Inc.*, 2018 WL 1887347 (Cal. Ct. App. Apr. 20, 2018) ............................. 10

*O'Connor v. Uber Techs., Inc.*, 2013 WL 6407583 (N.D. Cal. Dec. 6, 2013) ............................. 11

*OConner v. Agilant Sols., Inc.*, 444 F. Supp. 3d 593 (S.D.N.Y. 2020) ......................... 7

*OTO, L.L.C. v. Kho*, 447 P.3d 680 (Cal. 2019) ............................. 10

*Pinela v. Neiman Marcus Grp., Inc.*, 238 Cal. App. 4th 227 (2015). ............................. 9

*Sanchez v. Valencia Holding Co., LLC*, 353 P.3d 741 (Cal. 2015) ............................. 9

*Sandoval v. Medway Plastics Corp.*, 2014 WL 7185045 (Cal. Ct. App. Dec. 17, 2014). ............... 8

*Scott v. Borg Warner Protective Servs.*, 55 F. App'x 414 (9th Cir. 2003). ................. 10

**Rules**

New York Rule of Professional Conduct 4.2 ............................. 1, 5

Plaintiffs Louis Oberlander, Henry Rodriguez, and Christopher Underwood (the "Lead Plaintiffs"), individually and on behalf of all others similarly situated (collectively, "Plaintiffs") respectfully submit this memorandum of law in support of the instant motion for a temporary restraining order and preliminary injunction against Defendant Coinbase Global, Inc. ("Coinbase" or "Defendant") to prohibit Defendant from seeking to amend the dispute resolution provisions of Coinbase's present User Agreement by directly contacting Plaintiffs—who are represented by counsel in this matter—in violation of New York Rule of Professional Conduct 4.2(a).

**PRELIMINARY STATEMENT**

Defendant, faced with allegations of serial, flagrant, and ongoing violations of the securities laws, is attempting to escape its liability by unethically and unconscionably smuggling punitive dispute resolution provisions into a new user agreement to which it requires all customers assent on threat of account termination. These revised terms, which purport to apply retroactively, require all non-arbitrated claims to be in California, require arbitration of all claims, and create fee shifting provisions targeted directly at this proceeding that would require the Lead Plaintiffs to risk substantial financial exposure if they proceed with this action.

Defendant's attempt to solicit Lead Plaintiffs and the absent Class members into agreeing to these new lopsided terms is a dagger firmly aimed at depriving them of their present rights and remedies. It is also a violation of New York Rule of Professional Conduct 4.2(a), which governs communications with represented parties. Moreover, Defendant's proposed new terms would impose substantively unconscionable provisions in a highly coercive and procedurally unconscionable fashion. If this Court does not enjoin Defendant's attempt to impose these new terms, Plaintiffs will be irreparably harmed.

## BACKGROUND

On the evening of January 25, 2022, Plaintiffs and their counsel learned that Defendant had begun to send e-mails to each of the Lead Plaintiffs as well as all members of the putative Class who have active accounts on Defendant's trading platforms. *See* Goldstein Decl. Exhibit A (Email received by Plaintiff Underwood on the morning of January 26). Co-Lead Counsel were not copied on any of these correspondence. In their e-mails, Defendant stated that "[n]ext week we will be updating our User Agreement" to make it "[e]asier to [u]understand," and that "[w]e've revised our arbitration agreement to streamline the process for resolving problems you may experience." The email notice did not in any way inform Plaintiffs that the new terms of use could deprive this Court of jurisdiction over certain Plaintiffs' claims and impose punitive new fee shifting provisions in the event Plaintiffs were unsuccessful in this action.

