UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHRISTOPHER UNDERWOOD, *et al.*, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>COINBASE GLOBAL, INC.,<br><br>Defendant. | Case No. 1:21-cv-08353-PAE |

**LOUIS OBERLANDER, HENRY RODRIGUEZ, AND CHRISTOPHER UNDERWOOD'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION BY ORDER TO SHOW CAUSE FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

Steven L. Bloch
Ian W. Sloss
SILVER GOLUB & TEITELL LLP
184 Atlantic Street
Stamford, CT 06901
Tel: 203-325-4491
isloss@sgtlaw.com
sbloch@sgtlaw.com

*Attorneys for Louis Oberlander, Henry Rodriguez, and Christopher Underwood*

Jordan A. Goldstein
Mitchell Nobel
SELENDY & GAY, PLLC
1290 Avenue of the Americas
New York, NY 10104
Tel: 212-390-9000
jgoldstein@selendygay.com
mnobel@selendygay.com

# **TABLE OF CONTENTS**

**Pages**

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT ..................................................................................................................................2

I. The Proposed User Agreement *Does* Change The Legal Rights And Remedies Of The Parties In This Litigation ..................................................................................................2

II. Coinbase's Purported "Compromise" Does Not Avoid The Irreparable Injury Raised In The Motion ..................................................................................................5

III. Coinbase's Attorneys Have Violated N.Y. Rule of Professional Conduct Rule 4.2 ..........8

IV. This Court Has Authority To Issue An Injunction To Compel Compliance By Defendant Coinbase Global, Inc., As Well As Its Wholly Owned Subsidiary Coinbase, Inc. ..................................................................................................9

CONCLUSION ..............................................................................................................................10

# TABLE OF AUTHORITIES

**Cases**

*Brennan v. Bally Total Fitness*, 153 F. Supp. 2d 408 (S.D.N.Y. 2001).......................................... 2

*Cold Stone Creamery, Inc. v. Gorman*, 361 F. App'x 282 (2d Cir. 2010) ................................... 10

*Doctor's Assocs. LLC v. Hai*, 2019 WL 2385597 (E.D.N.Y. June 6, 2019) ................................ 10

*Haider v. Lyft, Inc.*, 2021 WL 3475621 (S.D.N.Y. Aug. 6, 2021) ......................................... 5, 6, 8

*In re Currency Conversion Fee*, 361 F. Supp. 2d 237 (S.D.N.Y. 2005), ................................... 8, 9

*L-3 Commc'ns Corp. v. SafeNet, Inc.*, 45 A.D.3d 1 (N.Y. App. Div. 2007).................................. 10

*Nicosia v. Amazon.com, Inc.*, 834 F.3d 220 (2d Cir. 2016)............................................................. 2

*Ralph Oldsmobile Inc. v. General Motors Corp.*, 2001 WL 1035132 (S.D.N.Y. Sept. 7, 2001) ............................................................................................................................................ 9

*Sandoval v. Medway Plastics Corp.*, No. B252412, 2014 WL 7185045 (Cal. Ct. App. Dec. 17, 2014) ................................................................................................................................ 8

*See Ventoso v. Shihara*, 2019 WL 9045083 (S.D.N.Y. June 26, 2019).......................................... 5

*Stitt v. Williams*, 919 F.2d 516, 530 (9th Cir. 1990) ...................................................................... 3

*Wu v. Pearson Education Inc.*, 2011 WL 2314778 (S.D.N.Y. June 7, 2011) ................................ 9

**Statutes**

28 U.S.C. § 636................................................................................................................................ 9

**Rules**

Federal Rule of Civil Procedure 23 ................................................................................................. 9

New York Rule of Professional Conduct 4.2.................................................................................. 9

**Treatises**

3 NEWBERG ON CLASS ACTIONS § 9:7 (5th ed. 2021) ..................................................................... 7

## PRELIMINARY STATEMENT

Coinbase's opposition to Plaintiffs' Motion fails for at least four reasons. *First*, even if the December 20, 2021 User Agreement (the "2021 User Agreement") were applicable to the Lead Plaintiffs and the putative Class (and Defendant cites no evidence that it is), Coinbase ignores that this version of the User Agreement contains vastly different dispute resolution terms than the January 31, 2022 User Agreement Coinbase is seeking to enact tomorrow (the "Proposed User Agreement").

