UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | | |
|---|---|---|
| CHRISTOPHER UNDERWOOD et al., | : | |
| Individually and on Behalf of All Others Similarly Situated, | : | Case No. 1:21-cv-08353 (PAE) |
| | : | |
| | : | |
| *Plaintiffs*, | : | |
| | : | |
| v. | : | |
| | : | |
| COINBASE GLOBAL, INC., COINBASE, INC., and BRIAN ARMSTRONG | : | |
| | : | |
| | : | |
| *Defendants*. | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE AMENDED COMPLAINT

Jay B. Kasner
Lara A. Flath
Alexander C. Drylewski
Abigail E. Davis
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
One Manhattan West
New York, NY 10001
Phone: (212) 735-3000
Fax: (212) 735-2000


*Attorneys for Defendants*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................. 1

STATEMENT OF FACTS ......................................................................................................... 5

ARGUMENT .............................................................................................................................. 8

I.      PLAINTIFFS FAIL TO STATE A CLAIM UNDER SECTION 12(A)(1) OF
        THE SECURITIES ACT (COUNT I) .......................................................................... 8

        A.      Plaintiffs Fail to Allege That CBI or CBGI Passed Title to Any Alleged
                Securities ............................................................................................................. 8

        B.      Plaintiffs Fail to Allege That CBI or CBGI Successfully Solicited
                Plaintiffs' Purchases of Alleged Securities ...................................................... 11

II.     PLAINTIFFS' EXCHANGE ACT CLAIMS FAIL ................................................... 13

        A.      There Is No Private Right of Action Pursuant to Sections 5 and 15
                (Counts III-VI) ................................................................................................. 13

        B.      Plaintiffs' Section 29(b) Claims Fail to State a Cause of Action ..................... 17

        C.      Plaintiffs' Section 29(b) Claims Are Time-Barred .......................................... 21

III.    THE AMENDED COMPLAINT IMPERMISSIBLY LUMPS TOGETHER
        CBGI AND CBI IN VIOLATION OF RULE 8 .......................................................... 22

IV.     PLAINTIFFS FAIL TO STATE A CLAIM FOR CONTROL PERSON
        LIABILITY AGAINST CBGI OR ARMSTRONG (COUNTS II, VII) .................... 23

V.      PLAINTIFFS' STATE LAW CLAIMS FAIL ............................................................ 27

        A.      Plaintiffs Cannot State a Claim that Defendants are Statutory Sellers
                Under California, Florida, or New Jersey State Law (Counts VIII, XI, and
                XIII) ................................................................................................................... 27

        B.      Plaintiffs' State Law Claims Alleging CBI and CBGI Sold "Securities" as
                Unregistered Broker-Dealers Fail (Counts IX, XII, and XIV) ........................ 28

        C.      Certain of Plaintiffs' California and Florida State Law Claims Are Time-
                Barred (Counts IX, XII) .................................................................................... 29

CONCLUSION ......................................................................................................................... 30

**TABLE OF AUTHORITIES**

**CASES**

**PAGES**

*Abrams v. Ohio Casualty Insurance Co.*,
   731 A.2d 48 (N.J. Super. Ct. App. Div.)..........................................................................25

*Alexander v. Sandoval*,
   532 U.S. 275 (2001).................................................................................................13, 14

*Alpha Capital Anstalt v. Intellipharmaceutics International Inc.*,
   No. 19-cv-09270 (DLC), 2020 WL 3318029 (S.D.N.Y. June 18, 2020) .........................11

*Alpha Cap. Anstalt  v. Oxysure Sys., Inc.*,
   216 F. Supp. 3d 403 (S.D.N.Y. 2016).............................................................................21

*In re American Realty Capital Properties, Inc. Litigation*,
   No. 15-mc-00040 (AKH), 2015 WL 6869337 (S.D.N.Y. Nov. 6, 2015) .........................26

*In re AMF Bowling Securities Litigation*,
   No. 99-cv-3023(DC), 2002 WL 461513 (S.D.N.Y. Mar. 26, 2002).................................12

*Anderson v. Binance*,
   No. 20-cv-2803 (ALC), 2022 WL 976824 (S.D.N.Y. Mar. 31, 2022) ..................... *passim*

*Armstrong v. Exceptional Child Center, Inc.*,
   575 U.S. 320 (2015)........................................................................................................13

*Asch v. Philips, Appel & Walden, Inc.*,
   867 F.2d 776 (2d Cir. 1989)...........................................................................................13

*Atuahene v. City of Hartford*,
   10 F. App'x 33 (2d Cir. 2001) .......................................................................................22

*Bellikoff v. Eaton Vance Corp.*,
   481 F.3d 110 (2d Cir. 2007).....................................................................................15, 16

*In re Bernard L. Madoff Investment Securities, LLC*,
   605 B.R. 570 (S.D.N.Y. 2019)......................................................................3, 4, 18, 19

*Cannon v. University of Chicago*,
   441 U.S. 677 (1979)................................................................................................15, 16

*City of Pontiac General Employees' Retirement System v. Lockheed Martin Corp.*,
   875 F. Supp. 2d 359 (S.D.N.Y. 2012).................................................................. 5, 26-27

*Credit Suisse First Bos. Corp. v. ARM Financial Group, Inc.*,
No. 99-cv-12046 (WHP), 2001 WL 300733 (S.D.N.Y. Mar. 28, 2001) ...........................9

*DeMaria v. Anderson*,
153 F. Supp. 2d 300 (S.D.N.Y. 2001) ................................................................................26

*Doe v. National Ramah Commission, Inc.*,
No. 16-CV-6869 (NSR), 2018 WL 4284324 (S.D.N.Y. Sept. 7, 2018) ............................7

*Duffey v. Twentieth Century Fox Film Corp.*,
14 F. Supp. 3d 120 (S.D.N.Y. 2014) ...............................................................................7, 9

*In Re Eaton Vance Mutual Funds Fee Litigation*,
380 F. Supp. 3d 222 (S.D.N.Y. 2005) ...............................................................................16

*ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JPMorgan Chase Co.*,
553 F.3d 187 (2d Cir. 2009) ..............................................................................................24

*EMA Financial, LLC v. Vystar Corp.*,
No. 19-cv-01545 (ALC) (GWG), 2021 WL 1177801 (S.D.N.Y. Mar. 29, 2021) ............13

*EMA Financial, LLC v. Vystar Corp.*,
336 F.R.D. 75 (S.D.N.Y. 2020) .........................................................................................18

*EMA Financial, LLC v. Vystar Corp.*,
No. 19-cv-01545 (ALC) (GWG), 2021 WL 5998411 (S.D.N.Y. Dec. 20, 2021) ............17

*Employees' Retirement System of the Government of the Virgin Islands v. J.P. Morgan
Chase & Co.*,
804 F. Supp. 2d (S.D.N.Y. 2011) ................................................................................12, 25

*Federal Home Loan Bank of San Francisco v. Countrywide Financial Corp.*,
214 Cal. App. 4th 1520 (2013) ..........................................................................................25

*Fezzani v. Bear, Stearns & Co.*,
384 F. Supp. 2d 618 (S.D.N.Y. 2004) ...............................................................................25

*Frati v. Saltzstein*,
No. 10-cv-03255 (PAC), 2011 WL 1002417 (S.D.N.Y. Mar. 14, 2011) ............17, 18, 20

*Gavin/Solmonese LLC v. D'Armaud-Taylor*,
639 F. App'x 664 (2d Cir. 2016) .......................................................................................21

*GLK, L.P. v. Four Seasons Hotel Ltd.*,
22 So. 3d 635 (Fla. Dist. Ct. App. 2009) ..........................................................................30

*Gonzaga University v. Doe*,
536 U.S. 273 (2002) ...........................................................................................................14

*Goodman v. Shearson Lehman Bros. Inc.*,
    698 F. Supp. 1078 (S.D.N.Y. 1988)....................................................................13, 14, 17

*Griffin v. PaineWebber, Inc.*,
    No. 99-cv-02292 (VM), 2001 WL 740764 (S.D.N.Y. June 29, 2001) ..............................12

*Grupo Verzatec S.A. de C.V. v. RFE Investment Partners*,
    No. 17-cv-9887 (ALC), 2019 WL 1437617 (S.D.N.Y. Mar. 29, 2019) ....................24, 26

*Hao Zhe Wang v. Verizon Communications Inc.*,
    No. 19-cv-9506 (JMF), 2020 WL 5982882 (S.D.N.Y. Oct. 8, 2020)...........................4, 23

*HB v. Monroe Woodbury Central School District*,
    No. 11-cv-5881 (CS), 2012 WL 4477552 (S.D.N.Y. Sept. 27, 2012).........................7, 22

*Hillard v. Black*,
    125 F. Supp. 1071 (N.D. Fla. 2000)...................................................................................27

*Holsworth v. BProtocol Foundation*,
    No. 20-cv-2810 (AKH), 2021 WL 706549 (S.D.N.Y. Feb. 22, 2021) ...................3, 11, 12

*Independent Investor Protective League v. New York Stock Exchange*,
    367 F. Supp. 1376 (S.D.N.Y. 1973)...................................................................................10

*Jackson v. Birmingham Board of Education*,
    309 F.3d 1333 (11th Cir. 2002) .........................................................................................14

*Jackson v. Fischer*,
    No. 11-cv-02753 (PJH), 2015 WL 1143582 (N.D. Cal. Mar. 13, 2015) ....................28, 29

*Jackson v. Fischer*,
    931 F. Supp. 2d 1049 (N.D. Cal. 2013) .............................................................................24

*James v. Gage*,
    No. 15-cv-106 (KMK), 2019 WL 1429520 (S.D.N.Y. Mar. 29, 2019)...............................10

*Jenkins v. Chase Bank USA, N.A.*,
    No. 14-cv-5685 (SJF) (AKT), 2015 WL 4988103 (E.D.N.Y. Aug. 19, 2015)...................6

*Jordan v. Chase Manhattan Bank*,
    91 F. Supp. 3d 491 (S.D.N.Y. 2015)..................................................................................15

*Kalnit v. Eichler*,
    85 F. Supp. 2d 232 (S.D.N.Y. 1999)..................................................................................27

*In re Lehman Bros. Mortgage-Backed Securities Litigation*,
    650 F.3d 167 (2d Cir. 2011)...............................................................................................24

*Loftus v. Financial Industry Regulatory Authority, Inc.*,
   No. 20-cv-7290 (SHS), 2021 WL 325773 (S.D.N.Y. Feb. 1, 2021) ................................13

*Long Miao v. Fanhua, Inc.*,
   442 F. Supp. 3d 774 (S.D.N.Y. 2020)........................................................................23, 24

*Lord Abbett Municipal Income Fund, Inc. v. Asami*,
   No. 12-cv-03694 (DMR), 2014 WL 3417941 (N.D. Cal. July 11, 2014).........................29

