UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| CHRISTOPHER UNDERWOOD et al., Individually and on Behalf of All Others Similarly Situated, <br><br> *Plaintiffs*, <br><br> v. <br><br> COINBASE GLOBAL, INC., COINBASE, INC., and BRIAN ARMSTRONG <br><br> *Defendants*. | Case No. 1:21-cv-08353 (PAE) |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS THE AMENDED COMPLAINT

Jay B. Kasner
Lara A. Flath
Alexander C. Drylewski
Abigail E. Davis
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
One Manhattan West
New York, NY 10001
Phone: (212) 735-3000
Fax: (212) 735-2000

*Attorneys for Defendants*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................ ii

ARGUMENT ........................................................................................................................................ 2

I.     DEFENDANTS ARE NOT SECTION 12(A)(1) STATUTORY SELLERS ..................... 2

        A.     The User Agreement Is Properly Considered At This Stage And Explicit That Title Remains With Users, Not Any Coinbase Entity ...................................... 2

        B.     Plaintiffs Fail to Allege That Either CBGI or CBI Passed Title ............................. 5

        C.     Plaintiffs Fail to Allege Successful Solicitation ...................................................... 7

II.    PLAINTIFFS' EXCHANGE ACT CLAIMS ARE NOT VIABLE .................................. 7

III.   PLAINTIFFS' "SHORTHAND" PLEADING VIOLATES RULE 8 .............................. 11

IV.   PLAINTIFFS FAIL TO REPAIR THEIR CONTROL PERSON CLAIMS ................... 12

V.    PLAINTIFFS FAIL TO SAVE THEIR STATE LAW CLAIMS .................................... 13

CONCLUSION ................................................................................................................................... 13

# **TABLE OF AUTHORITIES**

Page(s)

## **CASES**

*Alpha Capital Anstalt v. Oxysure Systems, Inc.*,
    216 F. Supp. 3d 403 (S.D.N.Y. 2016) ................................................................................. 11

*In re Amaranth Natural Gas Commodities Litigation*,
    587 F. Supp. 2d 513 (S.D.N.Y. 2008), *aff'd*, 730 F.3d 170 (2d Cir. 2013) ........................ 12

*Anderson v. Binance*,
    No. 1:20-cv-2803 (ALC), 2022 WL 976824 (S.D.N.Y. Mar. 31, 2022) ............................ 11

*Anwar v. Fairfield Greenwich Ltd.*,
    728 F. Supp. 2d 372 (S.D.N.Y. 2010) ................................................................................. 11

*Atuahene v. City of Hartford*,
    10 F. App'x 33 (2d Cir. 2001) ............................................................................................ 11

*Bellikoff v. Eaton Vance Corp.*,
    481 F.3d 110 (2d Cir. 2007) ................................................................................................. 8

*Berckeley Investment Group, Ltd. v. Colkitt*,
    455 F.3d 195 (3d Cir. 2006) ............................................................................................ 8, 11

*In re Bernard L. Madoff Investment Securities, LLC*,
    605 B.R. 570 (S.D.N.Y. 2019), *aff'd*, 830 F. App'x 669 (2d Cir. 2020) ......................... 2, 9

*In re Bernard L. Madoff Investment Securities LLC*,
    773 F.3d 411 (2d Cir. 2014) ............................................................................................... 11

*Cruz v. City of New York*,
    No. 15 Civ. 2265 (PAE), 2016 WL 234853 (S.D.N.Y. Jan. 19, 2016) ................................ 5

*Dietrich v. Bauer*,
    No. 95 CIV. 7051 (LMM), 1996 WL 709572 (S.D.N.Y. Dec. 10, 1996) ........................... 5

*Diskin v. Lomasney & Co.*,
    452 F.2d 871 (2d Cir. 1971) ............................................................................................... 11

*Duffey v. Twentieth Century Fox Film Corp.*,
    14 F. Supp. 3d 120 (S.D.N.Y. 2014) ................................................................................... 3

*Ema Financial, LLC v. Vystar Corp.*,
    336 F.R.D 75 (S.D.N.Y. 2020) ............................................................................................ 9

*Ema Financial, LLC v. Vystar Corp.*,
    No. 1:19-CV-01545-ALC-GWG, 2021 WL 5998411 (S.D.N.Y. Dec. 20, 2021) .............. 8

*Fezzani v. Bear, Stearns & Co.*,
    384 F. Supp. 2d 618 (S.D.N.Y. 2004)..................................................................................12

*Goodman v. Shearson Lehman Bros. Inc.*,
    698 F. Supp. 1078 (S.D.N.Y. 1988)......................................................................................9

*Griffin v. PaineWebber, Inc.*,
    No. 99 CIV. 2292(VM), 2001 WL 740764 (S.D.N.Y. June 29, 2001)................................7

*Jackson v. Fischer*,
    No. C 11-2753 PJH, 2015 WL 1143582 (N.D. Cal. Mar. 13, 2015) ................................13

*Jesner v. Arab Bank, PLC*,
    138 S. Ct. 1386 (2018)..........................................................................................................8

