UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CHRISTOPHER UNDERWOOD, *et al.*,

           Plaintiffs,

v.

COINBASE GLOBAL, INC., *et al.*,

           Defendants.

Case No. 1:21-cv-08353 (PAE)

---

## STIPULATED ELECTRONIC AND HARD COPY DISCOVERY ORDER

Pursuant to the agreement reached between Lead Plaintiffs Louis Oberlander, Henry Rodriguez ("Plaintiffs"), and Christopher Underwood and Defendants Coinbase Global, Inc., Coinbase, Inc., and Brian Armstrong ("Defendants") (each a "Party" and collectively, the "Parties"), the Court ORDERS as follows:

**I.     IDENTIFICATION OF RESPONSIVE INFORMATION**

The Parties shall meet and confer in an effort to conduct discovery of electronically stored information ("ESI") and documents in hard-copy format ("Hard Copy Documents") in an efficient and effective manner. Specifically, the Parties will attempt in good faith to come to an agreement on search and culling methods used to identify responsive information.

To that end, within fourteen (14) days of transmittal of responses and objections to a request for production of documents (or at a separate time agreed to by both Parties), the Parties will meet and confer regarding any proposed limitations on the scope of ESI and Hard Copy Document discovery. The producing Party will indicate which categories of documents will be collected or identified for review with and without the use of search terms or other advanced search methodology. No Party shall use predictive coding/technology-assisted review ("TAR") for the

purpose of culling documents for review and/or production without notifying the opposing party prior to use and with ample time to meet and confer in good faith regarding the use of such technologies. Each Party reserves its right to oppose the other Party's use of TAR.

Nothing in this Order shall be construed or interpreted as precluding a producing Party from performing a responsiveness review or a privilege review to determine if documents captured by search terms or other search methodologies are in fact relevant to the requesting party's request. Further, nothing in this Order shall be construed or interpreted as requiring the production of all non-privileged documents captured by any search term or other search methodologies if that document is in good faith and reasonably deemed not responsive to the requesting party's request.

The Parties further agree that, absent a showing of good cause, the following categories of ESI are presumed to be inaccessible and not discoverable:

- Deleted, slack, fragmented, unallocated, or other data only accessible by forensics.

- Temporary data stored in a computer's random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

- Online access data such as temporary Internet files, history, cache, and cookies.

- Data in metadata fields that are frequently updated automatically, such as last-opened dates.

- Data duplicated in any electronic backup system for the purpose of system recovery or information restoration, including but not limited to, system recovery backup tapes, continuity of operations systems, and data or system mirrors or shadows, if such data are routinely purged, overwritten or otherwise made not reasonably accessible in accordance with an established routine system maintenance policy;

- Back-up tapes or other long-term storage media that were created strictly for use as a data back-up medium.

- Electronic data (call logs, email, calendars, contact data, notes, etc.) stored on mobile devices (iPhone, iPad, Android, and Blackberry devices), if a copy of such electronic data is routinely saved elsewhere (such as on a server, laptop, desktop computer, or "cloud" storage).

- Logs of calls made from mobile devices.
- Server, system, or network logs.
- Data remaining from legacy systems no longer in use that is unintelligible on systems in use.

## II.   PRODUCTION OF ESI

The Parties will produce ESI as 300 DPI Group IV black and white Single-Page Tagged Image File Format (.TIFF or .TIF) files, with the exception of non-privileged MS-Excel files, other spreadsheets, and audio or video files, which shall be produced in native format. The TIFF files shall be produced in single-page format along with an image load file (.OPT file and/or .LFP file) and a delimited database/metadata load file (.DAT).  The database/metadata load file should contain the metadata fields listed in TABLE 1, attached.  The Parties are not obligated to populate manually any of the fields in TABLE 1 if such fields cannot be automatically extracted from a native document, except for the ALL CUSTODIANS, BEGDOC, ENDDOC, BEGATTACH, END ATTACH, PAGECOUNT, CONFIDENTIAL, REDACTED, DOC TYPE, and VOLUME fields, which must be populated. The Parties will make good faith efforts to automatically populate all other applicable fields. Producing Parties shall produce all ESI normalized to Coordinated Universal Time (UTC).

