UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CHRISTOPHER UNDERWOOD, *et al.*,

                              Plaintiffs,

-v-

COINBASE GLOBAL, INC., *et al.*,

                              Defendants.

21 Civ. 8353 (PAE)

ORDER

---

PAUL A. ENGELMAYER, District Judge:

This decision resolves a discovery dispute between the parties.

In this putative class action, plaintiffs bring claims against defendants Coinbase Global, Inc., Coinbase, Inc. (collectively with Coinbase Global, "Coinbase"), and Brian Armstrong ("Armstrong") under (1) the Securities Act of 1933 (the "Securities Act)"; (2) the Securities Exchange Act of 1934 (the "Exchange Act"); and (3) state law. *See* Dkt. 43 (the "AC"). Its gravamen is that Coinbase lists and sells digital assets qualifying as "securities" without registering with the U.S. Securities and Exchange Commission ("SEC") as a securities exchange or broker-dealer.[1]

On February 12, 2025, the Court denied Coinbase's motion for judgment on the pleadings pursuant to Rule 12(c). Dkt. 94.[2] In charting the next phase of this litigation, however, the Court noted that the viability of plaintiffs' claims under Section 12(a)(1) of the

---

[1] The Court has set out the factual background relevant to this controversy in its decisions resolving Coinbase's motions under Federal Rule of Civil Procedure 12(b)(6), Dkt. 71, and Rule 12(c), Dkt. 94 ("Rule 12(c) Decision").

[2] Plaintiffs' Securities Act and state law claims survived this Court's Rule 12(b)(6) decision of February 1, 2023 and the ensuing appeal. *See Oberlander v. Coinbase Glob. Inc.*, No. 23-184-cv, 2024 WL 1478773 (2d Cir. Apr. 5, 2024).

Securities Act (and as relevant, under state law) turned on the premise that Coinbase was a "statutory seller" under *Pinter v. Dahl*, 486 U.S. 622 (1988). The Court recognized the substantial efficiencies to be gained by front-loading resolution of the statutory-seller issue, given the potential for the resolution of that issue to resolve the outstanding claims. As such, it ordered that full discovery on that issue proceed first, followed by summary judgment motion(s) on that issue, with discovery and motions on other issues deferred until any motions on the statutory-seller issue are resolved.

Fact discovery on the statutory-seller issue is due to end on October 3, 2025.

On July 11, 2025, the parties filed a joint letter setting out their respective positions as to a discovery dispute. Dkt. 116. It centers on five requests for production ("RFPs") propounded by one party or the other as ostensibly germane to the statutory-seller issue. In particular, the parties dispute (1) plaintiffs' request for documents and communications "concerning how Coinbase users' crypto-assets may or may not be subject to claims by Coinbase's creditors in the event of its default or bankruptcy" ("Plaintiffs' RFP 16"); (2) Coinbase's request for documents and communications concerning plaintiffs' sale of Tokens[3] on Coinbase platforms and their use of investment advisors in connection with such transactions ("Coinbase's RFPs 5 and 9"); and (3) Coinbase's request for documents and communications concerning plaintiffs' accounting and tax treatment of the Tokens ("Coinbase's RFPs 13 and 14").

## I. Applicable Legal Principles

### A. Federal Rule of Civil Procedure 26(b)(1)

Federal Rule of Civil Procedure 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and

---

[3] Among the digital assets transacted on the Coinbase platforms are 79 digital assets known as the "Tokens." *See* Dkt. 94 at 3 n.2 (listing the Tokens).

proportional to the needs of the case," considering, *inter alia*, "the parties' relative access to relevant information," "the importance of the discovery in resolving the issues," and "whether the burden or expense of the proposed discovery outweighs its likely benefit." A matter is relevant if it encompasses "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). The party seeking discovery bears the burden of demonstrating its relevance. *See Trilegiant Corp. v. Sitel Corp.*, 272 F.R.D. 360, 363 (S.D.N.Y. 2010). "[R]elevance, for purposes of discovery, is an extremely broad concept." *Condit v. Dunne*, 225 F.R.D. 100, 105 (S.D.N.Y. 2004). Once relevance has been shown, it is up to the responding party to justify limiting discovery—for instance, based on undue burden. *See id.* at 106; *State Farm Mut. Auto. Ins. Co. v. Fayda*, No. 14 Civ. 9792, 2015 WL 7871037, at *2 (S.D.N.Y. Dec. 3, 2015) ("[T]he party resisting discovery has the burden of showing undue burden or expense."). District courts are vested with "wide discretion in [the] handling of pre-trial discovery." *In re Fitch, Inc.*, 330 F.3d 104, 108 (2d Cir. 2003).