The proposed amendment to the existing user agreement (the "Proposed User Agreement," Goldstein Decl. Exhibit B) vastly increases the scope of the present arbitration clause, and in fact creates an entire appendix devoted solely to dispute resolution.[1] In contrast to the existing terms of use, which are "effective as of the time it is posted but will not apply retroactively," the new arbitration provisions are expressly retroactive. *See* Ex. B, App'x 5 ¶ 1.1 ("[A]ny dispute, claim, disagreements arising out of or relating in any way to your access to or use of the Services or of the Coinbase Site, any Communications you receive, any products sold or distributed through the Coinbase Site, the Services, or the User Agreement ***and prior versions of the User Agreement, including claims and disputes that arose between us before the effective date of these Terms*** …

---

[1] A redline against the current User Agreement is set forth at Exhibit C to the Goldstein Declaration. For avoidance of doubt, Plaintiffs do not concede that the current version or any prior version is enforceable or was validly entered into by Plaintiffs or the putative Class. In the event Defendant moves to compel arbitration pursuant to the briefing schedule set by the Court on January 25, 2022, ECF No. 23, Plaintiffs will set forth the basis for denying that motion.

will be resolved by binding arbitration …. For purposes of this Arbitration Agreement, '***Dispute***' ***will also include disputes that arose or involve facts occurring before the existence of this or any prior versions of the User Agreement*** ….") (emphasis added).

The new arbitration provisions require, among other things, that non-arbitrated claims may be litigated only in California (whereas the prior terms did not include any such venue provision), and impose previously non-existent fee shifting provisions in *this* proceeding in the event that Defendant moves to compel arbitration and prevails. *See, e.g., id.* App'x 5 ¶¶ 1.3, 1.7 ("If you or Coinbase need to invoke the authority of a court of competent jurisdiction to compel arbitration, then the party that obtains an order compelling arbitration in such action shall have the right to collect from the other party its reasonable costs, necessary disbursements, and reasonable attorneys' fees incurred in securing an order compelling arbitration."). The clear intent of these changes is to make this case impossible to litigate in this Court by, among other things, imposing punitive cost shifting as to Defendant's anticipated motion to compel arbitration (which will likely dissuade plaintiffs from participating in this action when faced with such open-ended liability).

Coinbase's users are not presented with an actual choice as to whether to assent to these terms; the proposal is entirely unilateral and highly coercive. Specifically, Defendant has informed its users that "[i]f you are a current Coinbase customer, you will be prompted to accept our updated terms and conditions when you sign in to your account on web or through the mobile app soon after the new user agreement becomes effective," and that "[i]f you don't accept the new agreement, then you won't be able to access your Coinbase account." Goldstein Decl. Ex. D.

On January 26, 2022, the day after learning of the above facts, Plaintiffs' counsel sent Defendant's counsel a letter objecting to these tactics and stating that Plaintiffs and the putative Class do not assent to the proposed changes. *See* Goldstein Decl. Ex. E. At 5:39 p.m. on January

27, 2022, Defendant's counsel responded, denying that the communications were inappropriate and characterizing Coinbase's contact with Plaintiffs as just "an ordinary course of business email updating a user agreement." Goldstein Decl. Ex. F. Defendant's counsel also professed ignorance that the new terms could "alter the parties' rights and remedies in the Pending Litigation." *Id.* Defendant's counsel said they would substantively respond to Plaintiffs' letter on Monday, January 31—by which time the Proposed User Agreement would already be in effect. *See id.*

At 8:54 p.m. last night, in compliance with this Court's Individual Rules, and in order to avoid burdening the Court with Plaintiffs' application for a temporary restraining order, Plaintiffs informed Defendant that Plaintiffs would seek a preliminary injunction to address these improper changes to the User Agreement and requested that Defendant withdraw its proposed changes to the User Agreement as it concerns dispute resolution until such time as this Court could rule on Plaintiffs' application for a preliminary injunction. *See* Goldstein Decl. Ex. G. Defendant did not agree to the interim relief Plaintiffs requested. *See* Goldstein Decl. Ex. H.