*Second*, Coinbase's purported compromise, whereby they would have all its users sign the Proposed User Agreement, would still compel Plaintiffs to choose between, on the one hand, foregoing use of the platform and access to their assets, and agreeing to terms that may or may not be enforced based on the Court's later decision. Coinbase's offer to not enforce the dispute resolution provisions for one week is meaningless, given that Coinbase could be able to enforce those terms on the eighth day based on the coerced assents it would receive tomorrow.

*Third*, nowhere in Coinbase's 22-page brief, nor in the correspondence it attaches, nor in any of its declarations, does it dispute that its own attorneys directed or were involved in the communications at issue in the Motion, and did so in order to alter the legal rights and remedies of the Lead Plaintiffs and other members of the putative Class, all without channeling such communications through Class Counsel. Nor does Coinbase dispute that it was well aware that the Lead Plaintiffs, who were among the intended and actual recipients of these communications, are represented by Class Counsel in this matter.

*Fourth*, Defendant highlights that the entity Coinbase, Inc. (rather than Coinbase Global, Inc.) is referenced in the User Agreement, but ignores that this entity is a wholly owned subsidiary of Defendant, as Defendant's own briefing and declarations make clear, *see, e.g.*, Black Declaration, ECF No. 29 ¶ 1, and therefore subject to common control with Defendant.

Accordingly, it is immaterial that the current Complaint names only Coinbase Global, Inc. as a defendant, as the Court can appropriately enter the needed relief against Defendant, which can compel its wholly owned subsidiary to refrain from seeking customers' assent to these new and unfair terms.

## ARGUMENT

**I.     The Proposed User Agreement *Does* Change The Legal Rights And Remedies Of The Parties In This Litigation**

After the half-hearted claim that it might never move to compel in this proceeding—when its intent to do so clearly motivates this dispute—Coinbase argues that there is no imminent harm here because the 2021 User Agreement already permits the same fee shifting that Plaintiffs seek to enjoin as to the Proposed User Agreement. That assertion is false on multiple levels.

*First*, Coinbase assumes without evidence that Plaintiffs are subject to the 2021 User Agreement. To show that users were in fact bound by any given version of the User Agreement, Coinbase would need to show the method by which the agreement was communicated and by which it purportedly obtained assent from users. *See, e.g.*, *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 233 (2d Cir. 2016) (distinguishing between "a 'clickwrap' agreement, which typically requires users to click an 'I agree' box after being presented with a list of terms or conditions of use" and "'browsewrap' agreements [that] involve terms and conditions posted via hyperlink, commonly at the bottom of the screen, and do not request an express manifestation of assent"); *Brennan v. Bally Total Fitness*, 153 F. Supp. 2d 408, 415 (S.D.N.Y. 2001) (finding that plaintiff was not bound by modifications to agreement where she "did not approve, sign, or otherwise consent to any subsequent unilateral modifications").

*Second*, even if the 2021 User Agreement were the applicable agreement for this analysis (which is incorrect, as described below), that agreement provides as follows: "To the extent

permitted by law, the prevailing party *in any action or proceeding to enforce this Agreement* … shall be entitled to costs and attorneys' fees." ECF No. 29-1 § 8.3 (emphasis added). The instant action, however, is not an "action or proceeding to enforce this Agreement." Rather, this is a proceeding to enforce federal and state *statutory securities* claims, and not claims under the User Agreement. *See Stitt v. Williams*, 919 F.2d 516, 529–30 (9th Cir. 1990) (declining to read language in a partnership agreement awarding fees when "any litigation is commenced to enforce this agreement" as applying to litigation asserting claims under the 1933 Securities Act). Any motion to compel filed by Defendant will be a motion in *this* proceeding, which is not an "action or proceeding to enforce this [User] Agreement." Accordingly, if Defendant were to prevail in any motion to compel arbitration in *this proceeding*—and as Plaintiffs will brief at an appropriate time, any such motion to compel arbitration should be denied—Defendant would not be entitled to legal fees under Section 8.3 of the 2021 User Agreement.