*Loren v. City of N.Y.*,
   No. 16-cv-3605 (PAE), 2017 WL 2964817 (S.D.N.Y. July 11, 2017)...............................8

*Metz v. United Counties Bancorp*,
   61 F. Supp. 2d 364 (D.N.J. 1999) ...................................................................................27

*In re Morgan Stanley Information Fund Securities Litigation*,
   592 F.3d 347 (2d Cir. 2010)..........................................................................................2, 8

*Olmsted v. Pruco Life Insurance Co. of N.J.*,
   283 F.3d 429 (2d Cir. 2002)..............................................................................14, 15, 16

*Palmer v. Thomson & McKinnon Auchincloss, Inc.*,
   474 F. Supp. 286 (D. Conn. 1979)...................................................................................19

*Patrico v. Voya Financial, Inc.*,
   No. 16-cv-7070 (LGS), 2017 WL 2684065 (S.D.N.Y. June 20, 2017)............................23

*Pinter v. Dahl*,
   486 U.S. 622 (1988)................................................................................................. *passim*

*Poindexter v. EMI Record Group Inc.*,
   No. 11-cv-559 (LTS) (JLC), 2012 WL 1027639 (S.D.N.Y. Mar. 27, 2012).....................6

*Pompano-Windy City Partners, Ltd. v. Bear Stearns & Co.*,
   794 F. Supp. 1265 (S.D.N.Y. 1992).................................................................................20

*Public Employees' Retirement System of Mississippi v. Merrill Lynch & Co.*,
   714 F. Supp. 2d 475 (S.D.N.Y. 2010)........................................................................23, 25

*Rushing v. Wells Fargo Bank, N.A.*,
   752 F. Supp. 2d 1254 (M.D. Fla. 2010)..........................................................................27

*SCE Group Inc. v. City of N.Y.*,
   No. 18-cv-8909 (AT), 2020 WL 1033592 (S.D.N.Y. Mar. 3, 2020)................................22

*Scottrade, Inc. v. BroCo Investments, Inc.*,
   774 F. Supp. 2d 573 (S.D.N.Y. 2011)..............................................................................20

*Slomiak v. Bear Stearns & Co.*,
    597 F. Supp. 676 (S.D.N.Y. 1984) ...................................................................19

*In re Smith Barney Transfer Agent Litigation*,
    884 F. Supp. 2d 152 (S.D.N.Y. 2012).......................................................... 24-26

*Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*,
    96 F. Supp. 3d 325 (S.D.N.Y. 2015)...............................................................25

*Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*,
    33 F. Supp. 3d 401 (S.D.N.Y. July 21, 2014)....................................................23

*Steed Financial LDC v. Nomura Securities International, Inc.*,
    No. 00-cv-8058 (NRB), 2001 WL 1111508 (S.D.N.Y. Sept. 20, 2001) ......................9, 12

*St. Clair-Hibbard v. American Finance Trust, Inc.*,
    No. 18-cv-1148 (LGS) (KNF), 2019 WL 4601720 (S.D.N.Y. Sept. 23, 2019) ...............10

*Sun Micro Medical Technologies Corp. v. Passport Health Communications, Inc.*,
    No. 06-cv-2083 (RWS), 2007 WL 2230082 (S.D.N.Y. Aug. 2, 2007) ..............................5

*Tanzanian Royalty Exploration Corp. v. Crede CG III, Ltd.*,
    No. 18-cv-4201 (LGS), 2019 WL 1368570 (S.D.N.Y. Mar. 26, 2019)......................18, 19

*Teamsters Local 445 Freight Division Pension Fund v. Bombardier Inc.*,
    No. 05-cv-1898 (SAS), 2005 WL 2148919 (S.D.N.Y. Sept. 6, 2005) ........................25, 26

*Telebrands Corp. v. Del Laboratories, Inc.*,
    719 F. Supp. 2d 283 (S.D.N.Y. 2010)................................................................5

*In re Tezos Securities, Litig.*,
    No. 17-cv-06779 (RS), 2018 WL 4293341 (N.D. Cal. Aug. 7, 2018)..........................2, 12

*Touche Ross & Co. v. Redington*,
    442 U.S. 560 (1979).................................................................................15, 17

*Trilogy Properties LLC v. SB Hotel Associates LLC*,
    No. 09-cv-21406 (KMW) (AJ), 2010 WL 7411912 (S.D. Fla. Dec. 23, 2010)................29

*Varrasso v. Barksdale*,
    No. 13-cv-1982 (BAS) (JLB), 2015 WL 9008697 (S.D. Cal. Dec. 14, 2015) ................25

*Wanetick v. Mel's of Modesto, Inc.*,
    811 F. Supp. 1402 (N.D. Cal. 1992) ................................................................27

*Williams v. KuCoin*,
    No. 20-cv-2806 (GBD) (RWL), 2022 WL 392404 (S.D.N.Y. Feb. 9, 2022)...................17

*Yi v. GTV Media Group Inc.*,
    No. 21-cv-2669 (VM), 2021 WL 2535528 (S.D.N.Y. June 18, 2021) .............................25

*Youngers v. Virtus Investment Partners, Inc.*,
    195 F. Supp. 3d 499 (S.D.N.Y. 2016) ........................................................................11, 12

*Ziglar v. Abbasi*,
    137 S. Ct. 1843 (2017) .................................................................................................14

## STATUTES

15 U.S.C. § 77l(a)(1) .................................................................................................2, 7, 8

15 U.S.C. § 77o(a) ...........................................................................................................23

15 U.S.C. § 78cc(b) ..................................................................................................3, 4, 17

15 U.S.C. § 78o(a)(1) ................................................................................................3, 6, 14

15 U.S.C. § 78o(b)(4) .......................................................................................................16

15 U.S.C. § 78r .................................................................................................................15

15 U.S.C. § 78t(a) .............................................................................................................23

15 U.S.C. § 78e .........................................................................................................3, 6, 14

15 U.S.C. § 78u ................................................................................................................16

Cal. Corp. Code § 25501.5 ...............................................................................................29

Cal. Corp. Code § 25501.5(a)(1) ......................................................................................28

Fla. Stat. § 95.11(4)(e) .....................................................................................................30

Fla. Stat. § 517.12(1) ..................................................................................................28, 30

N.J. Stat. § 49:3-56 ..........................................................................................................28

N.J. Stat. § 49:3-71(c) ......................................................................................................28

N.J. Stat. § 49:3-71(d) ......................................................................................................24

## RULES

Fed. R. Civ. P. 8(a) ................................................................................................1, 4, 22-23

Fed. R. Civ. P. 12(b)(6) ......................................................................................................1

Defendants Coinbase Global, Inc. ("CBGI"), Coinbase, Inc. ("CBI"), and Brian Armstrong ("Armstrong," collectively, "Defendants") respectfully submit this memorandum of law in support of their motion to dismiss the amended complaint (ECF No. 43, the "AC") with prejudice pursuant to Federal Rules of Civil Procedure 8(a) and 12(b)(6).

## PRELIMINARY STATEMENT

This purported securities class action is the latest attempt by the same plaintiffs' lawyers to manufacture violations of federal and state securities laws against digital asset trading platforms. These claims fail as a matter of law and should be dismissed in their entirety. Plaintiffs proclaim in conclusory fashion that 79 different digital assets (the "Tokens")[1] made available on two cryptocurrency platforms operated by CBI (the "Platforms") constitute unregistered "securities" (they are not).[2] Thus, according to Plaintiffs, "Coinbase"[3] has violated the securities laws in two main respects: acting as a statutory seller for certain of these Tokens and failing to register as a securities exchange or broker-dealer. As a result, Plaintiffs ask this Court to grant the unprecedented relief of unwinding potentially millions of transactions, even though no Coinbase entity is a party to those transactions as the law requires. Plaintiffs also seek to enjoin Defendants from making the Tokens available for trading by all of CBI's users, even though Plaintiffs themselves willingly transacted in these Tokens even after they initiated this litigation alleging unlawful conduct. The sweeping nature of the relief Plaintiffs demand cannot be understated: if successful, Plaintiffs would have this Court effectively freeze the accounts of innocent CBI users

---

[1] Capitalized terms not defined herein shall have the same meaning ascribed to them in the AC, which is attached as Exhibit 1 to the Declaration of Lara A. Flath dated May 10, 2022, exhibits to which shall be designated as "Ex. __."

[2] Plaintiffs' entire case rests upon the premise that the Tokens are "securities." The Tokens are not "securities," which will become evident if this case proceeds. But the Court need not address this issue for purposes of this motion.

[3] Plaintiffs improperly conflate CBI and CBGI as "Coinbase," thereby failing to provide either Defendant with fair notice of the facts alleged against it in violation of Rule 8(a). (*Infra* § III.)

who, by their own choice, transact with one another in these Tokens. And other digital asset trading platforms would likely be compelled to do the same.

But the law does not allow these claims, let alone the relief, that Plaintiffs are pursuing. To prevail on their claims, Plaintiffs must plead that each allegedly improper transaction is directly with a Coinbase entity. Or, if they cannot do that, they must plead that they transacted in a specific Token as the result of a Coinbase entity specifically soliciting them to do so. As a matter of law, Plaintiffs cannot do either. The only contractual relationship that exists between Plaintiffs and any Defendant is the CBI User Agreement (Ex. 2 ("User Agreement" or "UA")), which expressly states that, when purchasing or selling digital assets on the Platforms, users *transact with one another—* not with CBI.[4] And as Plaintiffs' counsel were made aware during prior proceedings in this action, CBGI is not even a party to the User Agreement. (*See* Ex. 4 (Feb. 4, 2022 Hrg Tr.) at 36:23-37:5.) As a result, Plaintiffs cannot plead that any Defendant directly transacted with them. Nor can Plaintiffs plead that Defendants' activity is successful solicitation. Plaintiffs' claims should be dismissed with prejudice for these reasons. Specifically:

*First*, Plaintiffs' claim alleging that Defendants are "statutory sellers" of certain Tokens in violation of Section 12(a)(1) of the Securities Act, 15 U.S.C. § 77l(a)(1), fails because Plaintiffs cannot plead that Defendants (1) passed them title to any Token or (2) successfully solicited Plaintiffs' purchase of a "security." *Pinter v. Dahl*, 486 U.S. 622, 642, 647 (1988); *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 359 (2d Cir. 2010); *see, e.g.*, *In re Tezos Sec. Litig.*, 2018 WL 4293341, at *3, 9-10 (N.D. Cal. Aug. 7, 2018) (rejecting claim that cryptocurrency

---

[4] As the Court is aware due to Plaintiffs' emergency application for injunctive relief, the User Agreement is periodically updated. Consistent with the stipulation so-ordered by the Court on February 7, 2022, (Ex. 3 (ECF 39)), and for purposes of this motion, the User Agreement referred to herein is the December 20, 2021 User Agreement, which took effect prior to the update that was the subject of the emergency application.