*Jordan v. Chase Manhattan Bank*,
    91 F. Supp. 3d 491 (S.D.N.Y. 2015).....................................................................................7

*Landegger v. Cohen*,
    5 F. Supp. 3d 1278 (D. Colo. 2013)......................................................................................8

*Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*,
    594 F.3d 383 (5th Cir. 2010) ................................................................................................4

*McMahan & Co. v. Wherehouse Entertainment, Inc.*,
    65 F.3d 1044 (2d Cir. 1995).................................................................................................4

*Olmsted v. Pruco Life Insurance Co. of New Jersey*,
    283 F.3d 429 (2d Cir. 2002).................................................................................................8

*Ortiz v. Fibreboard Corp.*,
    527 U.S. 815 (1999)..............................................................................................................3

*P. Stolz Family Partnership L.P. v. Daum*,
    355 F.3d 92 (2d Cir. 2004).................................................................................................11

*Palmer v. Thomson & McKinnon Auchincloss, Inc.*,
    474 F. Supp. 286 (D. Conn. 1979).....................................................................................10

*In re Petrobras Securities Litigation*,
    150 F. Supp. 3d 337 (S.D.N.Y. 2015).............................................................................. 6-7

*Pinter v. Dahl*,
    486 U.S. 622 (1988)...............................................................................................2, 5, 6, 7

*In re Polaroid ERISA Litigation*,
    362 F. Supp. 2d 461 (S.D.N.Y. 2005)................................................................................11

*Pompano-Windy City Partners, Ltd. v. Bear Stearns & Co.*,
 794 F. Supp. 1265 (S.D.N.Y. 1992) ..................................................................10

*Public Employees' Retirement Systems of Mississippi v. Merrill Lynch & Co.*,
 714 F. Supp. 2d 475 (S.D.N.Y. 2010) ................................................................13

*In re Refco Securities Litigation*,
 759 F. Supp. 2d 301 (S.D.N.Y. 2010) ...............................................................4, 6

*Rhoades v. Powell*,
 644 F. Supp. 645 (E.D. Cal. 1986), *aff'd sub nom. Rhoades v. Merrill Lynch,*
 *Pierce, Fenner & Smith,* 961 F.2d 217 (9th Cir. 1992) .......................................8

*Slomiak v. Bear Stearns & Co.*,
 597 F. Supp. 676 (S.D.N.Y. 1984) .......................................................................8

*Tanzanian Royalty Exploration Corp. v. Crede CG III, Ltd.*,
 No. 18 Civ. 4201 (LGS), 2019 WL 1368570 (S.D.N.Y. Mar. 26, 2019) .............9

*In re Tezos Securities Litigation*,
 No. 17-cv-06779-RS, 2018 WL 4293341 (N.D. Cal. Aug. 7, 2018) ...................6

*In re UBS AG Securities Litigation*,
 No. 07 Civ. 11225(RJS), 2012 WL 4471265 (S.D.N.Y. Sept. 28, 2012), *aff'd sub*
 *nom. City of Pontiac Policemen's & Firemen's Retirement System*,
 752 F.3d 173 (2d Cir. 2014) ...............................................................................13

*Van Houtven v. Adams*,
 No. 13 Civ.1964(CM), 2014 WL 1338066 (S.D.N.Y. Apr. 3, 2014), *aff'd*, 605 F.
 App'x 37 (2d Cir. 2015) .......................................................................................3

*In re Vivendi Universal, S.A.*,
 381 F. Supp. 2d 158 (S.D.N.Y. 2003) ................................................................13

*Western Federal Corp. v. Erickson*,
 739 F.2d 1439 (9th Cir. 1984) ..............................................................................8

*Zerman v. Jacobs*,
 510 F. Supp. 132 (S.D.N.Y. 1981) ..................................................................9, 10

## OTHER AUTHORITIES

Black's Law Dictionary (11th ed. 2019) ..........................................................................5

The Opposition is striking for what it does not do. Plaintiffs fail to point to case law or well-pleaded allegations supporting their novel claim that CBGI or CBI is a statutory seller. Similarly, Plaintiffs cannot cite a single case from this District that establishes their right to bring rescission claims pursuant to either Section 5 or 15(a) of the Exchange Act. Instead, unable to rebut the arguments requiring dismissal, Plaintiffs urge the Court to ignore material properly considered at this stage. They start by asking the Court to ignore the User Agreement—the contract that formed the centerpiece of Plaintiffs' application for injunctive relief—which is integral to Plaintiffs' claims and properly considered on this motion under well-settled law.[1] Plaintiffs also retreat from references to the User Agreement in the Complaint. Because the User Agreement is explicit that users transact with one another (not "Coinbase") and retain title, it is fatal to Plaintiffs' Section 12(a) claim. But even if the Court did not consider the applicable contractual language and prior admissions (as it should), the AC does not allege Defendants directly passed title. Instead, the Opposition argues that allegations regarding custody of user assets and the form of transactions on the blockchain transform Defendants into statutory sellers. These allegations are insufficient to state a claim, and Plaintiffs' theory—and the dramatic expansion of Section 12 liability that it would create for collateral participants across industries—is contrary to the Supreme Court's reasoning in *Pinter v. Dahl* and unsupported by Plaintiffs' cited authority. (*Infra* §I.)