Production images will show any and all text and images that would be visible to the reader using the native software that created the document, such as tracked changes, speaker notes, and other such data that might not normally be printed or viewed.  For example, TIFF files of email messages should include the BCC line for emails which contain information in the BCC field.  If an original document contains color, is not produced in color, and color is necessary to understand the meaning or content of the document, reasonable requests for the production of specific documents as single-page, 300 DPI, color JPG images will not be unreasonably denied.

**III.     SYSTEM FILES**

Common system and program files as defined by the NIST library (which is commonly used by discovery vendors to exclude system and program files from document review and production) need not be processed, reviewed, or produced unless expressly requested by a Party's document request or otherwise agreed by the Parties.

**IV.     FAMILIES OF DOCUMENTS**

A document family consists of a document with its attachments, e.g., an email and its attachments.

Inline images and other embedded objects meant to be viewed in the body of any email (e.g. signature block logos, social media icons, etc.) should not be extracted from the parent email and produced as attachments. Instead, these embedded objects will be represented in the produced TIFF file.

For any documents that contain an attachment (for example, emails), the fields set forth in TABLE 1 reflecting any relevant parent-child relationship will be produced as part of the load file.

For the avoidance of doubt, hyperlinked documents do not fall within the parent-child relationship. Should the receiving Party seek a specific hyperlinked document, the receiving Party shall notify the producing Party in writing. If such hyperlinked document is in the producing Party's possession, custody, or control, the producing Party shall make reasonable efforts to produce it subject to the other terms of this Order.

**V.     DE-DUPLICATION**

Each party shall remove exact duplicate documents based on MD5 or SHA-1 hash values, at the family level. Attachments should not be eliminated as duplicates for purposes of review or production, unless the parent email and all attachments are also duplicates. De-duplication will be

done across the entire collection (global de-duplication) and the ALL CUSTODIANS field will list each custodian, separated by a semicolon, who was a source of that document. . Should a producing Party identify additional duplicates of ESI previously produced, that Party will timely provide an Overlay to allow the receiving Party to update the "ALL CUSTODIANS" and "ALL PATHS" fields. The Overlay shall comply with this Order and shall include all custodians and paths previously listed in prior productions and any custodians and paths newly identified.

If there are any handwritten notes or any other markings on a document, it shall not be considered a duplicate. Any document that contains an alteration, marking on, or addition to the original document shall be treated as a distinct version, and shall be produced as such unless privileged in nature. These alterations include, but are not limited to, handwritten notes, electronic notes/tabs, edits, highlighting, or redlining.

The Parties may meet and confer to determine whether additional means of suppressing duplicative information across documents from processing, review, or productions (*i.e.* near de-duplication) is appropriate.

## VI.   PRODUCTION OF FULL EMAIL THREADS

Parties must produce all responsive and non-privileged thread members and attachments and may not withhold from production any lesser inclusive thread members or attachments that are otherwise responsive to any document request and are not privileged.

## VII.   PRODUCTION OF MESSAGING DATA

The producing Party shall produce: (1) all messages within the scope of discovery set forth in the Federal Rules of Civil Procedure that are identified as responsive, (2) any proximate messages reasonably necessary to understand the context of a responsive message and, (3) at a minimum, the conversation or thread members sent in the twelve (12) hours before and twelve

(12) hours after a responsive message, so that documents produced contain a full twenty-four (24) hour set of messages.

Any responsive messaging data (e.g., Text Messages, WhatsApp, Skype, Telegram, iMessages, Slack, etc.) shall be produced in a reasonably usable format. Detailed specifications for the production of messaging data shall be agreed upon by the Parties so as to be consistent with the production of messages in twenty four (24) hour sets. Attachments or linked documents referenced in produced messages and conversations shall be produced upon request by the receiving party in a manner that preserves the relationship to the message or conversation. The Parties shall meet-and-confer as necessary to discuss the use of chat and other instant messaging systems, how best to identify relevant documents therein, and the proper format of production.