### B. Statutory Seller Requirement

"[T]he list of potential defendants in a section [12(a)(1)] case is governed by a judicial interpretation of section 12 known as the 'statutory seller' requirement." *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 359 (2d Cir. 2010). A defendant can be held liable as a "statutory seller" in either of two scenarios. First, where the defendant "passed title, or other interest in the security, to the buyer for value," the buyer may recover from her "immediate seller" (but not from her "seller's seller"). *Pinter*, 486 U.S. at 642, 644 n.21. Second, a defendant can be held liable where it "successfully solicit[ed] the purchase [of a security], motivated at least in part by a desire to serve [its] own financial interests or those of the securities owner." *Id.* at 647; *see also In re Morgan Stanley*, 592 F.3d at 359.

3

## II. Discussion

The Court addresses the disputed RFPs in turn.

***Plaintiffs' RFP 16***: Plaintiffs' RFP 16 seeks from Coinbase: "All Documents and Communications relating to how and why Coinbase Users' Crypto-Assets may be subject to the claims, rights, or interests of Coinbase's creditors." Dkt. 116 at 1. It is undisputed that these documents are relevant. They have the capacity to shed light on whether (1) Coinbase users' digital assets were subject to claims by Coinbase's creditors in the event of its default or bankruptcy, and relatedly, (2) whether Coinbase maintained an ownership interest in the Tokens that qualified it as a statutory seller.

Coinbase, however, resists compliance with RFP 16. Coinbase has agreed to produce its written policies in effect between October 8, 2019 and March 11, 2022 that are responsive to the RFP. *Id.* But it has refused to produce "external custodial documents or other communications with regulators, auditors, shareholders, and users." *Id.* Coinbase urges plaintiffs, and the Court, to accept its representation that its external communications align with its written policies and so they do not provide any incremental information. *Id.* at 3–4.

That is wrong. Rule 26 entitles plaintiffs to test, by reasonable means, the premise that Coinbase, in its relationships with creditors, applied its policies as written and did so consistently. *See, e.g., Oppenheimer Fund*, 437 U.S. at 351 (Rule 26 authorizes discovery into "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case"); *Arch Assocs., Inc. v. HuAmerica Int'l, Inc.*, No. 93 Civ. 2168, 1994 WL 30487, at *1 (S.D.N.Y. Jan. 28, 1994) ("[I]t is well established that relevance for the purpose of discovery is broader in scope than relevance for the purpose of the trial itself."). And plaintiffs have identified language in Coinbase's filings with the SEC that underscores the

4

relevance of its communications with external parties such as regulators. *See* Dkt. 116 at 1–2 (quoting Coinbase's statement that "crypto assets we hold in custody on behalf of our customers could be subject to bankruptcy proceedings and such customers could be treated as our general unsecured creditors."). Plaintiffs have also grounded the relevance of the documents uniquely sought by RFP 16 in the Second Circuit's and this Court's prior holdings as to the statutory-seller issue. *See Oberlander v. Coinbase Glob. Inc.*, 2024 WL 1478773, at *4 (2d Cir. Apr. 5, 2024); Rule 12(c) Decision at 14–17.

Coinbase's labeling RFP 16 a "fishing expedition" does not make it so. *Id.* at 3. In contrast to the cases Coinbase cites, plaintiffs have come forward with non-speculative bases to support their claim of relevance. Plaintiffs have agreed, moreover, to forgo Coinbase's internal communications that are responsive to RFP 16 in order to accommodate its concerns that such would implicate privileged communications. *Id.* And Coinbase's "general and conclusory objections as to . . . burden are insufficient to exclude discovery of requested information." *MG Freesites Ltd. v. Scorpcast, LLC*, No. 22 Misc. 361 (PAE), 2023 WL 2822272, at *3 (S.D.N.Y. Apr. 7, 2023); *see also, e.g., Amphenol Corp. v. Fractus, S.A.*, No. 19 Misc. 160 (PAE), 2019 WL 2521300, at *6 (S.D.N.Y. June 19, 2019) ("If the party issuing the subpoena establishes the relevance of the materials sought, the burden then shifts to the movant to demonstrate an undue burden.").