## ARGUMENT

To obtain either a temporary restraining order or a preliminary injunction, Plaintiffs must show "(1) irreparable harm; (2) either a likelihood of success on the merits or both serious questions on the merits and a balance of hardships decidedly favoring the moving party; and (3) that [the requested relief] is in the public interest." *Nat'l Coal. on Black Civic Participation v. Wohl*, 498 F. Supp. 3d 457, 469 (S.D.N.Y. 2020) (quoting *N. Am. Soccer League, LLC v. United States Soccer Fed'n, Inc.*, 883 F.3d 32, 37 (2d Cir. 2018)). Here, the egregiousness of Defendant's attempt to strip this Court of jurisdiction of this pending action and impose punishing and unconscionable liability on Plaintiffs for litigating their claims, enables Plaintiffs to show all of these factors.

## I. Plaintiffs Are Likely to Prevail on the Merits of Their Request

Defendant's attempt to (i) strip this Court of jurisdiction, (ii) subvert the appropriate management of a putative class action, and (iii) threaten the prosecution of this action with the threat of punishing attorneys' fees are paradigmatic examples of inappropriate behavior. Because Defendant sent their email proposing these substantive and prejudicial changes to the parties' existing agreement to represented adversaries in litigation, without proceeding through counsel, they and their counsel have violated New York Rule of Professional Conduct 4.2(a), which governs communications with represented parties.[2] In their correspondence to Plaintiffs, Defendant's counsel did not deny that they either instigated or were aware of Coinbase's proposed modifications to the User Agreement. *See* Goldstein Decl. Ex. F. Moreover, it stretches credulity to believe that Coinbase's decision to propose a vast modification and expanded scope of its dispute resolution process—even going so far as to create a new appendix devoted solely to this topic—had nothing to do with the instant litigation, and was simply "an ordinary course of business" update of the user agreement.

Defendant's improper conduct with represented parties, which is directly aimed at undermining this litigation, requires this Court to exercise its supervisory authority and limit Defendant from further coercive and inappropriate communications that would affect Plaintiffs' rights and remedies in this action. *See Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981) ("Because of the potential for abuse, a district court has both the duty and the broad authority to exercise

---

[2] Rule 4.2(a) provides as follows: "In representing a client, a lawyer shall not communicate or cause another to communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the prior consent of the other lawyer or is authorized to do so by law."

control over a class action and to enter appropriate orders governing the conduct of counsel and parties.").

Courts have not hesitated to exercise that authority where, as here, a defendant seeks to interfere with an ongoing putative class action by circumventing counsel and seeking to bind plaintiffs and class members to agreements that would affect the ongoing litigation. In *In re Currency Conversion Fee Antitrust Litigation*, for example, the defendants added arbitration clauses to their agreements after the litigation began. 361 F. Supp. 2d 237, 249 (S.D.N.Y. 2005). Those defendants sent the class members notifications that, unless they mailed notices opting out of the changes to the terms of service, they would be obligated to arbitrate their disputes and would forfeit their right to civil litigation; the defendants' notices did not, however, mention the pending litigation. *Id.* The court held that the terms imposed in this manner were not enforceable, recognizing that "[c]ommunications that threaten the choice of remedies available to class members are subject to a district court's supervision" and that "[b]ecause of the potential for abuse, a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." *Id.* at 252. The court went on to emphasize that the supervisory authority of the district court "is not limited to communications that actually mislead or otherwise threaten to create confusion, but extends to communications that interfere with the proper administration of a class action or those that abuse the rights of members of the class." *Id.* at 252–53. The court thus held that "when a defendant contacts putative class members for the purpose of altering the status of a pending litigation, such communication is improper without judicial authorization." *Id.* at 253.