By contrast, in the Proposed User Agreement that Defendant seeks to apply to all its users (including the Lead Plaintiffs), Coinbase seeks to add the following terms:

> If you or Coinbase need to invoke **the authority of a court of competent jurisdiction to compel arbitration**, then the party that obtains **an order compelling arbitration** in such action shall have the right to collect from the other party its reasonable costs, necessary disbursements, and reasonable attorneys' fees incurred in securing an order compelling arbitration. The prevailing party in ***any court action relating to whether either party has satisfied any condition precedent to arbitration***, including the Formal Complaint Process, is entitled to recover their reasonable costs, necessary disbursements, and reasonable attorneys' fees and costs.

Ex. B App. 5 § 1.7 (emphasis added).[1] This new provision is materially broader than the 2021 language and would require fee shifting in the event Coinbase files—as it apparently intends to—

---

[1] Unless otherwise specified, all references to exhibits herein refer to the exhibits to the January 28, 2022 Goldstein Declaration, ECF No. 26.

3

a motion to compel in *this* proceeding, in contrast to the much more limited provision in the 2021 User Agreement, which would not apply to this proceeding. Moreover, the fee shifting provision is no longer mutual—whereas the 2021 User Agreement provides for fees to the prevailing party regardless of which party prevails, the new agreement only allows the "party that obtains an order compelling arbitration" to recover fees, Ex. B App. 5 § 1.7, and is therefore even more lopsided and unconscionable than the prior version.[2]

Coinbase also argues that the terms of the Proposed User Agreement are not retroactive. But that is flatly contradicted by those very terms. For example, the Proposed User Agreement provides that "[f]or purposes of this Arbitration Agreement, 'Dispute' will also include disputes that arose or involve facts occurring before the existence of this ***or any prior versions of the User Agreement*** as well as claims that may arise after the termination of this User Agreement." Ex. B App. 5 § 1.1 (emphasis added). The proposed new User Agreement also provides that:

> Subject to the terms of this Arbitration Agreement, you and Coinbase agree that any dispute, claim, disagreements arising out of or relating in any way to your access to or use of the Services or of the Coinbase Site, any Communications you receive, any products sold or distributed through the Coinbase Site, the Services, or the User Agreement ***and prior versions of the User Agreement, including claims and disputes that arose between us before the effective date of these Terms (each, a "Dispute")*** will be resolved by binding arbitration ….

*Id.* § 1.1 (emphasis added). These retroactive terms do *not* exist in the 2021 User Agreement. Accordingly, the changes Coinbase is attempting to enact through the proposed amendment would

---

[2] As Plaintiffs explained in their opening Memorandum, the Proposed User Agreement is unconscionable as a matter of California law. *See* Pl. Mem. at 8-10. Defendant suggests that the Court need not reach the issue. Def. Mem. at 19 n.19. Plaintiffs agree that the Court need not find the Proposed User Agreement unconscionable to enjoin its enforcement, but the use of unconscionable methods enhances Plaintiffs' likelihood of success on the merits.

(i) apply retroactively (unlike the current terms) and (ii) increase Plaintiffs' potential liability in the event Coinbase successfully moves to compel in this action (in contrast to the current terms).