"service provider" was a statutory seller); *Anderson v. Binance*, 2022 WL 976824, at *3 n.2 (S.D.N.Y. Mar. 31, 2022) (rejecting argument that a digital exchange was a "statutory seller[] because [it allegedly] passed title to Plaintiffs"). With respect to the first prong, Plaintiffs admit that "Coinbase" is a mere *intermediary* that matches users and earns fees "from *user* transactions" on the Platforms. (*See, e.g.*, AC ¶ 62 (emphasis added).) The User Agreement also explicitly confirms that when users "purchase (buy) or sell Digital Currency on the Coinbase Site, [they] *are not buying Digital Currency from Coinbase [Inc.] or selling Digital Currency to Coinbase [Inc.]*." (UA §3.2 (emphasis added).) Likewise, none of Plaintiffs' allegations amount to active "solicitation" under the law. *See Pinter*, 486 U.S. at 651 n.27. In particular, Plaintiffs do not allege—as they must—that they purchased any Token "as a result of" such supposed solicitation. *Holsworth v. BProtocol Found.*, 2021 WL 706549, at *3 (S.D.N.Y. Feb. 22, 2021) (granting motion to dismiss and noting plaintiff's failure to plead, in connection with alleged purchases of digital tokens, "that he purchased securities as a result of any active solicitations by Defendants").

*Second*, as a matter of law, Plaintiffs cannot state a claim premised on the allegation that Defendants operated as an unregistered "securities exchange" or "broker-dealer" in violation of Section 5 or 15 of the Exchange Act, respectively. 15 U.S.C. §§ 78e, 78o(a)(1). As a threshold matter, neither Section 5 nor 15 expressly provide a private right of action, and Plaintiffs cannot meet their heavy burden to establish an implied one. (*Infra* § II.A.) Nor can Plaintiffs manufacture a private cause of action by bootstrapping their allegations to Section 29(b) of the Exchange Act, 15 U.S.C. § 78cc(b). (*Infra* § II.A.) If the Court were even to consider it (which it need not do), to maintain a cognizable claim for rescission under Section 29(b), Plaintiffs must allege a contract that is unlawful on its face. *See, e.g.*, *In re Bernard L. Madoff Inv. Sec., LLC*, 605 B.R. 570, 591 n.11 (S.D.N.Y. 2019) (Engelmayer, J.). As this Court and others have recognized, "under Section

29(b), 'only unlawful contracts may be rescinded, not unlawful transactions made *pursuant to lawful contracts.*'" *Id.* (emphasis added). Plaintiffs concede that the User Agreement can be (and currently is) performed lawfully—not the least of which because they acknowledge that Bitcoin and Ethereum, which trade on the Platforms, are not securities. (*Infra* § II.B.1.) Thus, at most, Plaintiffs' allegations relating to their underlying transactions (even if framed as purported individual contracts as Plaintiffs suggest) amount to a claim of "unlawful transaction[s] made *pursuant to [a]* lawful contract[]"—precisely what Section 29(b) does not cover. *In re Bernard L. Madoff*, 605 B.R. at 591 n.11. Even if Plaintiffs were permitted to pick and choose which allegedly "unlawful [Token] transactions" they would like to void, Plaintiffs fail to allege the requisite contractual privity with Defendants. (*Infra* § II.B.2.) Finally, these claims are time-barred. 15 U.S.C. § 78cc(b); *Binance*, 2022 WL 976824, at *3. (*Infra* § II.C.)

*Third*, Plaintiffs fail to distinguish between CBI and CBGI, impermissibly lumping them together as "Coinbase." Plaintiffs have no justification for this improper group pleading. As Plaintiffs know from proceedings in this case alone, CBGI is not a party to the User Agreement. (*See* Ex. 4 (Hrg Tr.) at 36:23-37:5.) CBGI's public filings also set forth the separate nature of the entities. (*Infra* § III.) Accordingly, Plaintiffs fail to satisfy the minimum pleading requirements of Rule 8(a) required to put each Defendant on notice as to the specific allegations levied against it. *See Hao Zhe Wang v. Verizon Commc'ns Inc.*, 2020 WL 5982882, at *2 (S.D.N.Y. Oct. 8, 2020).

*Fourth*, Plaintiffs' control person claims against Armstrong and CBGI fail because the AC fails to allege any primary violation. (*Infra* § IV.) These claims also fail because allegations that an entity was the parent corporation or the CEO of the parent of a primary violator, standing alone, do not make out a claim of control, and the AC only otherwise offers insufficient conclusory allegations. Plaintiffs also cannot state a claim against CBGI for both primary and control person

liability based on the same factual allegations. *See City of Pontiac Gen. Emps. Ret. Sys. v. Lockheed Martin Corp.*, 875 F. Supp. 2d 359, 375 (S.D.N.Y. 2012).

*Finally*, Plaintiffs' state law claims fail because Plaintiffs cannot plead that CBI or CBGI are statutory sellers and Plaintiffs cannot plead the requisite contractual privity to seek rescission. Certain of Plaintiffs' claims under California and Florida law are also time-barred. (*Infra* § V.)

## STATEMENT OF FACTS

CBI operates the two online trading Platforms at issue in this litigation.[5] On these Platforms, verified users can transact in over 100 unique digital assets, including the Tokens at various times, and thereby gain access to a broad and constantly expanding cryptoeconomy. To engage with these digital assets made available on the Platforms, users sign up via a User Agreement with CBI. (Ex. 5 (Oct. 8, 2021 Complaint (the "Complaint" or "Compl.")) ¶ 273.)

Lead Plaintiffs Oberlander, Rodriguez, and Underwood, who reside in California, New Jersey, and Florida, respectively, are current users who have transacted on the Platforms.[6] (AC ¶¶ 7-9.) Oberlander and Underwood "signed up for Coinbase in December of 2017." (Ex. 4 (Hrg Tr.) at 30:5-6; *see also* Ex. 7 (identifying operative User Agreement when Underwood signed up).)[7] According to their certifications submitted in support of their motion to be appointed lead plaintiffs, Oberlander and Rodriguez began transacting on the Platforms as of February 13, 2019 and July 7, 2020, respectively. (Ex. 8 (ECF 19-1 (Oberlander)); Ex. 9 (ECF 19-3 (Rodriguez)).) Plaintiffs, as representatives for a putative nationwide class and the three state subclasses, seek to

---

[5] The Coinbase Platform and Coinbase Pro Platform differ in the offering of certain trading features, including, among other things, types of orders. (AC ¶¶ 35, 37.)

[6] On January 11, 2022, Underwood, Oberlander, and Rodriguez were appointed Lead Plaintiffs. (Ex. 6 (ECF 21).)

[7] "When ruling on a motion to dismiss, the Court may take judicial notice of . . . items in the record of the case." *Sun Micro Med. Techs. Corp. v. Passport Health Commc'ns, Inc.*, 2007 WL 2230082, at *3 (S.D.N.Y. Aug. 2, 2007). This includes documents and representations made earlier in the litigation. *See, e.g., Telebrands Corp. v. Del Lab'ys, Inc.*, 719 F. Supp. 2d 283, 290 (S.D.N.Y. 2010).

represent all persons or entities who transacted in the Tokens on the Platforms from October 8, 2019 to March 11, 2022. (AC ¶¶ 1, 918-919.)

In the initial Complaint, Plaintiffs Underwood and Oberlander alleged that CBGI, then the sole defendant, operated as an unregistered securities exchange and broker-dealer in violation of Sections 5 and 15 of the Exchange Act, 15 U.S.C. §§78e, 78o(a)(1) (and corresponding California and Florida statutes), because 76 digital tokens available for transactions on the Platforms are allegedly "securities." (*See* Compl. ¶¶ 1-4.) Plaintiffs admitted as follows:[8]

- "Once money or digital assets had been sent to the Coinbase Platform and credited to the wallet of a Coinbase Platform user, **a Coinbase Platform [user] can enter into trade agreements *with other Coinbase Platform users* for purchases and sales of digital assets**." (*Id.* ¶ 27 (emphasis added).)[9]

- "**Coinbase entered into contracts *via the Coinbase User Agreement***, with Plaintiffs and the members of the Class and Subclasses, ***pursuant to which*** Plaintiffs purchased Digital Asset Securities ***through*** Coinbase and paid Coinbase fees. . . ." (*Id.* ¶ 273 (emphasis added).)

- "**[A]t all relevant times**, Coinbase has stated that it 'is not registered with the U.S. Securities and Exchange Commission and does not offer securities services in the United States or to U.S. persons.'" (*Id.* ¶ 246 (emphasis added).)

In the AC, Plaintiffs allege that CBGI along with newly added defendant CBI—which the AC conflates as "Coinbase"—have failed to register as a securities exchange or broker-dealer in violation of Sections 5 and 15 of the Exchange Act and corresponding California, Florida, and New Jersey Blue Sky statutes. (*See, e.g.*, AC ¶¶ 68-76.) But contrary to their allegations in the original Complaint and in an obvious attempt to evade dismissal, Plaintiffs now claim that "Coinbase" transacts directly, and is in privity, with users for every trade and that both CBI and

---

[8] This Court may consider admissions in the Complaint in deciding this motion. *See Poindexter v. EMI Rec. Grp. Inc.*, 2012 WL 1027639, at *2 (S.D.N.Y. Mar. 27, 2012) ("[E]ven though the Amended Complaint is the operative pleading, the Court may still credit admissions in the original complaint and attached exhibits."); *Jenkins v. Chase Bank USA, N.A.*, 2015 WL 4988103, at *1 (E.D.N.Y. Aug. 19, 2015).

[9] The Complaint makes the same admission with respect to Coinbase Pro. (Compl. ¶ 32.)

CBGI are "statutory sellers" of securities under Section 12(a) of the Securities Act, 15 U.S.C. § 77l(a)(1). (*See* AC ¶¶ 909-16.)