Plaintiffs do not dispute that Sections 5 and 15(a) of the Exchange Act fail to provide an express private right of action (Opp. 17-20) and cannot point to any controlling authority creating an implied one. Nor does Section 29(b) create a "back door" allowing Plaintiffs to assert claims they otherwise cannot. Critically, Plaintiffs concede that the User Agreement "addresses both

---

[1] Capitalized terms not defined herein have the meanings assigned in Defendants' memorandum of law (ECF 59 ("Brief" or "Br.")). Unless otherwise noted, all emphasis in case and record citations is added. The User Agreement ("UA") is attached as Exhibit 2 to the Declaration of Lara A. Flath dated May 10, 2022 (ECF 60). Exhibits 16 and 17 are attached to the Reply Declaration of Lara A. Flath dated August 5, 2022.

prohibited *and non-prohibited* transactions" (Opp. 21); thus, even if Plaintiffs had a right of action, their Section 29(b) claims fail because "only unlawful *contracts* may be rescinded, not unlawful *transactions* made pursuant to lawful contracts," as this Court recognized in *In re Bernard L. Madoff Inv. Secs., LLC*, 605 B.R. 570 (S.D.N.Y. 2019), a case the Opposition fails to address. (*Infra* §II.) For these reasons and the others discussed herein, Plaintiffs' Section 29(b) claims fail.

Further, Plaintiffs' justification for grouping CBGI and CBI together in violation of Rule 8 is meritless. Contrary to Plaintiffs' assertion, "shorthand" pleading (Opp. 24) is not permissible. (*Infra* §III.) Plaintiffs' failure to distinguish between Defendants likewise dooms their control person claims, particularly due to the absence of allegations specific to CBGI as a primary violator and Plaintiffs' recognition that Armstrong is *not* the CEO of CBI. (*Infra* §IV.) Finally, Plaintiffs concede that their state law claims rise and fall with their federal claims; thus, they should be dismissed on the same grounds and on those set forth in the Brief. (*Infra* §V.)

Accordingly, and because Plaintiffs eschewed the opportunity to amend the AC, the AC should be dismissed with prejudice.

## ARGUMENT

### I. DEFENDANTS ARE NOT SECTION 12(A)(1) STATUTORY SELLERS[2]

#### A. The User Agreement Is Properly Considered At This Stage And Explicit That Title Remains With Users, Not Any Coinbase Entity

Any suggestion that Defendants pass title such that they could be statutory sellers under *Pinter v. Dahl*, 486 U.S. 622 (1988), is directly refuted by the User Agreement, which states that "*[t]itle to Digital Currency shall at all times remain with [the user] and shall not transfer to Coinbase [Inc.]*" and "*[n]one of the Digital Currencies in your Digital Currency Wallet are the*

---

[2] While Defendants do not agree that any Tokens are "securities," they do not move to dismiss the AC on that basis.

*property of, or shall or may be loaned to Coinbase [Inc.]*." (UA §2.6.1; Br. 9-10.) Plaintiffs urge the Court to ignore this dispositive language because, unlike the initial Complaint, the AC does not reference the User Agreement. (Opp. 12.) But "clever drafting" cannot prevent the Court from considering facts drawn from integral documents and particularly those facts that "undermine the legitimacy of the plaintiff's claim." *Duffey v. Twentieth Century Fox Film Corp.*, 14 F. Supp. 3d 120, 124 n.1 (S.D.N.Y. 2014). This is true even where plaintiff attempts to "plead around" a document by "refusing to make reference to it." *Van Houtven v. Adams*, 2014 WL 1338066, at *2 (S.D.N.Y. Apr. 3, 2014). Any assertion that Plaintiffs' "claims do not arise from the User Agreement" (Opp. 12) strains credulity as it is the means by which users transact and governs the relationship between CBI and its users, including the transaction fees Plaintiffs seek to rescind. (Compl. ¶ 273; AC ¶¶ 956-78; UA §3.3 (Fees).) As an integral document, it should be considered.[3]

The User Agreement's centrality is further confirmed by the initial Complaint, which expressly referenced it. Plaintiffs' argument that it "was filed by a *different set of Plaintiffs*" (Opp. 10 (emphasis in original)), ignores that two of the three Lead Plaintiffs were parties at the time represented by co-lead counsel, and, as for the other, due process concerns are not present where "a person, although not a party, has his interests adequately represented by someone with the same interests who is a party." *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 846 (1999).