**VIII.   PRODUCTION OF NATIVE EXCEL FILES, OTHER SPREADSHEETS, AUDIO OR VIDEO FILES, AND PRESENTATION FILES**

MS-Excel files, other spreadsheets, and audio or video files shall be produced in native format with a TIFF placeholder slip-sheet bearing the legend "Document Produced in Native Format." The TIFF placeholder slip-sheet shall be endorsed with a sequential Bates number and the produced native file shall be named to match this Bates number. The metadata load file shall contain a link to the produced native file via data values called "Native Link." The Native Link values should contain the full directory path and file name of the native file as contained in the produced media.

Presentation files (including, but not limited to, PowerPoint files) shall be produced in native format in addition to the Bates-numbered TIFF files required by Section II above. The produced native file shall be named to match the Begin Bates number of the Bates-numbered TIFF files. The metadata load file shall contain a link to the produced native file via data values called

"Native Link." The Native Link values should contain the full directory path and file name of the native file as contained in the produced media.

To the extent that either party believes that specific documents or classes of documents, not already identified within this protocol, should be produced in native format, the Parties agree to meet and confer in good faith. Except for the circumstances described in Section XIII below, each Party shall produce document families in their entirety where any member of a document family is responsive.

## IX.   COMPRESSED FILE TYPES

Compressed file types (*e.g.*, .ZIP, .RAR, .CAB, .Z) should be decompressed so that the lowest level document or file is extracted.

## X.    PRODUCTION OF HARD COPY DOCUMENTS IN ELECTRONIC FORM

When reasonably possible, distinct Hard Copy Documents shall not be merged into a single record, and single Hard Copy Documents shall not be split into multiple records (i.e., Hard Copy Documents should be logically unitized). Any parent-child relationships (i.e., the association between an attachment, the child, and the document to which it is attached, the parent), are to be preserved to the extent they exist in the manner in which the Hard Copy Documents are maintained in the ordinary course of business. For example, if a Producing Party produces a printout of an e-mail with its attachments, it shall produce such attachments sequentially after the e-mail, and the relationship should be reflected in proper coding of the BegAttach and EndAttach. Likewise, in the case of an organized compilation of separate documents (e.g., a binder containing several separate documents behind numbered tabs), the document behind each tab should be scanned separately, but the relationship among the documents in the binder should be reflected in proper coding of the BegAttach and EndAttach.  The Parties will make reasonable efforts to unitize

documents correctly and in a manner that promotes efficient review and preserves original Hard Copy Document relationships.

When subjecting Hard Copy Documents to an optical character recognition ("OCR") process, the settings of the OCR software shall maximize text quality over processing speed. Other than redacted documents, the receiving Party shall not be required to rely upon a less accurate version of any available text than the producing Party.

Hard Copy Documents scanned prior to the entry of this Order are to be produced as ESI.

### XI. ENCRYPTION

To maximize the security of information in transit, any media and/or transfer mechanism through which documents are produced shall be encrypted and/or password protected. The producing Party shall transmit the encryption key or password to the receiving Party, under separate cover, contemporaneously with sending the encrypted media or link to the transfer mechanism. Any parties receiving productions from another party shall use reasonable good faith efforts to maintain the security and confidentiality of the relevant encrypted media or transfer mechanism.

### XII. BATES NUMBERING

Bates number and any confidentiality designation should be electronically branded on each produced TIFF image of ESI. For documents produced in native format, the Bates ranges or beginning Bates number of those documents shall be provided and included on any and all TIFF placeholder slip-sheets bearing the legend "Document Produced in Native Format."

### XIII. OVERLAYS

If a producing Party subsequently updates any information in a modified DAT and/or OPT file (commonly called "Overlays") the Overlays must not include new Bates numbers for

previously produced documents. For clarity, no Overlay shall contain new Bates numbers for documents already produced and must instead use the Bates numbers previously provided. Overlays must be complete and include separate lines for all documents previously produced by that Party at any time and must include all fields, including any updated fields. Updated fields in an Overlay must include previously produced information unless the update is intended to correct an error or otherwise overwrite the previously produced information. If an overlay adds attachments to an existing family, the Bates numbers for the new attachments shall be suffixes of the original parent Bates number.