At the same time, it is not clear to the Court that every document responsive to RFP 16 requires production for plaintiffs to fairly test Coinbase's premise. The Court accordingly directs Coinbase to produce documents sufficient to reliably reveal its actual treatment of Coinbase users' crypto assets vis-à-vis its creditors, *i.e.*, to show whether and to what extent these assets may be subject to the claims, rights, or interests of Coinbase's creditors. To that extent, the

5

Court orders Coinbase to produce the documents sought by RFP 16. The Court excepts from this directive the internal communications plaintiffs have elected to forgo.

***Coinbase's RFPs 5 and 9***: Coinbase's RFP 5 seeks from plaintiffs: "All Documents and Communications concerning Your sale, transfer, or disposition of any Tokens on the Trading Platforms." Dkt. 116 at 4. Its RFP 9 seeks: "From December 7, 2017 to the present, all Documents and Communications sufficient to identify Your use of the services of an investment advisor, broker, money manager, or financial advisor with respect to any of Your purchases, receipts, acquisitions, sales, transfers, or dispositions of any Token." *Id.* at 4–5. Coinbase argues that plaintiffs should be compelled to produce those documents because plaintiffs have alleged that "Coinbase is an intermediary in every transaction it effects . . . Coinbase stands between the buyer and seller in each trade on its platform . . .", AC ¶ 6. Because plaintiffs claim that Coinbase is the buyer when users sell Tokens, Coinbase argues, the circumstances of these sales are germane to the AC's allegations. *See* Dkt. 116 at 5.

For the reasons cited by Coinbase, the Court finds that RFPs 5 and 9 are proper. As the Court has noted, plaintiffs have argued that title and privity, for purposes of the statutory-seller issue, are "to be determined by reference to traditional principles of property law," and not merely by the language of Coinbase's user agreement. Rule 12(c) Decision at 15. And as Coinbase has argued, and plaintiffs have not disputed, at least some caselaw expounding on those "traditional principles" has treated both parties' conduct as germane to whether title passed. *See* Dkt. 116 at 5 n.12 (citing cases).[4] Plaintiffs respond that the circumstances of their sales of the Tokens are irrelevant, because "selling unregistered securities," as they allege

---

[4] At summary judgment, it may or may not prove correct that plaintiffs' beliefs as to the Token sales bear on title. But that decision will be for the Court, not plaintiffs, then to make.

6

Coinbase did, "is a strict liability offense" under Section 12(a)(1). Dkt. 116 at 6. But that argument misses the mark. Whether title passed to Coinbase, such that it is a proper defendant under Section 12(a)(1), is a question antecedent to liability.

Thus, the Court grants Coinbase's motion to compel as to RFPs 5 and 9.

***Coinbase's RFPs 13 and 14***: Coinbase's RFP 13 seeks from plaintiffs: "From December 7, 2017 to the present, all Documents or Communications concerning your personal accounting with respect to the Tokens including, but not limited to, brokerage account statements, communications with financial advisors, estate planning documents, and applications for credit." Coinbase's RFP 14 seeks: "From December 7, 2017 to the present, all Documents or Communications concerning your personal taxes with respect to the Tokens including, but not limited to, communications with the Internal Revenue Service, annual tax filings and returns and communications with tax experts or advisors." Coinbase argues that plaintiffs should be compelled to produce these documents because they bear on the question whether title passed to Coinbase.

Coinbase is correct. Documents responsive to RFPs 13 and 14 are clearly relevant. They have the capacity to show whether plaintiffs treated the Tokens in their Coinbase accounts as if title resided with them, rather than with Coinbase (as the AC alleges). And, as discussed above, both parties' conduct may be germane to the question whether title passed to Coinbase. Plaintiffs do not claim that collecting documents responsive to RFPs 13 and 14 would be burdensome. Instead, they argue that responsive tax documents may reflect their sensitive personal information. That argument is easily put aside. The Court has entered a protective order in this case that protects such information from public disclosure. Dkt. 112. And Coinbase has conceded that plaintiffs may properly redact "personally identifiable information, bank

7

account information, and fiat-related information that is not relevant to their holdings of digital assets." Dkt. 116 at 7.

Accordingly, the Court orders plaintiffs to produce documents responsive to RFPs 13 and 14. To the extent plaintiffs express concern about the disclosure of private information, the Court expects the parties to negotiate redactions responsive to that concern.

SO ORDERED.

*Paul A. Engelmayer*

PAUL A. ENGELMAYER
United States District Judge

Dated: July 17, 2025
New York, New York