Numerous other courts in this Circuit have similarly recognized the harm in allowing defendants in a class action to reach out to putative class members in an attempt to alter the terms

6

of the litigation mid-stream. *See Benavides v. Serenity Spa NY Inc.*, No. 15-CV-9189 (JLC), 2017 WL 3835880 (S.D.N.Y. Sept. 1, 2017) (noting "a policy concern in permitting [improper communications] to be considered, because it would 'provide an incentive for defendants in this case, and in other cases, to engage in improper and potentially coercive communications with members of a putative class'"); *Gortat v. Capala Bros., Inc.*, 2009 WL 3347091, at *5 (E.D.N.Y. Oct. 16, 2009) ("Numerous courts have found that contacts with putative class members warranted judicial intervention.") (collecting cases), *report and recommendation substantially adopted*, 2010 WL 1423018 (E.D.N.Y. Apr. 9, 2010). Indeed, courts have recognized that contact with absent class members may constitute an ethical violation. *See OConner v. Agilant Sols., Inc.*, 444 F. Supp. 3d 593, 602 n. 5 (S.D.N.Y. 2020) ("The Court observes that in addition to courts' ability to manage the notice-giving process in a collective action, communications with putative class members prior to certification may also implicate ethical rules…. And there is ample authority to support the contention that knowing participation in the efforts of a defendant to engage in improper communications with members of a class action litigation constitutes a violation of attorney ethics rules.") (citations and internal quotation marks omitted).

Defendant's conduct is even more extreme than that found to merit judicial intervention in these cases. As in these precedents, Defendant is communicating directly with members of the putative Class in order to obtain their assent to an agreement which would prevent them from participating in a pending class action and does not identify that pending action in either the initial summary email or even in the proposed new user agreement. But, unlike the *Currency Conversion* defendants, Coinbase has provided no mechanism to opt out of the proposed changes and emphasized that refusing the Proposed User Agreement will prevent future use of Coinbase. And Coinbase's apparent intent is to require assent to use the website beginning in one business day

7

(and four business days after the new terms were first announced), meaning that any customer who does not want to risk waiving their rights in this proceeding will be unable to access the Coinbase platform.

Indeed, this proposed amendment would be substantively and procedurally unconscionable even absent the pending class action. Substantively, the proposed agreement would violate California law[3] through its imposition of fee shifting in any unsuccessful opposition to a motion to compel. An essentially identical provision, which "provide[d] that if an employee files a complaint which a court thereafter determines is subject to arbitration, the employee will reimburse the employer for its costs and attorneys' fees incurred in compelling arbitration of the complaint," was held to be "substantively unconscionable" in *Sandoval v. Medway Plastics Corp.*, 2014 WL 7185045, at *5 (Cal. Ct. App. Dec. 17, 2014). Just as in that case, the fee-shifting "chills [customers'] access to the courts" by threatening significant legal fees in any attempt to resist an arbitration. *Id;* s*ee also Humphrey v. Harvest Holdings, LP*, 2020 WL 7306405, at *17 (Cal. Ct. App. Dec. 11, 2020) (reversing grant of fees under provision providing "attorney fees and costs clause for the successful party on a motion to compel arbitration"). This substantive unconscionability is magnified by the provision in the Proposed User Agreement requiring disputes that are heard in court to be resolved in California, which would prevent the litigation of this matter before this Court, which that has duly appointed Lead Plaintiffs in this District pursuant to the Private Securities Litigation Reform Act of 1995. *See Lim v. TForce Logistics, LLC*, 8 F.4th 992, 1002 (9th Cir. 2021) (rejecting arbitration clause that imposed fee-shifting and mandatory venue provisions).

---

[3] All versions of the Coinbase User Agreement of which Plaintiffs are aware, as well as the proposed amendment, are governed by California law. *See, e.g.*, Goldstein Decl. Ex. C.

In addition to this substantive unconscionability, the method by which Coinbase notified users of this change—without mentioning the pending litigation or the retroactive effect of the change, and without providing any mechanism to opt out (other than immediately losing access to the Coinbase platform)—is procedurally unconscionable under California law. *See Sanchez v. Valencia Holding Co., LLC*, 353 P.3d 741, 751 (Cal. 2015) (recognizing a "sliding scale" under California law under which "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa"). As an initial point, the proposed agreement is one of adhesion because it is "a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." *Armendariz v. Found. Health Psychare Servs.*, 6 P.3d 669, 689 (Cal. 2000). By itself, the adhesive nature of the proposed contract establishes a "degree of procedural unconscionability." *Pinela v. Neiman Marcus Grp., Inc.*, 238 Cal. App. 4th 227, 244 (2015). In addition, the proposed agreement is infected with unfair "surprise" because "the supposedly agreed-upon terms of the bargain are hidden in the prolix printed form drafted by" Coinbase. *Id.* at 243.