## II.   Coinbase's Purported "Compromise" Does Not Avoid The Irreparable Injury Raised In The Motion

Coinbase offers that it present the Lead Plaintiffs and other members of the putative Class with the Proposed User Agreement and seek their written assent thereto (by clicking on a box that they "agree" to these new terms), but not "enforce" this new agreement for seven days. Coinbase's offer leaves unsaid what will happen on the *eighth* day, after which Coinbase *will* presumably enforce any new User Agreement. Coinbase also ignores that once Plaintiffs have agreed to a new User Agreement with a vastly more robust and punitive arbitration clause, Coinbase will surely argue that these users are now in a different position legally—as to their rights and remedies—than such Plaintiffs were before they agreed to the new User Agreement. That is, clicking the "I agree" box will presumably be argued by Coinbase to have a legal effect. *See Ventoso v. Shihara*, 2019 WL 9045083, at *3 (S.D.N.Y. June 26, 2019) (Engelmayer, J.) (recognizing significance of fact that plaintiff "checked a box to indicate that she accepted the Terms of Service, including the mandatory arbitration clause"). By soliciting the assent of the Lead Plaintiffs and other members of the putative Class to this new User Agreement—without their receiving the benefit of counsel—Coinbase will prejudice their rights.

*Haider v. Lyft, Inc.*, 2021 WL 3475621 (S.D.N.Y. Aug. 6, 2021) upon which Coinbase heavily relies, is highly instructive. In *Haider*, Lyft amended an arbitration agreement to change the choice-of-law provision. The court described the changes as "minor revisions to existing arbitration provisions in the ordinary course of business." *Id.* at *2. The *Haider* court also noted that the changes at issue (1) were not "specifically targeted at the pending litigation"; (2) "inform[ed] potential class members of their impact on pending litigation; and (3) "provide[d]

5

a mechanism for opt-out." *Id. None* of these mitigating facts are present in the instant case. *First*, the changes to the arbitration provision here are not "minor"; rather, Coinbase has made extensive changes to the existing dispute resolution provisions—so extensive that the arbitration provisions now require their own appendix. *Second*, the revisions in this case *are* clearly targeted at the existing litigation. Defendant's counsel does not deny that the changes to the dispute resolution provisions were intended to apply *precisely* to the pending litigation, and it stretches credulity to imagine otherwise. *Third*, there is no "opt-out" mechanism, other than not to trade on the Coinbase platform. That is not an "opt-out," and bears no resemblance to the relevant provision in *Haider*, which permitted Lyft drivers to continue driving for Lyft even if they opted out of the new arbitration terms. *See id.* at *2.

With respect to the *Haider* court's recognition of the practical difficulties raised by restricting communications between an employer and its employees, no such concerns apply here. Plaintiffs have never sought to prevent Coinbase from communicating with its customers, nor from amending its User Agreement. Rather, the remedy Plaintiffs have sought is limited: to prevent Coinbase, during the pendency of this litigation, from amending its User Agreement's dispute resolution provision to the extent those changes would apply to this specific litigation. Coinbase never explains why such a remedy would be unworkable or would impermissibly prejudice it. With respect to the balancing of the equities, Plaintiffs have identified a clear reason why the new User Agreement terms will prejudice them, while Coinbase has identified no unfair prejudice from being unable to apply new dispute resolution terms to *this* litigation.[3]

---

[3] Coinbase also argues that, if Plaintiffs seek to recover based on *Defendant*'s illegal conduct in operating as an unregistered exchange, Plaintiffs cannot complain if they are made to sign onerous terms to access the platform. But if Defendant were correct that an investor could not sue over illegal sales of securities, the securities laws would quickly become a dead letter. And Coinbase

Defendant also ignores that Plaintiffs will be prejudiced by being coerced to assent to the Proposed User Agreement, not only with respect to the fee-shifting provisions discussed above, but in terms of the scope of claims that could be subject to arbitration, and that this Court has authority under Rule 23 to restrict Coinbase's attempt to modify Plaintiffs' rights by forcing them to agree to such terms. "Using, *inter alia*, the authority set forth in *Gulf Oil* and its progeny, courts will restrict defendant communications with putative class members in two sets of circumstances: after a finding of either misleading, deceptive, or coercive communications or a finding of communications that undermine the class action by convincing potential class members to avoid the representative suit." 3 NEWBERG ON CLASS ACTIONS § 9:7 (5th ed. 2021) (footnotes omitted). Both bases for restricting communications apply here. *First*, as described in the Motion, the proposed new terms of the User Agreement are "coercive," in that they are procedurally and substantively unconscionable, and "misleading" and "deceptive," in that they fail to disclose the impact of agreeing to their terms on this litigation.