Even though Plaintiffs previously admitted that Plaintiffs and all purported class members enter into the CBI User Agreement (Compl. ¶ 273), and even brought an emergency application in connection with an update to the User Agreement (Exs. 10-12 (ECF 24-26)), Plaintiffs go to great lengths in the AC to avoid any reference to the User Agreement.[10] The User Agreement, however, is the only operative agreement between Plaintiffs and any of the Defendants, specifically CBI only (not CBGI)—and would be the only agreement Plaintiffs could ultimately seek to rescind under Section 29(b) of the Exchange Act.[11]

The explicit terms of the User Agreement provide:

- "This is a User Agreement between you [] and Coinbase, Inc. ('Coinbase')." (UA at 1);

- "When you purchase (buy) or sell Digital Currency on the Coinbase Site, **you are not buying Digital Currency from Coinbase [Inc.] or selling Digital Currency to Coinbase [Inc.]**. Coinbase acts as the agent, transacting on your behalf, to facilitate **that purchase or sale between you and other Coinbase [Inc.] customers**." (*Id.* §3.2 (emphasis added));

- "Title to Digital Currency shall at all times remain with you and shall not transfer to Coinbase." (*Id.* §2.6.1); "You control the Digital Currencies held in your Digital Currency Wallet." (*Id.* §2.6.2);

- "By using Coinbase Services you agree to pay all applicable fees." (*Id.* §3.3); and

- "Coinbase [Inc.] is not registered with the U.S. Securities and Exchange Commission." (*Id.* at 1).

---

[10] Like the current operative version of the User Agreement, the December 20, 2021 User Agreement was publicly available. (https://www.coinbase.com/legal/user_agreement/united_states.) "[I]t is well established that courts may take judicial notice of publicly available documents on a motion to dismiss." *HB v. Monroe Woodbury Cent. Sch. Dist.*, 2012 WL 4477552, at *4 (S.D.N.Y. Sept. 27, 2012).

[11] The User Agreement is integral to the AC, and the Court may consider it on a motion to dismiss. *See Doe v. Nat'l Ramah Comm'n, Inc.*, 2018 WL 4284324, at *6 (S.D.N.Y. Sept. 7, 2018); *Duffey v. Twentieth Century Fox Film Corp.*, 14 F. Supp. 3d 120, 123-24 n.1 (S.D.N.Y. 2014).

*(cont'd)*

Finally, Plaintiffs allege control person liability against Armstrong and CBGI based on their positions as CEO and corporate parent of CBI, respectively. (AC ¶¶ 951-53; *accord id.* ¶¶ 1011-13 (Armstrong); *id.* ¶¶ 945-46; *accord id.* ¶¶ 1005-07 (CBGI).)[12]

## ARGUMENT[13]

## I.     PLAINTIFFS FAIL TO STATE A CLAIM UNDER SECTION 12(A)(1) OF THE SECURITIES ACT (COUNT I)

Section 12(a)(1) of the Securities Act authorizes claims only against one who "offers or sells" an unregistered security. 15 U.S.C. § 77l(a)(1). Pursuant to the Supreme Court's decision in *Pinter v. Dahl*, a defendant is a "statutory seller" only if it (1) "passed title, or other interest in the security, to the buyer for value," or (2) "successfully solicit[ed] the purchase [of a security], motivated at least in part by a desire to serve [its] own financial interests or those of the securities' owner." 486 U.S. at 642, 647; *accord In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d at 359. Here, Plaintiffs fail to allege either requirement, and the Section 12(a)(1) claim relating to a subset of the Tokens should be dismissed with prejudice.

### A.     Plaintiffs Fail to Allege That CBI or CBGI Passed Title to Any Alleged Securities

Under *Pinter*'s first prong, Section 12(a)(1) liability attaches to "only the buyer's immediate seller." *Pinter*, 486 U.S. at 644 n.21; *see also id.* at 642 (noting that Section 12 "contemplates a buyer-seller relationship not unlike traditional contractual privity"). Thus, even

---

[12] Plaintiffs allege that Armstrong is CEO of both entities. (AC ¶ 12.) For purposes of this motion, Defendants are obliged to accept this allegation as true but have advised Plaintiffs that Armstrong is not an officer, including CEO, of CBI and was not during the putative class period. Defendants have asked Plaintiffs to withdraw this inaccurate allegation (*see, e.g., id.* ¶¶ 12, 951, 1047, 1104), and reserve all rights to seek dismissal of the control person claims alleged against Armstrong upon withdrawal or correction of this incorrect allegation.

[13] The standards applicable to this motion are well settled. *See, e.g., Loren v. City of N.Y.*, 2017 WL 2964817, at *3 (S.D.N.Y. July 11, 2017) (Engelmayer, J.) ("In considering a motion to dismiss, a district court must 'accept[ ] all factual claims in the complaint as true, and draw[ ] all reasonable inferences in the plaintiff's favor.' However, this tenet is 'inapplicable to legal conclusions.'" (alterations in original) (citations omitted)).

assuming *arguendo* that the Section 12(a)(1) Tokens are "securities," Plaintiffs must allege that a Defendant was a "direct seller" to state a claim. *Steed Fin. LDC v. Nomura Sec. Int'l, Inc.*, 2001 WL 1111508, at *7 (S.D.N.Y. Sept. 20, 2001); *accord Credit Suisse First Bos. Corp. v. ARM Fin. Grp., Inc.*, 2001 WL 300733, at *10 (S.D.N.Y. Mar. 28, 2001) ("[P]laintiffs here did not purchase directly from [defendant] and thus lack standing under the first prong of *Pinter*."). Although Plaintiffs summarily assert that "Coinbase" is the "actual seller" of the Tokens and "the counterparty in every transaction in a Token" (AC ¶¶ 6, 910; *see also id.* ¶¶ 32-33), those allegations are contradicted by the terms of the User Agreement to which Plaintiffs agreed, contrary to other allegations in the Complaint and AC, and lack any factual support.

The User Agreement confirms CBI is not a counterparty to any of Plaintiffs' alleged transactions. It provides in no uncertain terms: "When you purchase (buy) or sell Digital Currency on the Coinbase Site, ***you are not buying Digital Currency from Coinbase [Inc.] or selling Digital Currency to Coinbase [Inc.]***." (UA §3.2 (emphasis added).) The User Agreement is also explicit that "***[t]itle to Digital Currency*** shall at all times remain with you ***and shall not transfer to Coinbase [Inc.]***." (*Id.* §2.6.1 (emphasis added).) In other words, consistent with Plaintiffs' own allegations in the initial and amended Complaint characterizing "Coinbase" as an intermediary, the User Agreement demonstrates that users do not transact directly with, or pass title to or from, a Coinbase entity when they purchase the Tokens on the Platforms. Plaintiffs' attempt at "clever drafting" to avoid the plain language of the User Agreement because it "undermine[s] the legitimacy" of their claim must be rejected. *Duffey*, 14 F. Supp. 3d at 124 n.1. When "any allegations contradict the evidence contained in the documents relied upon by a plaintiff, the documents control, and the Court need not accept the allegations contained within the complaint

as true." *St. Clair-Hibbard v. Am. Fin. Tr., Inc.*, 2019 WL 4601720, at *3 (S.D.N.Y. Sept. 23, 2019) (citation omitted).

Although Plaintiffs assert that "Coinbase stands between the buyer and seller in each trade on its platform, meaning that [it] is the actual seller of the" Tokens (AC ¶¶ 6, 910), this conclusory allegation lacks factual support. It is also contradicted by Plaintiffs' other allegations, including that "Coinbase" is an exchange that "brings together buy and sell orders for the Tokens" (*id.* ¶¶ 5, 68, 986), "match[es] buy and sell orders," (*id.* ¶ 915; *accord id.* ¶¶ 5, 71, 912, 959, 963, 982, 986) and "earn[s] fees from user transactions in [digital] assets" (*id.* ¶ 62). *See Indep. Inv. Protective League v. N.Y. Stock Exch.*, 367 F. Supp. 1376, 1377 (S.D.N.Y. 1973) (dismissing securities claims and noting it would take "some semantic stretch or twist of logic" to define the NYSE as a purchaser or seller). Plaintiffs further allege that "Coinbase" "allow[s] Coinbase and Coinbase Pro ***users*** to agree upon the terms of ***their trades*** in Tokens" (*id.* ¶ 912 (emphasis added); *see also* Compl. ¶¶ 27, 32), and that Plaintiffs purchased the Tokens "***on*** the Coinbase Exchanges," not ***from*** CBI or CBGI (*see, e.g.*, AC ¶¶ 221, 227, 270, 535 (emphasis added); *see also* Compl. ¶ 273). "Where the plaintiff's own pleadings are internally inconsistent, a court is neither obligated to reconcile nor accept the contradictory allegations in the pleadings as true in deciding a motion to dismiss." *James v. Gage*, 2019 WL 1429520, at *14 (S.D.N.Y. Mar. 29, 2019) (citation omitted). Accordingly, Plaintiffs' bare assertion that either CBI or CBGI is an "actual seller" should not be credited. Judge Carter recently rejected the argument that a digital exchange was a "statutory seller[ ] because [it] passed title to Plaintiffs" because the complaint's allegations did not support this assertion. *Binance*, 2022 WL 976824, at *3 n.2. The AC offers the Court no reason to reach any other conclusion here.

**B.      Plaintiffs Fail to Allege That CBI or CBGI Successfully Solicited Plaintiffs'
Purchases of Alleged Securities**

Nor can Plaintiffs plead that CBI or CBGI successfully solicited Plaintiffs' purchases of

any purported security. As the Supreme Court noted when establishing a narrowed standard in

*Pinter*, "Congress did not intend that . . . section [12] impose liability on participants collateral to

the offer or sale" or even those whose conduct constituted "substantial participation in the sales

transaction." 486 U.S. at 650-51. Thus, to satisfy *Pinter*'s "successful solicitation" prong, a

plaintiff must allege that "he was directly contacted by Defendants [and] purchased securities as a

result." *Holsworth*, 2021 WL 706549, at *3 (dismissing  Section 12(a) claim without leave to

replead). Plaintiffs' claims fail to meet this standard.