Plaintiffs' other excuses to try to avoid the fatal implications of the User Agreement all fail. For example, characterizing the User Agreement's language as "made-for-litigation" (Opp. 8 n.2) ignores that similar text pre-dates both the filing of the initial Complaint (October 2021) and

---

[3] Plaintiffs mischaracterize the prior proceedings regarding the User Agreement. Defendants did not attempt to "impede this litigation" by updating the User Agreement, nor did CBI "back away" from its ability to do so. (Opp. 12.) Instead, as the hearing transcript—to which Plaintiffs make no reference—makes plain, Defendants accepted the invitation to moot the controversy by agreeing not to rely upon the dispute resolution provision of the January 2022 User Agreement for purposes of this litigation. (Ex. 4 at 23:5-15.)

the alleged Class Period (October 2019). (*E.g.*, Ex. 16 (Jan. 2019 UA) §2.6.1.)[4] And the argument that this version of the User Agreement cannot bind certain Lead Plaintiffs (Opp. 13) is a red herring. The question is not whether Plaintiffs are bound by any particular version of the User Agreement, but whether the Court may take notice of language that refutes inadequately pleaded allegations. (Br. 6.) The answer is yes. Likewise, there is no merit to the suggestion that the User Agreement is an impermissible "waiver" of Securities Act claims (Opp. 15), as the User Agreement contains no such waiver, express or implied. The case on which Plaintiffs rely, *McMahan & Co. v. Wherehouse Entertainment, Inc.*, 65 F.3d 1044 (2d Cir. 1995) (Opp. 15), is distinguishable. There, a no-action clause that imposed pre-suit procedural requirements was found to strip certain classes of plaintiffs from exercising their substantive rights under the securities laws. *Id*. at 1051. The User Agreement does no such thing; it simply reveals that Plaintiffs' claims have no merit. *See Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 390 (5th Cir. 2010) (clauses in agreement did not impermissibly "waive" plaintiffs' right to sue).

Finally, *In re Refco Securities Litigation*, 759 F. Supp. 2d 301 (S.D.N.Y. 2010) (Opp. 8)—the sole case Plaintiffs cite to support their attempt to escape the plain language of the User Agreement—***confirms*** that a court should look to the terms of the relevant agreement when evaluating issues of ownership and title. In a prior ruling that became law of the case, Judge Lynch determined that the agreement at issue "permitted [the broker, Refco] to 'use or dispose of' any other customer assets in the[ir] account *in any way it saw fit*." *Id.* at 311. Accordingly, Refco's "right to dispose of the [customer] funds *for any purpose* provide[d] a strong indication that the . . . [c]ustomers' funds were not segregated and that [Refco] was not acting as a bailee." *Id.* at 330. In

---

[4] Insofar as Plaintiffs argue that another version of the User Agreement suggests "that Coinbase is the direct seller of the Tokens" (Opp. 15), that ignores that version's acknowledgement that "Title to Digital Currency shall at all times remain with you and shall not transfer to Coinbase [Inc.]." (Ex. 17, §2.6.1.)

stark contrast, the User Agreement provides that title to and control over the Tokens remains with users. (UA §2.6.1; UA §2.6.2 ("[The customer] control[s] the Digital Currencies held in your Digital Currency Wallet.").) At most, the User Agreement describes activity akin to a bailment, which "involves a change in possession **but not in title**," *see Bailment*, Black's Law Dictionary (11th ed. 2019), and does not support a Section 12(a) claim.

### B. Plaintiffs Fail to Allege That Either CBGI or CBI Passed Title

Even if the User Agreement did not dispose of the Section 12(a) claims, they are inadequately pleaded. To start, only "the owner" of an asset can pass title. *Pinter*, 486 U.S. at 642 ("[I]t is settled that §12(1) imposes liability **on the owner** who passed title, or other interest in the security . . . ."). Plaintiffs agree and admit that users—not "Coinbase"—own their Tokens. (*E.g.*, AC ¶¶ 85, 90, 95 ("**[c]ertain members of the class currently own** [each Token]," not CBI or CBGI); Opp. 8.) Even if a non-owner could pass title—and Plaintiffs cite nothing to say so—nowhere does the AC allege that Plaintiffs themselves or any users have transferred title to CBI or CBGI or that either entity takes title. Plaintiffs cannot amend the AC through the Opposition, especially after declining the invitation to amend. *Cruz v. City of New York*, 2016 WL 234853, at *6 (S.D.N.Y. Jan. 19, 2016) (Engelmayer, J.). In addition, nowhere does the AC allege that Lead Plaintiffs purchased Tokens directly from Defendants. *See Dietrich v. Bauer*, 1996 WL 709572, at *5 (S.D.N.Y. Dec. 10, 1996) (dismissing §12 claim where a plaintiff "merely allege[d] that he purchased . . . stock" but "fail[ed] to allege when or from whom he purchased the stock").

Plaintiffs instead argue that allegations that "Coinbase" holds user assets in a centralized wallet and that the circumstances by which transactions are reflected on the blockchain mean that user "assets come directly from the centralized exchange," making Defendants statutory sellers. (AC ¶¶ 33-34.) Given the complex and novel form of blockchain transactions, courts examine the underlying realities rather than their technical appearance on the blockchain, even at this stage.