### XIV.   PRIVILEGE LOGS

Pursuant to Rule 26(b)(5)(A), a party may redact documents or withhold documents which would otherwise be produced ("producible document") on the grounds of (1) attorney-client privilege; (2) protection under the work product doctrine; or (3) any other applicable privilege (collectively, "Applicable Privileges").

Additionally, because of the risk of harm to individuals, an otherwise producible document that contains personal medical, health, financial or personal identification records not relevant to this litigation or data protected by HIPAA ("sensitive personally identifying information" or "SPII," together with information protected by Applicable Privileges, "Protected Information") may be redacted to exclude SPII.

Documents subject to Applicable Privileges in their entirety, as well as non-responsive documents containing only SPII, may be withheld. A TIFF placeholder stating "Document Withheld for Privilege" or "Document Withheld for SPII" will be provided.

Documents with redactions will be produced as TIFF images with redactions. The redacted TIFF images will be processed with OCR, and the recognized text will be provided as the text file.

The text file will contain the language and redactions found in the TIFF images. Select metadata fields identified in TABLE 1 may be scrubbed only to the extent necessary to prevent disclosure of Protected Information, but not for any other reasons.

To the extent documents are redacted or withheld on the above grounds, the redaction legends should indicate the reason for the redaction. Except where it is not reasonably practicable, the Parties shall endeavor to redact privileged information in such a manner that allows the receiving Party to understand the basis for the redactions.

Nothing in this Order shall be interpreted to require the production of documents, material, or information that is protected by the attorney-client privilege, attorney work product protection, or any other applicable privilege or protection. In addition, nothing in this Section XIII shall limit the Parties' ability to provide a TIFF placeholder slip-sheet pursuant to Section VII above.

Pursuant to Federal Rule of Evidence 502(b), the production of a privileged or work-product-protected document, whether inadvertent or otherwise, is not a waiver of privilege or protection from discovery in the pending case or in any other federal or state proceeding. Disclosures among plaintiffs, or disclosures among defendants, of work product or other communications relating to issues of common interest shall not affect or be deemed a waiver of any applicable privilege or protection from disclosure. A producing Party may assert privilege or protection over produced documents at any time by notifying the receiving party in writing of the assertion of privilege or protection. Information that contains privileged matter or attorney-work product shall be returned immediately or destroyed if such information appears on its face to have been inadvertently produced, or if requested. The receiving party must return or destroy ESI that the producing Party claims is privileged or work-product-protected as provided in Rule 26(b)(5)(B).

A Party withholding documents based on one or more claims of privilege will produce a privilege log meeting the requirements of Rule 26(b)(5)(A) in accordance with the deadlines set forth in the Case Management Plan and Scheduling Order, Dkt. No. 105, entered by the Court on March 7, 2025. The Parties may modify the deadlines for production of the privilege logs by agreement or seek leave of the Court to extend the deadlines for the production of privilege logs for good cause.

To fulfill the requirements of Rule 26(b)(5)(A), a Party may elect to provide a "metadata" log combined with a categorical log. The "metadata" log will include the following metadata and information: Priv Log Number; Beg Bates; Group ID; To/From/CC/BCC; Date Sent; Author; Date Created. The metadata log will also identify attorney(s) with an asterisk next to such attorney's name. The log will also include a field indicating which privilege is being asserted and identify the applicable category from the categorical log. After reviewing the "metadata" log and categorical log, the Parties may make reasonable requests for more detailed information about particular documents within ten (10) days of receipt of a privilege log. The producing Party will use reasonable best efforts to provide an additional description for each document for which additional information was requested on a prompt basis that is reasonable in relation to the number of documents as to which additional information has been requested starting within at least twenty (20) days of such a request.