Furthermore, the proposed agreement was presented to class members in a "misleading" fashion. *Geoffroy v. Washington Mut. Bank*, 484 F. Supp. 2d 1115, 1121 (S.D. Cal. 2007). Coinbase is misleading consumers through a biased summary that purports to tell class members "what this update means for you," but then describes it, in Orwellian fashion, as simply making the user agreement "[e]asier to [u]understand" and an attempt "to streamline the process for resolving problems you may experience." Goldstein Decl. Ex. D. Nowhere in the purported summary of the changes does the Proposed User Agreement state that agreeing to these terms may

9

result in additional liability for Plaintiffs due to the added fee-shifting provisions. And nowhere in either the summary email or in the Proposed User Agreement does Coinbase disclose the existence of this pending action, nor the prejudicial impact that agreeing to these new terms could have on Plaintiffs' rights and remedies in this litigation. *See Nguyen v. Inter-Coast Int'l Training, Inc.*, 2018 WL 1887347, at *8 (Cal. Ct. App. Apr. 20, 2018) (agreement unconscionable where putative class members were not informed "at the time of signing these agreements that their rights in the class action could be affected thereby"). And Coinbase's presentation of the agreement is "the result of coercive bargaining between parties of unequal bargaining strength" because it was presented on a "take this or nothing basis." *Scott v. Borg Warner Protective Servs.*, 55 F. App'x 414, 416 (9th Cir. 2003); *see also OTO, L.L.C. v. Kho*, 447 P.3d 680, 692 (Cal. 2019) ("Arbitration is a matter of consent, not coercion") (alteration and internal quotation marks omitted). Indeed, it is difficult to imagine a more coercive threat to retail investors than "if you don't agree, we will close your account." These features combine to render the Proposed User Agreement procedurally unconscionable.

## II. Absent Relief, Plaintiffs Will Suffer Irreparable Harm

If Coinbase is not prevented from imposing these changes to the dispute resolution provisions of the User Agreement, Plaintiffs and the putative Class will suffer irreparable harm. The proposed fee-shifting provisions mean that the Lead Plaintiffs cannot proceed with this action without incurring the risk that they will be held liable for the fees accrued by Defendant's counsel prior to the resolution of the anticipated motion to compel arbitration. In the face of such open-ended financial risk, it is entirely predictable that the Lead Plaintiffs may not be able to proceed with the action.

Beyond the possible loss of the eventual recovery from this action, members of the putative Class will be exposed to harm through the illusory "choice" presented by the new terms.

10

Customers who do not agree will be locked out of the platform, faced with the prospect of uncontrollable losses from open positions in the time spent resolving how they can recover their funds without accessing the platform. Customers who accept, meanwhile, risk being required to arbitrate their claims unless they can successfully persuade a court that the agreement is non-binding, which in turn would require them to risk paying Coinbase's legal fees and costs.

Courts faced with similar attempts to subvert the legal process have recognized the necessity of injunctive relief to avoid irreparable harm. *See Cobell v. Norton*, 212 F.R.D. 14, 20, 24 (D.D.C. 2002) (issuing order prohibiting defendants "from contacts with any class members during the pendency of this litigation that discuss this litigation, or the claims that have arisen therein, without the prior authorization of this Court" and referring defendants' counsel to disciplinary panel for potential violation of ethical rule by communicating with class members in attempt to extinguish their rights); *Kater v. Churchill Downs Inc.*, 423 F. Supp. 3d 1055, 1062 (W.D. Wash. 2019) (granting temporary restraining order preventing change in terms of use that would affect pending class action where opt-out was buried and notice of update did not reference ongoing litigation); *O'Connor v. Uber Techs., Inc.*, 2013 WL 6407583, at *7 (N.D. Cal. Dec. 6, 2013) (restricting defendant's communication with members of putative class following attempt to impose arbitration agreement during pending class action).