In addition, the proposed new terms of the User Agreement "undermine the class action" since agreeing to these terms will vastly expand the claims presently subject to arbitration. For example, statutory claims are clearly *not* subject to arbitration for at least two of the Lead Plaintiffs. For Plaintiffs Oberlander and Underwood, the arbitration agreement posted on Coinbase's website when they joined Coinbase—which they dispute they ever assented to—applies only to "dispute[s] arising under this Agreement" (*i.e.*, contractual claims, which are not at issue in this action), but does not apply to the statutory claims at issue in this lawsuit. *See* ECF No. 32-1. By contrast, the Proposed User Agreement potentially *would* make statutory claims subject to arbitration. Coercing

---

ignores that its platform has other uses beyond the trading of securities, including the trading of crypto-commodities (such as Bitcoin or Ethereum), which are not the subject of this suit.

the assent of the Lead Plaintiffs to a vastly broader arbitration clause than presently applies clearly prejudices their rights and those of the putative Class.

### III. Coinbase's Attorneys Have Violated N.Y. Rule of Professional Conduct Rule 4.2

Coinbase does not dispute that its counsel either directed or were involved in the communications to the Lead Plaintiffs and other members of the putative Class at issue in the Motion. To paraphrase the court in *Haider*, that case "do[es] not resemble this one." *Id.* at *2. The cases that *do* resemble this one are those cited in Plaintiffs' Motion. For example, in *In re Currency Conversion Fee Antitrust Litigation*, 361 F. Supp. 2d 237 (S.D.N.Y. 2005), the communications at issue were "improper because they sought to alter the status of this litigation and the available remedies," *id.* at 249 (internal quotation marks omitted), and did so without "inform[ing] the cardholders of the pendency of this litigation," *id.* That is precisely what is happening here.

As noted above, the User Agreements that presently apply and to which the Lead Plaintiffs and other members of the putative Class have assented are *not* the 2021 User Agreement. But even if were, the new retroactive terms *would* prejudice Plaintiffs in this present litigation by significantly increasing their potential liability through the open-ended fee shifting provisions Coinbase has added to the Proposed User Agreement. Moreover, Coinbase seeks to make these changes "hidden within a prolix printed form" (*Sandoval v. Medway Plastics Corp.*, 2014 WL 7185045, at *3 (Cal. Ct. App. Dec. 17, 2014) (internal quotation marks omitted)), without any disclosure to Plaintiffs as to the impact on them or this action. Such changes to the status quo are unconscionable, and this Court has authority under Rule 23 to prevent the putative Class from being thereby harmed. *See In re Currency*, 361 F. Supp. 2d at 250 ("When consumers are not advised of the rights they are forfeiting, enforceability of arbitration clauses may be restricted.").

Defendant's focus on whether the non-Lead Plaintiffs are "represented" is a red herring. First, there is no dispute that Plaintiffs Oberlander, Rodriguez, and Underwood *are* represented,

8

and that Coinbase's attorneys are and have been well aware of this fact. Moreover, communications with absent class members still raise ethical concerns; as Judge Pauley further explained, "when a defendant contacts putative class members for the purpose of altering the status of a pending litigation, such communication is improper without judicial authorization." *Id.* at 253. These restrictions on an adversary's ability to contact putative class members apply *both* before *and* after a class is certified. *See, e.g., id.* at 252; *see also Ralph Oldsmobile, Inc. v. General Motors Corp.*, 2001 WL 1035132, at *2 (S.D.N.Y. Sept. 7, 2001) ("*Gulf Oil*, and a court's power to restrict communications between parties and potential class members, apply even before a class is certified."). Accordingly, Defendant's contact with the Lead Plaintiffs and other members of the putative Class is improper under New York Rule of Professional Conduct 4.2 and Federal Rule of Civil Procedure 23.[4]

### IV. This Court Has Authority To Issue An Injunction To Compel Compliance By Defendant Coinbase Global, Inc., As Well As Its Wholly Owned Subsidiary Coinbase, Inc.