First, Plaintiffs do not allege that CBI or CBGI had direct contact with any specific alleged

investors, much less with Plaintiffs themselves, to solicit their transactions. *See Alpha Cap. Anstalt

v. Intellipharmaceutics Int'l Inc.*, 2020 WL 3318029, at *4 (S.D.N.Y. June 18, 2020) ("[P]laintiffs

must show that [defendant] actually solicited their investment."). Plaintiffs allege that, for certain

Tokens, "Coinbase" (i) "provid[es] users with descriptions of each Token and its purported value

proposition"; (ii) "participated in . . . 'airdrops' of free Tokens designed to increase trading

volume";[14] (iii) "writes news updates on price movements of the Tokens"; (iv) "links to stories

about the Tokens published across the internet"; and (v) provides users with hyperlinks to various

tokens' official websites and whitepapers. (*See, e.g.*, AC ¶ 911.) Even assuming their truth, these

allegations of high-level collateral conduct are at best incidental to any sale and therefore legally

insufficient. In *Youngers v. Virtus Investment Partners, Inc.*, Judge Pauley dismissed Section 12(a)

---

[14] Plaintiffs' allegation regarding "airdrops" (a method by which an issuer distributes digital assets) also falls short.
Plaintiffs identify only a single Token—QNT—allegedly distributed in this manner, but do not allege what role, if
any, CBI or CBGI played in this supposed "airdrop." (AC ¶ 638.) And elsewhere, Plaintiffs allege that "*the issuer*"—
not CBI or CBGI—would "distribute some tokens for free to users in an 'airdrop' and then begin selling the tokens
on the secondary market through one or more exchanges." (*Id.* ¶ 52 (emphasis added).)

claims because the alleged distribution of marketing materials through a company's website and other channels was insufficient to subject the company to Section 12 liability as a matter of law. 195 F. Supp. 3d 499, 522 (S.D.N.Y. 2016); *see also In re Tezos Secs. Litig.*, 2018 WL 4293341, at *3 (N.D. Cal. Aug. 7, 2018) (providing services to cryptocurrency issuer such as "conversion of US dollars to Bitcoin and Ethereum" was not solicitation). Likewise, allegations that Defendants "promoted and sold the Certificates to [plaintiff]" and "solicited sales of the Certificates for financial gain" are conclusory legal allegations unsupported by factual allegations that cannot survive a motion to dismiss. *Emps.' Ret. Sys. of the Gov't of the V.I. v. J.P. Morgan Chase & Co.*, 804 F. Supp. 2d at 141, 151 (S.D.N.Y. 2011).[15]

Second, even if Plaintiffs could allege active solicitation by CBI or CBGI, they fail to plead that Plaintiffs "purchased securities *as a result of* [that] solicitation." *Griffin v. PaineWebber, Inc.*, 2001 WL 740764, at *2 (S.D.N.Y. June 29, 2001) (emphasis added); *see also Pinter*, 486 U.S. at 647 (liability "extends only to the person who *successfully* solicits the purchase" (emphasis added)). Plaintiffs summarily assert that Defendants "solicited [Plaintiffs'] purchases" (AC ¶ 937), but allege no facts to connect this alleged solicitation to any specific purchase of any specific Token. *See Holsworth*, 2021 WL 706549, at *3. Without allegations that Plaintiffs "in fact purchased the [Tokens] as a result of [the defendant's] solicitation[,]" Plaintiffs cannot plead, as a matter of law, that Defendants solicited the purchase of any Token, and their Section 12(a)(1) claim should be dismissed. *Steed*, 2001 WL 1111508, at *7.[16]

---

[15] Again, Plaintiffs make contradictory allegations that undermine their claims, including that third party "team[s] behind" numerous Tokens—not CBI or CBGI—"actively cultivated" Plaintiffs' expectations of profits through various public statements on their websites and in blog posts, tweets, and whitepapers. (*See, e.g.*, AC ¶¶ 110-17, 169-71; *see also id.* ¶¶ 298, 466.)

[16] To the extent Plaintiffs attempt to distinguish cases involving Section 12(a)(2) rather than Section 12(a)(1), courts have construed the relevant terms in these two provisions "to be identical in meaning." *In re AMF Bowling Sec. Litig.*, 2002 WL 461513, at *5 n.7 (S.D.N.Y. Mar. 26, 2002) (citing, *inter alia*, *Pinter*, 486 U.S. at 642 n.20).

## II.     PLAINTIFFS' EXCHANGE ACT CLAIMS FAIL

### A.     There Is No Private Right of Action Pursuant to Sections 5 and 15 (Counts III-VI)

Even taking as true for purposes of this motion that the Tokens are securities (again, they are not), Plaintiffs cannot maintain their registration-related claims under the Exchange Act. As a threshold matter, Plaintiffs' claims under Section 5 and 15(a) should be dismissed because neither section provides a private right of action. No controlling authority dictates that Section 5 or 15(a) provides a private right of action, and courts in this District have long held that Section 15(a) does not do so.[17] *See EMA Fin., LLC v. Vystar Corp.*, 2021 WL 1177801, at *3 (S.D.N.Y. Mar. 29, 2021) (Carter, J.) (Section 15(a)(1) provides no private right of action); *Goodman v. Shearson Lehman Bros. Inc.*, 698 F. Supp. 1078, 1086 (S.D.N.Y. 1988) (Walker, J.) (collecting cases holding the same). Defendants have been unable to uncover a single instance where a court has held that there is an implied private right of action under Section 5.[18]

This Court should reject Plaintiffs' request to create a right of action under either section. As the Supreme Court has emphasized, "a private right of action under federal law is not created by mere implication, but must be '**unambiguously conferred**.'" *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 332 (2015) (emphasis added) (internal citation omitted). The touchstone of this inquiry is the statute itself. *See Alexander v. Sandoval*, 532 U.S. 275, 286-87 (2001); *see*

---

[17] The Second Circuit has held that there is no private right of action under Section 15(c), while not expressly addressing Section 15(a). *See Asch v. Philips, Appel & Walden, Inc*., 867 F.2d 776, 777 (2d Cir. 1989) ("Analysis of section 15(c) under *Touche Ross* shows that, while the 'focus' of the statute [which relates to the use of manipulative or deceptive devices] might imply a private cause of action, there is little or nothing else to indicate that Congress intended to create such a remedy. The legislative history is silent, and a private cause of action would not further the purposes of the statute since a broader private right already exists under section 10(b) of the Exchange Act.").

[18] Although no court to the Defendants' knowledge has ruled upon this specific issue of whether a private right of action exists under Section 5 of the Exchange Act, courts have held that there is no private right of action for violations of Section 6, which like Section 5, relates to the registration of securities exchanges. *See Loftus v. Fin. Indus. Regul. Auth., Inc.*, 2021 WL 325773, at *4 (S.D.N.Y. Feb. 1, 2021).

*also Ziglar v. Abbasi*, 137 S. Ct. 1843, 1855 (2017) ("[W]hen deciding whether to recognize an implied cause of action, the 'determinative' question is one of statutory intent." (citation omitted)). "Without congressional intent, a 'cause of action does not exist and ***courts may not create one***, no matter how desirable that might be as a policy matter, or how compatible with the statute.'" *Olmsted v. Pruco Life Ins. Co. of N.J.*, 283 F.3d 429, 432 (2d Cir. 2002) (citing *Sandoval*, 532 U.S. at 286-87) (emphasis added).

Here, the statutory language does not provide any private right of action, whether explicitly or implicitly. Section 5 provides in relevant part that "[i]t shall be unlawful for any broker, dealer, or exchange, directly or indirectly, to . . . effect any transaction in a security" unless registered as such. 15 U.S.C. § 78e. Section 15(a)(1) provides in relevant part that "[i]t shall be unlawful for any broker or dealer . . . to effect any transactions in, or to induce or attempt to induce the purchase or sale of, any security" unless registered as a broker or dealer. 15 U.S.C. § 78o(a)(1). Nothing in the text of either provision indicates that Congress intended to afford Plaintiffs a private right of enforcement. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 290 (2002) (if Congress seeks to "create new rights enforceable under an implied private right of action," then "it must do so in clear and unambiguous terms"). In rejecting an implied private right of action in *Goodman*, Judge Walker noted that there is "no indication that Congress intended that there be a private right of action for violations of § 15(a)(1) of the Exchange Act."[19] *Goodman*, 698 F. Supp. at 1086. As this Court has recognized, where a statute does not explicitly provide for a private right of action, a court "begin[s] with the ***presumption that Congress did not intend one***" and *plaintiffs* "must

---

[19] Judge Walker analyzed the issue and collected cases reaching the same result since the Supreme Court's decision in *Cort v. Ash*. Since *Cort v. Ash*, the Supreme Court has further narrowed the circumstances under which a private right of action may be implied, so the holding in *Goodman* applies *a fortiori* here. *See, e.g., Jackson v. Birmingham Bd. of Educ.*, 309 F.3d 1333, 1338 n.5 (11th Cir. 2002) ("Since the late 1970's, the Court has gradually receded from reliance on three of these four [*Cort*] factors, focusing more and more exclusively on legislative intent alone.").

demonstrate that Congress intended to make a private right of action available, so as to overcome the presumption against implied rights of action." *Jordan v. Chase Manhattan Bank*, 91 F. Supp. 3d 491, 501 (S.D.N.Y. 2015) (Engelmayer, J.) (citing *Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 116 (2d Cir. 2007)).

In assessing whether a plaintiff has overcome the enormous presumption against implying a private right of action, courts consider whether (i) the provision contains "rights-creating language" for those protected under the statute; (ii) the statute has provided an alternative method of enforcement; and (iii) Congress provided a private right of action for enforcement of any other section of the statute. *See Olmsted*, 283 F.3d at 432-34. Here, each factor reinforces the presumption. First, unlike Sections 5 and 15, other provisions of the Exchange Act contain explicit language affording private rights of action. "Congress's explicit provision of a private right of action to enforce one section of a statute suggests that omission of an explicit private right to enforce other sections was intentional." *Id.* at 433. When Congress drafted Section 18(a), for example, it expressly provided that a "person seeking to enforce such liability [under the provision] may sue at law or in equity in a court of competent jurisdiction." 15 U.S.C. § 78r. Unquestionably, "when Congress wished to provide a private damage remedy, it knew how to do so and did so expressly." *Olmsted*, 283 F.3d at 433 (quoting *Touche Ross & Co. v. Redington*, 442 U.S. 560, 572 (1979)); *Bellikoff*, 481 F.3d at 116 (presumption *against* private right of action "buttressed" by explicit private right of action in another section within same statute).

Second, neither Section 5 nor Section 15, both of which proscribe "unlawful" conduct, contain so-called "rights-creating" language for individuals protected under the statute. As the Supreme Court has recognized, "the Court has been especially reluctant to imply causes of action under statutes that create duties on the part of persons for the benefit of the public at large." *Cannon*

*v. Univ. of Chi.*, 441 U.S. 677, 690 n.13 (1979) (citing cases where statutes prohibiting "unlawful" conduct were not found to imply private rights of action even under the more permissive prior standard). Statutes "that focus on the person *regulated* rather than the individuals *protected* create no implication of an intent to confer rights on a particular class of persons." *Bellikoff*, 481 F.3d at 116 (emphasis added) (internal citation omitted). The language of Sections 5 and 15 "describes actions by [the regulated entity] that are prohibited; it does not mention investors such as the plaintiffs." *Olmsted*, 283 F.3d at 433. The focus in Sections 5 and 15(a) on *regulated entities*— brokers, dealers, and exchanges— should "preclude finding an implied right of action." *Bellikoff*, 481 F.3d at 116.

Third, the Exchange Act provides for enforcement of its provisions by regulatory authorities. *See, e.g.*, 15 U.S.C. § 78o(b)(4); *see also* 15 U.S.C. § 78u. "The express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others." *Olmsted*, 283 F.2d at 433; *see also In Re Eaton Vance Mut. Funds Fee Litig.*, 380 F. Supp. 3d 222, 231 (S.D.N.Y. 2005) (statutory provision authorizing regulatory enforcement supported strong presumption against implying a private right of action).