5

*See, e.g.*, *In re Tezos Sec. Litig.*, 2018 WL 4293341, at *8 (N.D. Cal. Aug. 7, 2018). Here, the only allegations cited describe users "creat[ing] an account on t[he] exchange" and the exchange "transfer[ring] the crypto-assets into one of its other addresses for storage" until the user directs a transaction. (*See* AC ¶¶ 32-33.) The AC is express that when a user wants to transact, "she tells the exchange the address into which **she would like *her* crypto-assets transferred**." (AC ¶ 33.) Thus, even accepting as true allegations that CBI custodies user assets, there is no dispute that users always control their digital assets and direct CBI where to transfer those assets (to another user, not CBI or CBGI). Any suggestion that Defendants pass title through these mechanics and therefore are direct "seller[s]" (AC ¶ 910), exalts form over substance and improperly ignores the reality of the transaction, which takes place between users with CBI acting as an intermediary. Plaintiffs point to no case finding that custody creates statutory seller liability, much less when users retain title to and control of the underlying assets. *Cf Refco*, 759 F. Supp. 2d at 330.

And for good reason: accepting Plaintiffs' novel theory would be nothing short of a return to the "substantial-factor test" the Supreme Court rejected in *Pinter* and would dramatically expand Section 12 liability to a wide-ranging universe of actors connected to (alleged) securities transactions. *Pinter*, 486 U.S. at 651 (rejecting test that "might expose securities professionals, such as accountants and lawyers, whose involvement is only the performance of their professional services"). Under *Pinter* and its progeny, even actors who are *essential* to transactions are not "sellers" under Section 12 absent well-pleaded allegations of passing title or solicitation. *Id.* at 650 n.25. This makes sense as "actions needed to carry out transactions" between others—such as settlement mechanics performed by depository institutions—do not involve "the formal weight of a transfer of title," even though "financial markets could not properly function" without them. *In*

6

*re Petrobras Sec. Litig.*, 150 F. Supp. 3d 337, 342 (S.D.N.Y. 2015).[5] As the Supreme Court recognized, "Congress knew of the collateral participation concept and employed it [elsewhere] in the Securities Act." *Pinter*, 486 U.S. at 650, n.26. Section 12's "failure to impose express liability . . . suggests that Congress did not intend that the section impose liability on participants collateral to the offer or sale. When Congress wished to create such liability, it had little trouble doing so." *Pinter*, 486 U.S. at 650. The Court should not ignore that guidance here.

### C. Plaintiffs Fail to Allege Successful Solicitation

Plaintiffs hardly attempt to defend their threadbare allegation of solicitation. (Opp. 17 (citing only AC ¶ 911).) The AC does not allege that any Defendant engaged in direct solicitation with any specific users—let alone that *Lead Plaintiffs* purchased Tokens as a result. *See Griffin v. PaineWebber, Inc.,* 2001 WL 740764, at *2 (S.D.N.Y. June 29, 2001) (dismissing §12(a)(2) claim where the pleading "describe[d] solicitation activities by [the underwriter] as they affected other putative plaintiffs, but . . . d[id] not allege that [the underwriter] was directly involved in the actual solicitation of [the named plaintiff's] purchase"). This is a far cry from the *direct* and *successful* solicitation required by the law. (Br. 11-12.)

## II. PLAINTIFFS' EXCHANGE ACT CLAIMS ARE NOT VIABLE

Plaintiffs concede there is no express private right of action in Sections 5 and 15(a) (Opp. 17-20), and make no attempt to address, much less overcome, "the presumption against implied rights of action." (Br. 14-15 (citing *Jordan v. Chase Manhattan Bank*, 91 F. Supp. 3d 491, 501 (S.D.N.Y. 2015)).) Instead, Plaintiffs seek to create a back-door under Section 29(b), a remedial

---

[5] Plaintiffs cite CBGI's most recent Form 10-Q to "confirm" that "[Coinbase] is the holder of crypto-assets traded on its platform, rather than Plaintiffs." (Opp. 7.) The cited statement is a risk disclosure in response to an SEC Staff Accounting Bulletin promulgated earlier this year, not a change to CBI's contractual and commercial relationship with its users. In any event, this statement does not save Plaintiffs' claims for the reasons discussed above, including that the User Agreement states that title and control remain with users even though CBI may hold assets in custody.

statute that does not independently proscribe any conduct. *See Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 205 (3d Cir. 2006) ("Section 29(b) itself does not define a substantive violation of the securities laws; rather, it is the vehicle through which private parties may rescind contracts that were made or performed in violation of other substantive provisions." (citing Second Circuit authority)). Under Plaintiffs' reasoning, a private plaintiff could sue under *any* underlying provision of the securities laws simply by claiming the right to rescission under Section 29(b). But Plaintiffs do not cite a single case where a Section 5 violation was "remediable under Section 29(b)." (Opp. 19.)[6] And as a recent decision in this District concluded, "there is no private right of action for rescission claims under §15(a)(1)." *Ema Fin., LLC v. Vystar Corp.*, 2021 WL 5998411, at *1 (S.D.N.Y. Dec. 20, 2021).