If a family of documents is entirely privileged, each document in the family shall be listed on the privilege log separately. In the event a family of documents exists that contains both privileged and non-privileged documents, the Parties agree that the privileged documents in the family may be replaced in the production with a TIFF placeholder slip-sheet indicating, "Document Withheld for Privilege." The withheld document will be logged and the remaining

11

non-privileged family will be produced. The Bates number for the document withheld in this manner will be provided in a TIFF placeholder slip-sheet. The Parties will meet and confer if there is a dispute as to whether a document withheld in this manner should be produced.

As to communications that post-date the filing of the complaint on October 8, 2021, the following communications do not need to be logged: (1) communications between a Party and its inside counsel, (2) communications between a Party and its outside counsel, (3) between a party's inside and outside counsel, related to this case that post-date the filing of the complaint – on October 8, 2021 – do not need to be logged. The Parties recognize the situation whereby non-privileged documents may be forwarded to a legal team for review, and that the very fact that the documents were grouped together and forwarded to counsel could be considered work product or protected by the attorney-client privilege. Thus, in the event there is a privileged email to either in house or outside counsel that would not have to be logged pursuant to this paragraph (*i.e.*, because it post-dated the filing of the complaint on October 8, 2021) and that has attachments to it that are responsive, non-duplicative, and not privileged in and of themselves, it is acceptable to produce those documents as though they were loose documents without any reference to the fact that they were part of an email family sent to counsel. For the avoidance of doubt, to the extent a parent email that *pre*-dates the filing of the complaint on October 8, 2021, is privileged in its entirety, but one or more of its attachments is responsive and not privileged in its entirety, the parent email should not be withheld and should instead be produced with appropriate redactions that are logged.

## XV.    MISCELLANEOUS PROVISIONS

The Parties agree to promptly alert each other concerning any technical problems associated with complying with this Order or if, upon further investigation, they should determine that compliance with any aspect of this Order presents undue burden or expense with respect to a

specific category of data or documents. Should variations from this Order be required, the Parties shall promptly confer in an effort to resolve these issues, and the Parties may reach written agreements on variations from this Order without requiring a formal amendment to this Order and without leave of the Court.

Nothing in this Order shall be construed to affect the discoverability or admissibility of any document or data. All objections to the discoverability or admissibility of any documents or data are preserved and may be asserted at the appropriate time. The Parties may agree to modify or waive the terms of this Order in writing signed by counsel for the affected Parties.

Nothing in this Order shall be deemed to limit, modify or override any provision of the Protective Order. In the event of any conflict between this Order and the Protective Order, the provisions of the Protective Order shall govern. Also, nothing in this Order is intended to or shall serve to limit a Party's right to conduct a review of documents or ESI (including metadata) for relevance, responsiveness or privilege.

Unless otherwise agreed to by the Parties or ordered by the Court, this Order shall govern only discovery concerning "the statutory seller issue" contemplated by the Court's February 7, 2025 Opinion & Order, Dkt. No. 94 at 25, and March 7, 2025 Case Management Plan and Scheduling Order, Dkt. No. 105 ¶ 7, and shall expire upon the Court's resolution of that issue.

**AGREED:**

*s/ Jordan A. Goldstein*
Jordan A. Goldstein
Oscar Shine
SELENDY GAY PLLC
1290 Sixth Avenue, 17th Floor
New York, NY 10104
jgoldstein@selendygay.com
oshine@selendygay.com

Steven L. Bloch
Ian W. Sloss
SILVER GOLUB & TEITELL LLP
1 Landmark Square – 15th Floor
Stamford, CT 06901
sbloch@sgtlaw.com
isloss@sgtlaw.com

*Attorneys for Plaintiffs and the Proposed Class*

*s/ Lara A. Flath (by consent)*
Jay B. Kasner
Lara A. Flath
Alexander C. Drylewski
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
One Manhattan West
New York, NY 10001
Telephone: (212) 735-3000
jay.kasner@skadden.com
lara.flath@skadden.com
alexander.drylewski@skadden.com

*Attorneys for Defendants Coinbase Global, Inc., Coinbase, Inc., and Brian Armstrong*

Dated: June 13, 2025
New York, New York

**SO ORDERED:**

*[signature: Paul A. Engelmayer]*

Paul A. Engelmayer
United States District Judge

14