## III. The Balance of Harms Favors Issuance of Relief

The balance of harms unquestionably favors Plaintiffs over Defendant here and merits the issuance of relief. If Coinbase is not prevented from unilaterally imposing its revised terms, this Court risks being deprived of jurisdiction over the action, and Plaintiffs risk being exposed to open-ended legal fees if they contest the arbitrability of claims they brought prior to such onerous terms being imposed. In contrast, Defendant loses nothing from a limited delay—if deemed ultimately appropriate, Coinbase can present the revised dispute resolution terms to its customers at a later

11

date. Or Coinbase could carve out the present action from being impacted by the new dispute resolution terms.

## IV. The Public Interest Favors Relief

Coinbase's attempt to impose highly restrictive dispute resolution terms to the pending action presents a serious threat to the public interest, and to the orderly litigation of claims before this Court. As discussed above, Defendant's communications with members of the putative Class undermines this Court's role in supervising this action. It may also constitute an ethical violation that starkly illustrates the harms New York Rule of Professional Conduct 4.2 was enacted to avert. In addition, it represents an attack on the class action process; if Defendant's attempt is successful, any defendant subject to a consumer class action will have free reign unilaterally to impose whatever dispute resolution provisions would be most helpful in disadvantaging that particular action. One week a claim could be required to be heard in New York, and the next week in California, with plaintiffs forced to scurry from one forum to another. And a case that was commenced without a fee shifting provision could have one imposed midstream by soliciting the uncounseled acceptance of unfair terms from represented parties without their receiving the benefit of legal advice. That is what has occurred here, and that is clearly the point of these new terms—to deprive the Lead Plaintiffs and the putative Class of even having the opportunity to seek relief in court for Defendant's flagrant violation of the securities laws.

## CONCLUSION

For the above reasons, Plaintiffs respectfully request that this Court issue a temporary restraining order to enjoin Defendant from modifying, or seeking to modify, the dispute resolution provisions of Defendant's User Agreement presently in effect pending resolution of Plaintiffs' application for a preliminary injunction.

Plaintiffs further respectfully request that the Court issue a preliminary injunction that would remain in effect during the pendency of this action (i) prohibiting Coinbase from enforcing the Proposed User Agreement on the Lead Plaintiffs and the putative Class with respect to its new dispute resolution provisions (including but not limited to Appendix 5 thereof) to the extent it would apply to this action; (ii) prohibiting Coinbase from proposing further changes to the dispute resolution provisions of the User Agreement to Plaintiffs and members of the putative Class, to the extent such changes would apply to this action, without proceeding through Co-Lead Counsel; and (iii) prohibiting Coinbase from seeking to enforce the fee and cost shifting provisions in Paragraph 1.7 of Appendix 5 of the Proposed User Agreement to the present action.

Dated: New York, New York
January 28, 2022

By: */s/ Steven L. Bloch*
Steven L. Bloch
Ian W. Sloss
SILVER GOLUB & TEITELL LLP
184 Atlantic Street
Stamford, CT 06901
Tel: 203-325-4491
sbloch@sgtlaw.com
isloss@sgtlaw.com

Respectfully submitted,

By: */s/ Jordan A. Goldstein*
Jordan A. Goldstein
Mitchell Nobel
SELENDY & GAY, PLLC
1290 Avenue of the Americas
New York, NY 10104
Tel: 212-390-9000
jgoldstein@selendygay.com
mnobel@selendygay.com

*Attorneys for Lead Plaintiffs Louis Oberlander, Henry Rodriguez, and Christopher Underwood and the Putative Class*