After stating that it has authority to offer a so-called compromise on behalf of Coinbase, Inc., Defendant pivots and suggests that this Court lacks authority to compel compliance with an injunction by Coinbase, Inc., a wholly owned subsidiary of Defendant Coinbase Global, Inc. But as Coinbase's own exhibits indicate, Defendant Coinbase has full control over Coinbase, Inc. *See, e.g.*, ECF No. 28-10 at 11 (Defendant's 10-Q stating that, in April 2014, "Coinbase, Inc. became a wholly-owned subsidiary of Coinbase Global, Inc."); ECF No. 29 ¶ 1 (declaration from officer of Coinbase, Inc. being offered in defense of Defendant Coinbase Global, Inc.). The fact that

---

[4] Defendants use of *Wu v. Pearson Education Inc.*, 2011 WL 2314778 (S.D.N.Y. June 7, 2011) to suggest that Plaintiffs' request should be styled as an application under Rule 23 is meritless. Magistrate Judge Francis made that distinction solely to demonstrate his authority to rule under 28 U.S.C. § 636(b)(1)(A), and proceeded to consider that application on the merits regardless of how it was styled. This Court can similarly consider Plaintiffs' application here.

Coinbase uses multiple affiliated entities in dealing with Plaintiffs does not deprive this Court of authority to issue an injunction to preserve the status quo as to the claims at issue in this litigation. *See, e.g.*, *Cold Stone Creamery, Inc. v. Gorman*, 361 F. App'x 282, 284 (2d Cir. 2010) (affirming preliminary injunctive relief applying not only to defendants but also to all "officers, agents, servants, employees, attorneys, parents, subsidiaries and related companies and all persons acting for, with, by, through or under them"); *Doctor's Assocs. LLC v. Hai*, 2019 WL 2385597, at *6 (E.D.N.Y. June 6, 2019) (granting injunction against defendant "as well as his agents; servants; employees; any company of which Defendant owns more than 10% of such company's equity, stock, or membership interest; any parent, subsidiary, or other company related thereto; and all persons acting for, with, by, or through them"); *L-3 Commc'ns Corp. v. SafeNet, Inc.*, 45 A.D.3d 1, 14 (N.Y. App. Div. 2007) ("[S]ince SafeNet is the corporate owner of Mykotronx, it certainly has the power and authority to compel Mykotronx to either comply with an injunction"). Moreover, Plaintiffs, as Defendant notes, have not yet filed their Amended Complaint, in which they intend to add Coinbase, Inc. as a defendant. Plaintiffs should not be prejudiced in the interim before their amendment can be filed.

## **CONCLUSION**

For the above reasons, and those presented in the initial Memorandum of Law (ECF No. 25), Plaintiffs respectfully request that this Court issue a temporary restraining order to enjoin Defendant from modifying, or seeking to modify, the dispute resolution provisions of Defendant's User Agreement presently in effect pending resolution of Plaintiffs' application for a preliminary injunction.

Dated: New York, New York　　　　　　　　　Respectfully submitted,
　　　　January 30, 2022

By: */s/ Steven L. Bloch*　　　　　　　　　By: */s/ Jordan A. Goldstein*
Steven L. Bloch　　　　　　　　　　　　　Jordan A. Goldstein
Ian W. Sloss　　　　　　　　　　　　　　Mitchell Nobel
SILVER GOLUB & TEITELL LLP　　　　　SELENDY & GAY, PLLC
184 Atlantic Street　　　　　　　　　　　1290 Avenue of the Americas
Stamford, CT 06901　　　　　　　　　　New York, NY 10104
Tel: 203-325-4491　　　　　　　　　　　Tel: 212-390-9000
sbloch@sgtlaw.com　　　　　　　　　　jgoldstein@selendygay.com
isloss@sgtlaw.com　　　　　　　　　　　mnobel@selendygay.com

*Attorneys for Lead Plaintiffs Louis Oberlander, Henry Rodriguez, and Christopher Underwood and the Putative Class*