Given the plain text and structure of Sections 5 and 15, Plaintiffs cannot overcome the heavy presumption against implying a private right of action, and the "judicial inquiry is complete." *See Olmsted*, 283 F.3d at 435 ("A statutory provision that does not use rights-creating language, in a statute that provides for other remedies and contains explicit private rights of action to enforce other sections, creates no ambiguity on the question of an implied private right of action."). Nevertheless, the legislative history of Sections 5 and 15 also does not indicate any Congressional intent to create a private right of action, and as the Supreme Court has cautioned,

16

"implying a private right of action on the basis of congressional silence is a hazardous enterprise, at best." *Touche Ross & Co.*, 442 U.S. at 571.[20]

Finally, Plaintiffs cannot create a "back-door" private right of action under Sections 5 and 15 by merely invoking Section 29(b), which permits the rescission of contracts made in violation of the Exchange Act. This theory was also recently rejected by Judge Carter in *EMA Financial, LLC v. Vystar Corp.*, 2021 WL 5998411, at *3 (S.D.N.Y. Dec. 20, 2021). Judge Carter specifically rejected the plaintiff's invocation of Section 29(b)'s rescission remedy as a way to circumvent the absence of a private right of action under Section 15(a). *Id.* The same result is warranted here.[21]

### B.    Plaintiffs' Section 29(b) Claims Fail to State a Cause of Action

The Court need not proceed further on Plaintiffs' Section 29(b) claims. But even if Plaintiffs could overcome the lack of an implied private right of action under Section 5 or 15 by relying on Section 29(b) (and they cannot), as a matter of law, Plaintiffs cannot seek rescission under Section 29(b), which permits a party to void an illegal contract that violates Exchange Act provisions. 15 U.S.C. § 78cc(b). "To establish a violation of Section 29(b), the plaintiffs must show that (1) the contract involved a prohibited transaction, (2) [they are] in contractual privity with the defendant[s], and (3) [they are] in the class of persons the Act was designed to protect." *Frati v. Saltzstein*, 2011 WL 1002417, at *5 (S.D.N.Y. Mar. 14, 2011) (citation omitted). Plaintiffs have not and cannot adequately plead the first two requirements.

---

[20] *See* J.S. and Mahar Ellenberger, Ellen P.; F. B. Rothman. Legislative History of the Securities Act of 1933 and Securities Exchange Act of 1934 (1934) (making no mention of a private right of action for Section 5 or 15); *see also Goodman*, 698 F. Supp. at 1086 ("Neither the express language nor the legislative history of § 15 provides a basis for concluding that Congress intended to create a right of action for money damages.") (internal citation omitted).

[21] Plaintiffs may attempt to argue that the uncontested grant of class certification in *Williams v. KuCoin et al.* relating to claims asserted under Sections 5, 15(a), and 29(b) of the Exchange Act should legitimize their claims. 2022 WL 392404 (S.D.N.Y. Feb. 9, 2022). But the defendants in that action never appeared or otherwise moved and the Clerk of Court issued a Certificate of Default prior to class certification. Thus, the court never had occasion to consider whether Section 5 or 15(a) imply a private right of action and only assessed whether the plaintiff had standing and could meet the requirements of an uncontested motion for class certification.

        1.      Plaintiffs Fail to Plead That the Only Relevant Contract
                Requires an Illegal Transaction

Section 29(b) provides for rescission of *unlawful* contracts only. *See Frati*, 2011 WL 1002417 at \*5. "[C]ontracts can be held unenforceable under § 29(b) only when the contract 'on its face ***requires*** the performance of an illegal act." *Tanzanian Royalty Expl. Corp. v. Crede CG III, Ltd.*, 2019 WL 1368570, at \*13 (S.D.N.Y. Mar. 26, 2019) (Schofield, J.) (emphasis added) (citation omitted). Thus, as this Court and others have recognized, "under Section 29(b), 'only unlawful contracts may be rescinded, ***not unlawful transactions made pursuant to lawful contracts***.'" *In re Bernard L. Madoff*, 605 B.R. at 591 n.11 (Engelmayer, J.) (emphasis added) (internal citation omitted). Plaintiffs' Section 29(b) claims must be dismissed because they cannot plead, as they must, that any actual contract between them and a Coinbase entity requires any unlawful act.

The only contract that exists between Plaintiffs and a Defendant is the User Agreement, which permits Plaintiffs to transact on the Platforms. (*See, e.g.*, Compl. ¶ 273; *supra* p. 7.) But, even under Plaintiffs' theories, the User Agreement does not *require* unlawful conduct. Plaintiffs do not dispute this fact, as evidenced by their continued use of the Platforms since filing this lawsuit and their express admission that the Coinbase "platform ***has other uses beyond the trading of securities***, including the trading of crypto-commodities (such as Bitcoin or Ethereum), which are not the subject of this suit." (Ex. 13 (ECF 31) at 6 n.3 (emphasis added); *see also* AC ¶ 49.)

Accordingly, because users are free to transact in Bitcoin, Ethereum (or not at all), nothing in the User Agreement *requires* any party to transact in the Tokens that are alleged to be "securities" (even under Plaintiffs' own allegations). Consequently, the User Agreement cannot be rescinded pursuant to Section 29(b). *See, e.g.*, *EMA Fin., LLC v. Vystar Corp.*, 336 F.R.D. 75, 81-82 (S.D.N.Y. 2020) ("[A]ssuming *arguendo* that the selling of converted shares made Ema a

broker-dealer, the selling of those shares was not required by the contract. Thus, '[a]t the time the parties entered into the Agreement, the Agreement could be performed without violating provisions of the securities laws.'"); *Tanzanian Royalty Exploration*, 2019 WL 1368570, at *13.

Plaintiffs' goal is to cherry-pick and unwind only those transactions which, in hindsight, they wish they had not entered. Therefore, likely to attempt to evade the fatal fact that the User Agreement does not require unlawful conduct, they assert that each individual transaction is an individual contract with Defendants. (AC ¶¶ 962, 985, 998.) But these individual transactions are not contracts. These transactions (with other users) were performed *pursuant to* the terms and conditions of the User Agreement. (*See* Compl. ¶ 273 ("Coinbase entered into contracts via the Coinbase User Agreement, with Plaintiffs and the members of the Class and Subclasses, pursuant to which Plaintiffs purchased Digital Asset Securities through Coinbase and paid Coinbase fees for the use of its securities exchanges . . . .").) Thus, at most, they are "unlawful transactions made pursuant to lawful contracts"—precisely what courts have held are not subject to rescission under Section 29(b). *In re Bernard L. Madoff*, 605 B.R. at 591 n.11.

Courts confronted with this issue have rejected the argument that Section 29(b) permits a plaintiff to rescind individual transactions made on their accounts rather than the underlying contract. *See Slomiak v. Bear Stearns & Co.*, 597 F. Supp. 676, 682-83 (S.D.N.Y. 1984); *see also Palmer v. Thomson & McKinnon Auchincloss, Inc.*, 474 F. Supp. 286, 291 (D. Conn. 1979) (rejecting the argument that "Section 29(b) should not only apply to the basic contract between the parties but also to each transaction that occurs thereunder"). The Court should do the same here.

### 2.   Plaintiffs Fail to Plead the Requisite Privity

Additionally, Plaintiffs cannot state a claim for rescission pursuant to Section 29(b) because they fail to plead the requisite privity with any Coinbase entity. As Plaintiffs admit, in order to use the Platforms, a user must create an account (Compl. ¶ 26) and accept the User

Agreement (*id*. ¶ 273). And the User Agreement is explicit that when customers transact in the Tokens on the Platforms, they are transacting *with each other* and not with any Coinbase entity. (*Supra* § I.A.) As a result, Plaintiffs' Section 29(b) claims against CBI must be dismissed for lack of privity. *See Frati*, 2011 WL 1002417, at *6; *Scottrade, Inc. v. BroCo Invs., Inc.*, 774 F. Supp. 2d 573, 575, 583 (S.D.N.Y. 2011). Further, because CBI is the only signatory to the User Agreement, there is *no* contract at all between Plaintiffs and CBGI, and Plaintiffs' Section 29(b) claims fail as to CBGI for lack of privity as well. *See, e.g.*, *Frati*, 2011 WL 1002417, at *6.

Plaintiffs' conclusory allegations designed to circumvent the User Agreement, including that "each transaction in a Token on the Coinbase Exchanges constitutes a contract between Coinbase and a Plaintiff or Class member" (AC ¶¶ 962, 985, 998), do not salvage its claims. Even if individual transactions could be treated as contracts that could be rescinded under Section 29(b) (which they cannot), these cursory legal conclusions do not plead the existence of a separate contractual relationship, as required. Plaintiffs fail to allege any of the requisite details of when any purported transaction-level contract *with* "Coinbase" to transact in a Token was formed, including when it was offered or accepted, the consideration for such a contract, or any other terms. *See Scottrade*, 774 F. Supp. 2d at 583 (dismissing Section 29(b) claim for lack of privity because "all the traditional elements of a contract–including 'offer, acceptance, consideration, mutual assent and intent to be bound'–are missing" (citation omitted)). Without alleging "when these contracts were executed, which of the litigants were parties to the contracts, and what terms and provisions of the contracts violated the securities laws[,]" Plaintiffs' absence of allegations as to *specific* voidable contracts "make it difficult for the Court even to review plaintiffs' claims" under Section 29(b). *Pompano-Windy City Partners, Ltd. v. Bear Stearns & Co.*, 794 F. Supp. 1265, 1288 (S.D.N.Y. 1992).

### C.        Plaintiffs' Section 29(b) Claims Are Time-Barred

Even if Plaintiffs' Section 29(b) claims could somehow survive, they are time-barred. The applicable one-year statute of limitations "run[s] from the time when an individual 'could have, through the exercise of reasonable diligence, discovered'" the alleged violation—namely that the Coinbase entities are not registered as exchanges or broker-dealers. *Alpha Cap. Anstalt v. Oxysure Sys., Inc.*, 216 F. Supp. 3d 403, 408 (S.D.N.Y. 2016); *see also Gavin/Solmonese LLC v. D'Armaud-Taylor*, 639 F. App'x 664, 667-68 (2d Cir. 2016) (dismissing Section 10(b) Exchange Act claims as time-barred where "[m]inimal [] effort" would have uncovered facts underlying plaintiff's claims). Judge Carter's recent decision in *Binance*, dismissing analogous claims relating to digital tokens traded on the Binance platform, is instructive. Like this case, "Plaintiffs' Section 29(b) claims are based on allegations that Binance formed illegal contracts and that those contracts were illegal due to Binance's operation as an unregistered exchange." *Binance*, 2022 WL 976824, at *3. But because plaintiffs failed to allege they were unaware the exchange was not registered, and based on their express acknowledgment that Binance was an "unregistered" crypto-asset exchange, Judge Carter held that their Section 29(b) claims were untimely, as the plaintiffs knew of the alleged violation more than a year prior to filing the complaint. *Id.* Here, too, Plaintiffs fail to allege that they were unaware that CBGI and CBI were not registered. Just the opposite, as in *Binance*, they have admitted that "**at all relevant times**, Coinbase has stated that it 'is not registered with the U.S. Securities and Exchange Commission and does not offer securities services in the United States or to U.S. persons.'" (Compl. ¶ 246 (emphasis added).) This admission is fatal to the Exchange Act claims.