Plaintiffs cite only cases from outside this District, (Opp. 18-19),[7] but do not confront the fact that, with the exception of *Landegger v. Cohen,* 5 F. Supp. 3d 1278 (D. Colo. 2013), none of these courts analyzed the heavy presumption against private rights of action or whether Congress intended to create one. "Without a showing of congressional intent, 'a cause of action does not exist and courts may not create one . . . .'" *Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 116 (2d Cir. 2007); *see also Jesner v. Arab Bank, PLC*, 138 S. Ct. 1386, 1402 (2018) (noting the Supreme Court has recently "cast doubt on authority of courts' to . . . create private causes of action"). *Landegger*'s reasoning should be disregarded as at odds with decisions in this Circuit. *See, e.g., Olmsted v. Pruco Life Ins. Co. of N.J.*, 283 F.3d 429, 432 (2d Cir. 2002) (analyzing statute

---

[6] Plaintiffs' reliance on *Rhoades v. Powell*, 644 F. Supp. 645 (E.D. Cal. 1986) (Opp. 20), is misplaced as that court considered a claim for rescission based on alleged violations of Section 15(c), not Section 5. *Id.* at 664.

[7] One did not even address the issue at all. *See W. Fed. Corp. v. Erickson*, 739 F.2d 1439, 1443 n.5 (9th Cir. 1984) ("[W]e do not reach the issue whether the district court properly awarded summary judgment . . . under §§15(a) and 29(b) of the Securities Exchange Act of 1934.") Plaintiffs appear to imply that *Slomiak v. Bear Stearns & Co.* might be read to endorse rescission under Section 29(b) for an alleged violation of Section 15(a), but the decision contains no analysis of this issue. 597 F. Supp. 676, 682 (S.D.N.Y. 1984).

8

containing same "unlawful" language as Section 15(a) and holding that it did not provide a private right of action); *see also Goodman v. Shearson Lehman Bros.*, 698 F. Supp. 1078, 1086 (S.D.N.Y. 1988) (no private right of action under Section 15(a)(1)).

Even if Plaintiffs could overcome the presumption against private rights of action, the AC still fails to state a claim. Plaintiffs admit that the "User Agreement addresses both prohibited ***and non-prohibited*** transactions." (Opp. 21.) This is fatal: "Courts in this circuit have repeatedly held that contracts can be held unenforceable under §29(b) only when the contract 'on its face' ***requires*** the performance of an illegal act." *Tanzanian Royalty Expl. Corp. v. Crede CG III, Ltd.*, 2019 WL 1368570, at *13 (S.D.N.Y. Mar. 26, 2019); (Br. 18-19). This Court recognized this longstanding principle in *Madoff* (which the Opposition does not acknowledge), holding that an overarching lawful customer agreement was *not* subject to rescission under Section 29(b), *even if* underlying transactions made pursuant to it were unlawful. 605 B.R. at 589, 591 n.11 (citing *Zerman v. Jacobs*, 510 F. Supp. 132, 135 (S.D.N.Y. 1981)) (rejecting recission of transactions where there was "no suggestion that the basic customer agreement plaintiff signed is not lawful"); (Br. 19).

Plaintiffs try to avoid this necessary conclusion by arguing that "[e]ach of Plaintiffs' transactions on Coinbase is a separate contract" and therefore voidable. (Opp. 20-21.) Plaintiffs' so-called "hornbook" cases provide no basis to transform these transactions into contracts. (*Id.*) But decades of case law evaluating Section 29(b) claims does not consider transactions made pursuant to an overarching agreement to be rescindable individual contracts. *See Zerman*, 510 F. Supp. at 135 (rejecting claim of "rescission of all securities transactions engaged in" because "under § 29(b) of the Exchange Act, only unlawful *contracts* may be rescinded, not unlawful *transactions* made pursuant to lawful contracts") (emphasis in original); *see also Ema Fin., LLC v. Vystar Corp.*, 336 F.R.D 75, 81 (S.D.N.Y. 2020) (citing *Zerman*). Instead, only the overarching

9

contract itself can be rescinded. *Id.* Here, Plaintiffs cannot reasonably dispute that the User Agreement is the overarching contract that governs their relationship with CBI (UA at 1 ("This User Agreement governs your use of the services provided by [CBI]"))—including establishing the rules for transactions on the Platforms and the fees Plaintiffs seek to recover. (AC ¶ 36, Count III, Count IV; UA §3.3.) Thus, even if the underlying transactions themselves were unlawful contracts (they are not), the only contract that can be rescinded under Section 29(b) is the User Agreement; and because the User Agreement is lawful, rescission is unavailable as a matter of law. *Palmer v. Thomson & McKinnon Auchincloss, Inc.*, 474 F. Supp. 286, 291 (D. Conn. 1979) (rejecting that "Section 29(b) should not only apply to the basic contract between the parties but also to each transaction that occurs thereunder"); *Zerman*, 510 F. Supp. at 135.[8]

Independently fatal, Plaintiffs do not allege contractual privity with any Defendant for any *specific* individual transactions. Rather, they assert that they entered into agreements with "Coinbase." (AC ¶¶ 962, 985, 998.) This allegation not only fails to establish the requisite privity, but also the elements necessary to evaluate Plaintiffs' claims. *Pompano-Windy City Partners, Ltd. v. Bear Stearns & Co.*, 794 F. Supp. 1265, 1288 (S.D.N.Y. 1992) (finding allegations insufficiently pleaded because plaintiffs failed to aver when contracts were executed, the parties to the contracts, and what terms and provisions violated securities laws); (Br. 19-20). Plaintiffs do not respond to, much less refute, this separate ground for dismissal.