Not only are there no allegations that CBI or CBGI ever hid their registration status, but Plaintiffs' Section 29(b) claims also derive from the User Agreement, which individuals must accept before transacting on the Platforms. Since 2018, the User Agreement has explicitly stated

that CBI is not registered with the SEC (*see* UA at 1; Ex. 14 (Oct. 2018 User Agreement) §1.2). Because each of the Plaintiffs agreed to the User Agreement prior to October 8, 2020—a year before the initial Complaint was filed—their Section 29(b) claims are time-barred. (*Supra* at p. 5.)

## III.   THE AMENDED COMPLAINT IMPERMISSIBLY LUMPS TOGETHER CBGI AND CBI IN VIOLATION OF RULE 8

Throughout the AC, Plaintiffs conflate CBI and CBGI as "Coinbase." This collective pleading violates Rule 8(a), which "'requires, at a minimum, that a complaint give ***each*** defendant fair notice of what the plaintiff's claim is and the ground upon which it rests.'" *SCE Grp. Inc. v. City of N.Y.*, 2020 WL 1033592, at *3 (S.D.N.Y. Mar. 3, 2020) (emphasis added) (citing *Atuahene v. City of Hartford*, 10 Fed. App'x 33, 34 (2d Cir. 2001)). "Pleadings fail to meet that minimum requirement where allegations 'lump[ ] all the defendants together in each claim and provide no factual basis to distinguish their conduct.'" *Id.*

Plaintiffs attempt to excuse this pleading failure by asserting that "Coinbase Global and Coinbase, Inc. are operated as one corporation" and "Coinbase refers to the two entities jointly as the 'Company' in its SEC filings." (AC ¶ 11.) But CBGI and CBI are two legally distinct corporate entities. (Ex. 15 (Feb. 2022 CBGI 10-K) at 17 ("In January 2014, Coinbase Global, Inc. was incorporated as a Delaware corporation to act as the holding company of CBI and our other subsidiaries. In April 2014, we completed a corporate reorganization whereby Coinbase, Inc. became a wholly-owned subsidiary of Coinbase Global, Inc.").)[22] The first line of the User Agreement also explicitly identifies CBI as the entity providing services to Plaintiffs: "This is a User Agreement between you [] **and Coinbase, Inc.**" (UA at 1 (emphasis added).)

---

[22] This filing is incorporated by reference (AC ¶ 11) and is also judicially noticeable. *See HB*, 2012 WL 4477552, at *4.

Because Plaintiffs fail to distinguish between the alleged conduct of CBI and CBGI and fall short of making any allegation that would permit the Court to disregard corporate distinctions, the AC fails to state a claim against either entity. *See Hao Zhe Wang*, 2020 WL 5982882, at *2 (dismissing complaint where plaintiff "allege[d] no facts to support a finding that the entities he name[d] in this lawsuit engaged in a 'common enterprise' that would permit group pleading" and noting that "'[b]y lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct,' [the plaintiff] fails to satisfy Rule 8's minimum standards." (citation omitted)). At the very least, Rule 8 dictates that CBGI should be dismissed, as it is not "a party to the [agreement] underlying this dispute" nor does it provide any of the services at issue in this action. *Patrico v. Voya Fin., Inc.*, 2017 WL 2684065, at *5 (S.D.N.Y. June 20, 2017) (dismissing certain defendants that were distinct legal entities under Rule 8(a) because only one was a party to the underlying agreement).

## IV.    PLAINTIFFS FAIL TO STATE A CLAIM FOR CONTROL PERSON LIABILITY AGAINST CBGI OR ARMSTRONG (COUNTS II, VII)

To allege a claim for control person liability, a plaintiff must plead facts showing (1) a primary violation by a controlled person; (2) control of the primary violator by the defendant, and (3) "meaningful culpable conduct [by an individual defendant] beyond mere status as a director or officer."[23] *Pub. Emps. Ret. Sys. of Miss. v. Merrill Lynch & Co.*, 714 F. Supp. 2d 475, 485 (S.D.N.Y. 2010) (Securities Act); *Long Miao v. Fanhua, Inc.*, 442 F. Supp. 3d 774, 808 (S.D.N.Y. 2020) (Engelmayer, J.) (Exchange Act); *see also* 15 U.S.C. § 77o(a); 15 U.S.C. § 78t(a). A plaintiff must plead "*actual* control" over the matters at issue; "conclusory allegations of control are

---

[23] To plead culpable participation, "recklessness is the appropriate minimum standard of culpability." *Special Situations Fund III QP, L.P., et al. v. Deloitte Touche Tohmatsu CPA, Ltd., et al.*, 33 F. Supp. 3d 401, 438 (S.D.N.Y. July 21, 2014) (internal quotation and citation omitted).

23

insufficient as a matter of law." *In re Smith Barney Transfer Agent Litig.*, 884 F. Supp. 2d 152, 166 (S.D.N.Y. 2012); *see also In re Lehman Bros. Mortg.-Backed Sec. Litig.*, 650 F.3d 167, 185 (2d Cir. 2011) (adopting the same definition of control for Section 15 claims as Section 20). Moreover, "in order for [a defendant] to incur Section 20(a) liability, he must not only have control over the primary violator, but have control over the transaction in question." *Grupo Verzatec S.A. de C.V. v. RFE Inv. Partners*, 2019 WL 1437617, at *6 (S.D.N.Y. Mar. 29, 2019).

First, because Plaintiffs have not stated a primary violation under the Securities Act or the Exchange Act, their control person claims against CBGI and Armstrong fail as a matter of law. *See, e.g.*, *ECA, Loc. 134 IBEW Joint Pension Tr. of Chi. v. JPMorgan Chase Co.*, 553 F.3d 187, 207 (2d Cir. 2009); *Long Miao*, 442 F. Supp. 3d at 808 (Engelmayer, J.) (dismissing Section 20(a) control person claims because plaintiff failed to adequately allege a primary violation).[24]

Second, the AC fails to sufficiently allege control by CBGI or Armstrong over CBI. The AC pleads only conclusory allegations of control stemming from CBGI's status as corporate parent: "by virtue of its stock ownership, agency, agreements or understandings, specific acts, and otherwise, [CBGI] had the power and authority to direct the management and activities of [CBI] and its employees, and to cause [CBI] to engage in the wrongful conduct complained of herein"; and CBGI "purposefully exercised its power and influence to cause [CBI] to violate the Securities Act . . . by promoting, soliciting, offering, and selling unregistered securities." (AC ¶¶ 945-46; *id.* ¶¶ 1005-07 (similar allegations under the Exchange Act).) But "[t]he parent/subsidiary relationship is an insufficient 'basis from which to infer control . . . [because] a parent corporation and its

---

[24] As with their federal claims, if Plaintiffs cannot prove a primary violation under California or New Jersey law, their corresponding control person claims (Counts X and XV) must be dismissed. *See Jackson v. Fischer*, 931 F. Supp. 2d 1049, 1064 (N.D. Cal. 2013) ("[I]n the absence of a viable claim of primary liability, plaintiff cannot state a claim against [defendants] for control person liability under § 25504."); N.J. Stat. § 49:3-71(d) (control person liability attaches to those who "control[ ] a seller *liable* under [49:3-71(a)]" (emphasis added)).

24

subsidiary are regarded as legally distinct entities.'" *Pub. Emps.' Ret. Sys. of Miss.*, 714 F. Supp. 2d at 485 (citation omitted); *see also Emps. Ret. Sys. of the Gov't of the V.I.*, 804 F. Supp. 2d at 157 ("Allegations that an entity was the parent corporation of a primary violator, standing alone, do not make out a claim of control."). The only other allegations, including that CBGI "had the power to, and did, direct [the primary violator, are] too conclusory to warrant an inference in the plaintiff's favor." *Id.* "[G]eneralized allegations" lacking any factual support, like those offered here, are the type of allegations that "do not establish [an entity's] control of any specific transaction" and are insufficient as a matter of law. *Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*, 96 F. Supp. 3d 325, 345 n.16 (S.D.N.Y. 2015); *see also In re Smith Barney*, 884 F. Supp. 2d at 166. "Simply reiterating the definition of control, without facts demonstrating whether this definition has been met, is insufficient." *Yi v. GTV Media Grp. Inc.*, 2021 WL 2535528, at *4 (S.D.N.Y. June 18, 2021).

The claims premised on Armstrong's position as CEO of CBGI similarly fail to state a claim based on any purported primary violation by CBI.[25] Just as standalone allegations of a parent/subsidiary relationship cannot make out a claim of control against CBGI, such allegations necessarily fail as to the parent's CEO as well. *See, e.g.*, *Fezzani v. Bear, Stearns & Co.*, 384 F. Supp. 2d 618, 646 n.10 (S.D.N.Y. 2004) (plaintiffs "cannot stretch the concept of control liability so far" by seeking "tertiary liability" through defendant's alleged control of an entity that allegedly controlled the primary violator); *Teamsters Loc. 445 Freight Div. Pension Fund v. Bombardier Inc.*, 2005 WL 2148919, at *15 (S.D.N.Y. Sept. 6, 2005) ("The allegation that [individual defendant] was an officer and director of the parent corporation of a primary violator, standing

---

[25] Defendants reserve all rights to challenge control person claims against Armstrong premised upon the incorrect allegation that he was an officer, including CEO, of CBI during the putative class period. (*Supra* n.12.)

alone, is insufficient to state a claim."). Nowhere does the AC allege how Armstrong—in his capacity as CEO of CBGI—exercises control over CBI, the alleged primary violator. Nor does the AC plead any facts regarding Armstrong's actual role with respect to the specific "transactions in question," as it must. *Grupo Verzatec*, 2019 WL 1437617, at *6. Rather, the AC vaguely alleges Armstrong has "consistent and daily management of Coinbase's operations, including the decision not to register as a securities exchange or a broker-dealer and the decision to list unregistered securities." (AC ¶ 12.) These generic, conclusory allegations of control—devoid of substance and untethered to any specific Token at issue—are insufficient as a matter of law. *In re Smith Barney*, 884 F. Supp. 2d at 166. Even if the AC contained sufficient allegations of Armstrong's control over CBI and the transactions at issue, Plaintiffs fail to plead any facts regarding Armstrong's "culpable participation" with respect to the alleged events that form the basis of their claims. *In re Am. Realty Cap. Properties, Inc. Litig.*, 2015 WL 6869337, at *4 (S.D.N.Y. Nov. 6, 2015); *see also DeMaria v. Anderson*, 153 F. Supp. 2d 300, 314 (S.D.N.Y. 2001). Instead, the AC contains boilerplate allegations that Armstrong was "involved in the decision" (AC ¶ 41) and therefore "culpably participated in" (*id.* ¶ 954) the purported primary violations. This rote recitation is a far cry from what is required under the law.[26]