Finally, Plaintiffs' Section 29(b) claims are untimely. (Br. 21-22.) Plaintiffs' contention that "Defendants' argument for a one-year statute of limitations lacks a textual basis" (Opp. 22

---

[8] Plaintiffs ignore *Madoff* and *Vystar* but attempt to distinguish *Slomiak* and *Palmer* as "concern[ing] situations where the sole contract between the plaintiff and defendant was facially lawful and the plaintiff sought to rescind contracts with third parties." (Opp. 21.) But that is the exactly the case here: the sole contract between Plaintiffs and CBI is lawful, and Plaintiffs seek to rescind only underlying transactions with other users and related fee payments made pursuant to it. (Br. 18-19.) Regardless, those cases do nothing to disturb the holdings of *Madoff, Vystar*, and *Zerman*.

10

n.8) is wrong. *See Alpha Cap. Anstalt v. Oxysure Sys., Inc.*, 216 F. Supp. 3d 403, 408 (S.D.N.Y. 2016) ("There is a one-year statute of limitations for any implied cause of action under Section 29(b).").[9] And Plaintiffs' only response to *Anderson v. Binance*, 2022 WL 976824 (S.D.N.Y. Mar. 31, 2022), is that it was decided "incorrectly." (Opp. 23 n.9.) Section 29(b) has a one-year statute of limitations running from the discovery of the supposed violation—here, the purported failure to register. As Plaintiffs do not dispute that they joined the Platforms over a year before filing suit or that they were aware of the Platforms' registration status when they agreed to the User Agreement, Plaintiffs' claims are untimely. *See Binance*, 2022 WL 976824, at *3.[10]

### III. PLAINTIFFS' "SHORTHAND" PLEADING VIOLATES RULE 8

Plaintiffs concede that their "shorthand" conflates CBGI and CBI, but argue that such impermissible grouping should be allowed because the "Coinbase" entities "hold themselves out to the public as a single company" and they "*both* . . . violated securities laws." (Opp. 24-25.) But "lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct" fails Rule 8's minimum pleading requirements, *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001),[11] and ignores the well-settled principle that a parent corporation and

---

[9] Plaintiffs suggest that enforcing the statute of limitations would be unfair (Opp. 23), but under Plaintiffs' theory, users could join a platform knowing it is unregistered, trade for over a year and then seek to rescind unsuccessful trades. This result defies law and fairness. *In re Bernard L. Madoff Inv. Sec. LLC*, 773 F.3d 411, 423 (2d Cir. 2014) ("[S]tatutes of limitations reflect that, at a certain point, the need for finality is paramount. . . .").

[10] Plaintiffs discuss *Diskin v. Lomasney & Co.*, 452 F.2d 871 (2d Cir. 1971), because Defendants "appear to assume" a Section 12(a) limitations period applies. (Opp. 24.) Defendants do not. But even if so, while *Diskin* expressed concern about a limitations period running before an action could be brought, here the alleged failure to register started the clock, and Plaintiffs could have brought claims upon learning of that supposed issue. The date of Plaintiffs' transactions are of no import as Section 29(b) is a remedial statute—not an independent cause of action. *See Berckeley Inv. Grp.*, 455 F.3d at 205. And securities claims may be untimely "even before injury has occurred to a potential plaintiff, extinguishing a cause of action before it even accrues." *P. Stolz Fam. P'ship L.P. v. Daum*, 355 F.3d 92, 103 (2d Cir. 2004).

[11] Plaintiffs' cases are inapposite. *See, e.g.*, *In re Polaroid ERISA Litig.*, 362 F. Supp. 2d 461, 470 (S.D.N.Y. 2005) (considering an ERISA complaint, which, unlike a securities complaint, "need 'do little more than track the statutory definition' to establish a defendant's fiduciary status in compliance with Rule 8"); *Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372, 405 (S.D.N.Y. 2010) (evaluating a pleading that, unlike the AC, "distinguish[ed] [between] the
*(cont'd)*

its subsidiary are regarded as legally distinct entities. (Br. 22.) By Plaintiffs' logic, any time a plaintiff sues a subsidiary, the parent—along with the parent's officers and directors (*supra* §IV)—could face liability because of a plaintiff's "shorthand." Plaintiffs' last-ditch attempt is to invoke a "common enterprise" theory of liability (Opp. 26), but they fail allege this theory in the AC or to cite any case suggesting a plaintiff asserting securities claims can do so. *In re Amaranth Nat. Gas Commodities Litig.*, 587 F. Supp. 2d 513, 538-39 & n.162 (S.D.N.Y. 2008).