Finally, asserting the control person claims in the alternative against CBGI fails because Plaintiffs cannot allege both primary and alternative control person liability based on the *same* alleged conduct. As in *City of Pontiac General Employees' Retirement System. v. Lockheed Martin Corp.*, although the AC "summarily alleges that the [alleged primary violators] controlled [the

---

[26] Because Plaintiffs' federal control person claims fail, so too should their state law control person claims. *See Varrasso v. Barksdale*, 2015 WL 9008697, at *6 (S.D. Cal. Dec. 14, 2015) (using the same factors to analyze a control person claim under the Exchange Act and Cal. § 25504); *Fed. Home Loan Bank of S.F. v. Countrywide Fin. Corp.*, 214 Cal. App. 4th 1520, 1531 (2013) ("Courts have held section 25504 'is substantially the same as' Section 15 [of the Securities Act]." (citations omitted)); *Abrams v. Ohio Cas. Ins. Co.*, 731 A.2d 48, 51 (N.J. Super. Ct. App. Div.) ("Federal securities law concepts are used to define 'control person' under the New Jersey statute.").

entity], the facts alleged all address the primary violation." 875 F. Supp. 2d at 375. Because Plaintiffs conflate CBGI and CBI throughout the AC (*supra* § III), Plaintiffs do not allege "any plausible alternative theory where [CBGI is] not [a] primary violator[ ] and yet can still be held liable on a secondary violation theory through control liability." *Id.* at 375; *see also Kalnit v. Eichler*, 85 F. Supp. 2d 232, 246 (S.D.N.Y. 1999) (noting that control person claim failed where plaintiff's theory of case involved alleged control person defendants as primary violators). Thus, the control person claims against CBGI should be dismissed on this basis as well.

## V.   PLAINTIFFS' STATE LAW CLAIMS FAIL

### A.   Plaintiffs Cannot State a Claim that Defendants are Statutory Sellers Under California, Florida, or New Jersey State Law (Counts VIII, XI, and XIII)

Plaintiffs bring claims under California, Florida, and New Jersey state law for the alleged offer or sale of unregistered "securities." Each of these claims asserted under the state Blue Sky law should be construed consistently with the corresponding Section 12(a)(1) federal claim. *See Wanetick v. Mel's of Modesto, Inc.*, 811 F. Supp. 1402, 1406 (N.D. Cal. 1992) (applying *Pinter*'s definition of statutory "seller" to claims brought under California law); *Hillard v. Black*, 125 F. Supp. 1071, 1083 (N.D. Fla. 2000); *Rushing v. Wells Fargo Bank, N.A.*, 752 F. Supp. 2d 1254, 1260 (M.D. Fla. 2010) (noting that "Florida courts look to [the Securities Act] laws when interpreting [Florida Blue Sky laws]"); *Metz v. United Cntys. Bancorp*, 61 F. Supp. 2d 364, 380 (D.N.J. 1999) ("The Court does not have reason to believe that the New Jersey statute [§ 49:3-71] is any more or less exacting than the corresponding federal statutes."); *see also generally Binance*, 2022 WL 976824, at *5 (dismissing California, Florida, and New Jersey Blue Sky claims because "[c]ourts often analyze Blue Sky laws in relation to their federal counterparts"). Because Plaintiffs cannot allege that Defendants either directly passed title to any of the Tokens or that Defendants successfully solicited their purchases (*supra* § I), Plaintiffs' state law claims should be dismissed

because Plaintiffs do not (and cannot) plead that Defendants are "statutory sellers."

**B.    Plaintiffs' State Law Claims Alleging CBI and CBGI Sold "Securities" as Unregistered Broker-Dealers Fail (Counts IX, XII, and XIV)**

Plaintiffs also allege violations of the California, Florida, and New Jersey statutes that prohibit the sale of a "security" by an unregistered "broker" or "dealer." Each of these claims fail as a matter of law because Plaintiffs cannot allege that CBI or CBGI directly offered or sold Plaintiffs the purported securities at issue.

To start, each statute by its express terms establishes liability only for the individual or entity who offered or sold the purported security. The California statute at issue states that a "person who **purchases** a security **from** or sells a security to an [unregistered] broker-dealer. . . may bring an action." Cal. Corp. Code § 25501.5(a)(1) (emphasis added). Likewise, the Florida statute states that "[n]o dealer. . . **shall sell or offer** for sale any securities . . . unless the person has been registered." Fla. Stat. § 517.12(1). Finally, the New Jersey statute dictates that "[a]ny person who **offered**, **sold** or purchased a security or engaged in the business of giving investment advice to a person in violation of [§ 49:3-56 (prohibiting acting as an unregistered broker-dealer)], is liable to that person." N.J. Stat. § 49:3-71(c). In each instance, the statutory language mandates that an individual can recover only from the alleged broker or dealer who offered or sold the alleged "security."[27] Plaintiffs do not and cannot sufficiently allege that CBI or CBGI directly transacted with them. (*Supra* § I.A.)

Consistent with the statutory language restricting who may be liable, case law confirms that a plaintiff must allege privity with a defendant to state a claim under these statutes. *See Jackson*

---

[27] The AC itself acknowledges this statutory requirement. (AC ¶ 1035 ("Under California law, any person who offers or sells a security in violation of Cal. Corp. Code § 25210 is liable to the purchaser . . . ."); *id*. ¶ 1069 ("Under Florida law, any person who sells a security in violation of Fla. Stat. § 517.12(1) is liable to the purchaser."); *id*. ¶ 1091 ("Under New Jersey law, any person who offers or sells a security in violation of N.J. Stat. § 49:3-56(a) is liable to the purchaser.").)

*v. Fischer*, 2015 WL 1143582, at *22 (N.D. Cal. Mar. 13, 2015) (California § 25501.5 "expressly requires privity of contract as a condition to liability" in order to recover rescission or damages as the result of the purchase of an alleged security from an unlicensed broker-dealer); *Trilogy Props. LLC v. SB Hotel Assocs. LLC*, 2010 WL 7411912, at *12 (S.D. Fla. Dec. 23, 2010) ("[F]or a buyer to have a claim under Florida Statutes § 517.211, buyer/seller privity must exist."); *Lord Abbett Mun. Income Fund, Inc. v. Asami*, 2014 WL 3417941, at *14 (N.D. Cal. July 11, 2014) (noting that New Jersey Statute § "49:3–71(a) requires privity in order to establish liability"). Plaintiffs do not and cannot allege contractual privity with CBI or CBGI with respect to any specific transaction of Tokens alleged in the AC in light of the express terms of the User Agreement demonstrating that transactions are between users rather than with Defendants. (*Supra* § II.B.2.) Therefore, Plaintiffs have not pled a viable claim under any of these state statutes and these claims should be dismissed.

### C.    Certain of Plaintiffs' California and Florida State Law Claims Are Time-Barred (Counts IX, XII)

Plaintiffs' claims under California and Florida law for the sale of a security by an unregistered broker/dealer also should be dismissed as time-barred. Although the statute of limitations for claims arising under California § 25501.5 may be three years or two years from the date of discovery, at least one court has considered the two-year limitations period as applicable to claims asserting that a defendant was purportedly an unregistered broker-dealer.[28] *See Jackson*, 2015 WL 1143582, at *21. To invoke the discovery rule in California, and pause the statute of limitations from running, Plaintiffs must specifically plead facts showing the "inability to have made earlier discovery despite reasonable diligence." *Id.* at *22. The AC cannot do so, given that

---

[28] The Court need not resolve this open question because Oberlander's cause of action relating to CBI or CBGI's registration status accrued <u>in 2017</u> and is thus barred either way. (*Supra* p. 5.)

California resident Oberlander signed up in 2017 and the registration status of CBI and CBGI was publicly available, confirmed by Plaintiffs' admission that "at all relevant times, Coinbase has stated that it is not registered." (Compl. ¶ 246.) Judge Carter's decision in *Binance* is again instructive. In dismissing the plaintiffs' registration-related claims as time-barred despite their attempt to invoke the discovery rule, Judge Carter held the claims were "based on allegations that Binance formed illegal contracts and that those contracts were illegal due to Binance's operation as an unregistered exchange. However, Plaintiffs do not allege that they were unaware the exchange was not registered." *Binance*, 2022 WL 976824, at *3. Thus, the statute of limitations began to run from the date plaintiffs knew of the purported violation—namely, that Binance was not registered as an exchange or broker-dealer. *Id*. That same analysis applies to Plaintiffs' claim that Defendants improperly failed to register as a broker-dealer under California law, and by their own admission, Plaintiffs have known the relevant facts for over three years.

Plaintiffs' corresponding claim under Florida law is similarly untimely. Florida's two-year limitations period for claims under Florida § 517.12(1) runs from the date when the facts giving rise to the cause of action were discovered or should have been discovered with the exercise of due diligence. *See* Fla. Stat. Ann. § 95.11(4)(e); *GLK, L.P. v. Four Seasons Hotel Ltd.*, 22 So. 3d 635, 637 (Fla. Dist. Ct. App. 2009) (dismissing rescission claim under Florida securities law because plaintiff had all the facts necessary to determine whether it had a cause of action). Florida resident Underwood signed up for CBI in December 2017 and began transacting on the Platforms by February 2019, and thus was on notice that neither CBI nor CBGI was registered at that time— more than two years before this litigation began. (*Supra* p. 5.) Accordingly, this claim is time-barred. *See also Binance*, 2022 WL 976824, at *3.

## CONCLUSION

For these reasons, the AC should be dismissed in its entirety with prejudice.

30

Dated:  New York, New York
        May 10, 2022

Respectfully submitted,

/s/ *Jay B. Kasner*
Jay B. Kasner
Lara A. Flath
Alexander C. Drylewski
Abigail E. Davis
SKADDEN, ARPS, SLATE,
    MEAGHER & FLOM LLP
One Manhattan West
New York, NY 10001
Phone: (212) 735-3000
Fax: (212) 735-2000
jay.kasner@skadden.com
lara.flath@skadden.com
alexander.drylewski@skadden.com
abigail.sheehan@skadden.com

*Attorneys for Defendants*