## IV. PLAINTIFFS FAIL TO REPAIR THEIR CONTROL PERSON CLAIMS

The AC fails to sufficiently allege control by CBGI or Armstrong over CBI. Plaintiffs do not address the case law demonstrating that conclusory allegations that CBGI "controls" CBI—primarily because it "wholly owns" CBI and "has the power to direct or cause the direction of the management and policies" of CBI (Opp. 28)—are insufficient. (Br. 24-25.) In asserting that they can plead these claims in the alternative, Plaintiffs fail to dispute that primary and control person liability cannot be based on the same alleged conduct. (Br. 26-27.)

Because the AC fails to allege activity by CBGI as a primary violator, Plaintiffs' allegations of Armstrong's purported control are even more specious now that Plaintiffs admit Armstrong is *not* CBI's CEO (Opp. 27 n.11), such that their allegations regarding Armstrong's supposed "control" of CBI by virtue of his position as CEO of "Coinbase" fall away. (AC ¶¶ 12, 41, 63, 951, 1011.)[12] Plaintiffs fail to offer a *single case* in support of their assertion that "the decision not to register as a securities exchange or a broker-dealer and the decision to list unregistered securities" is a "particularized basis" for liability that goes beyond mere allegations of Armstrong's status as

---

conduct of each of the . . . Defendants," and "[w]hen Plaintiffs [did] make certain allegations against the. . . Defendants as a whole, Plaintiffs assert[ed] a factual basis for doing so").

[12] Plaintiffs attempt to distinguish *Fezzani v. Bear, Stearns & Co.* by arguing the claims were time-barred, but ignore that "[t]he Court would also dismiss the control person claims against [the officer] *for failure to state a claim*." 384 F. Supp. 2d 618, 646 n.10 (S.D.N.Y. 2004).

an officer of CBGI. (AC ¶ 12; Opp. 29.) Instead, Plaintiffs assert, again without authority, that "[b]y controlling [CBGI], Armstrong necessarily controls its wholly-owned subsidiary." (Opp. 25.) Courts in this District have rejected similar arguments. (Br. 25-26.)[13]

## V.     PLAINTIFFS FAIL TO SAVE THEIR STATE LAW CLAIMS

Plaintiffs hardly respond to Defendants' arguments on why the state law claims should be dismissed, and concede that if their federal claims fail, so do these. (Opp. 29.) They also do not dispute that the relevant state statutes require privity (which is insufficiently alleged (Br. 28-29)) to recover for failure to register as a broker-dealer and to rescind a transaction, conceding these issues. *See In re UBS AG Sec. Litig.*, 2012 WL 4471265, at *18 n.18 (S.D.N.Y. Sept. 28, 2012).

Instead, Plaintiffs argue, without any authority, that the state statutes authorizing Exchange Act-equivalent claims do not require a "contract." (Opp. 29.) But "Section 25501.5 expressly requires privity of contract as a condition to liability . . . ." *Jackson v. Fischer*, 2015 WL 1143582, at *22 (N.D. Cal. Mar. 13, 2015). Florida and New Jersey law require the same. (Br. 28-29.) Finally, as Plaintiffs concede that Oberlander and Underwood joined the Platforms in 2017, their California and Florida registration-related claims are untimely. (*Supra* §II; Br. 29-30.)

## CONCLUSION

For the reasons discussed herein and in the Brief, the motion should be granted. Because Plaintiffs declined the opportunity to amend after reviewing this motion (ECF 50, n.1), yet still ask for leave to replead if the Court grants the motion, the AC should be dismissed with prejudice.

---

[13] Plaintiffs claim that culpable conduct does not need to be alleged (Opp. 28), but the AC belies this position: CBGI and Armstrong "*culpably participated.*" (AC ¶¶ 948, 954.) Beyond this mere recitation of the elements, the AC fails to plead culpable participation. The sole case Plaintiffs cite—*In re Vivendi*, 381 F. Supp. 2d 158 (S.D.N.Y. 2003)—noted that a plaintiff *must* allege culpable participation to plead a Section 20 claim. *Id.* at 189. *Vivendi* did not require culpable participation as an element of a Section 15 claim but recognized a split in this District as to that issue, *id.* at 188. Defendants respectfully submit that the better-reasoned decisions find that it is. *See, e.g.*, *Pub. Emps.' Ret. Sys. of Miss. v. Merrill Lynch & Co.*, 714 F. Supp. 2d 475, 485 (S.D.N.Y. 2010).

Dated: August 5, 2022
      New York, New York         Respectfully submitted,

/s/ *Jay B. Kasner*
Jay B. Kasner
Lara A. Flath
Alexander C. Drylewski
Abigail E. Davis
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
One Manhattan West
New York, NY 10001
Phone: (212) 735-3000
Fax: (212) 735-2000
jay.kasner@skadden.com
lara.flath@skadden.com
alexander.drylewski@skadden.com
abigail.sheehan@skadden.com

*Attorneys for Defendants*