February 4, 2026

VIA ECF
Hon. Paul A. Engelmayer
United States District Judge
Southern District of New York
Thurgood Marshall U.S. Courthouse
40 Foley Square, Room 2201
New York, New York 10007

   RE: *Underwood, et al. v. Coinbase Global, Inc.*, 1:21-cv-08353-PAE

Dear Judge Engelmayer:

  Defendants write in response to Plaintiffs' pre-motion letter regarding Plaintiffs' anticipated motion for partial summary judgment (ECF 146). For the reasons set forth below, Defendants intend to oppose Plaintiffs' motion.

  Notably, Plaintiffs do not seek summary judgment with respect to the overwhelming majority of transactions that occur on Coinbase's trading platforms—transactions in which Coinbase acts as an agent and matches a user's trade with that of another user—so-called "matched transactions." This is with good reason, as the undisputed facts show that, exactly as the Coinbase, Inc. User Agreement sets forth, users buy and sell from other users—not Defendants. It is also undisputed that, consistent with the User Agreement, Defendants did not hold or pass title to customers' digital assets in those transactions, nor did Defendants "successfully solicit" the purchase of any Tokens.[1]

  Instead, Plaintiffs seek partial summary judgment only with respect to a *de minimis* number of so-called "inventory transactions"—i.e., digital asset sales that Coinbase filled using its separate corporate inventory—which comprised a miniscule fraction of transactions occurring during the Class Period (at most, 0.3% to 0.5%). Discovery showed that such transactions occurred in only rare, "one-off" circumstances, such as maintaining customers' trade execution and processing times during unanticipated system disruptions or to fill orders that did not meet the minimum trade size for execution on the platform. Coinbase would not set the price for these transactions, but rather would fill them at the prices set by users. And Coinbase also did not seek to profit from these transactions; rather, it filled them as a customer accommodation irrespective of whether Coinbase would realize a profit or loss on the sale.

  The very evidence that Plaintiffs point to demonstrates just how *de minimis* these instances were. While their letter emphasizes the dollar amount of Coinbase's inventory transactions of Tokens during the Class Period (repeatedly claiming it to be "over $300 million"), they neglect to provide any context for this number. To start, the very document on which they rely expressly states that the estimate of Coinbase's U.S. user inventory transactions of Tokens—which are the only transactions at issue for Plaintiffs' broadest

---

[1] Defendants intend to move for summary judgment as to these transactions, as detailed in their pre-motion letter. (ECF 144.)

purported class of nationwide class of U.S. users—was $193 million, *not* $300 million. Even setting aside Plaintiffs' misleading overstatement, these volumes are a fraction of user transactions that occurred during the Class Period. Coinbase facilitated ***trillions of dollars*** in transactions during that time; thus, the $300 million figure Plaintiffs repeatedly cite conservatively represents less than 1% of Coinbase's overall transaction volume and the $193 million an even smaller fraction.[2]

Regardless, Defendants—not Plaintiffs—are entitled to summary judgment as to these transactions. As set forth in Defendants' pre-motion letter, these inventory transactions are exempt from liability under the Securities Act of 1933 and corresponding state statutory regimes because Coinbase did not act as an issuer, underwriter, or dealer in connection with these isolated sales. (ECF 144.)

Plaintiffs' suggestion that the Court cannot consider these arguments at this stage (ECF 146 at 2-3 n.2) is without merit and should be rejected. The Court ordered the Parties to "front-load resolution of the statutory seller issue, given the potential for the resolution of that issue to resolve the outstanding claims." (ECF 94 at 25.) If Coinbase's activity is exempt from statutory liability, it cannot be held liable as a statutory seller. Additionally, the availability of such exemptions turns on the operations and activities of the trading platforms—the precise subject of the parties' recently completed discovery. Thus, Plaintiffs can offer no reason why the Court should delay in ruling on these issues now, which will resolve Plaintiffs' claim that Defendants are liable as statutory sellers.

Finally, Defendants are compelled to correct the record in response to Plaintiffs' accusing Defendants of "blatantly misrepresent[ing] that Coinbase never acted as the direct seller of any of the Tokens" in prior briefing. (ECF 146 at 1.) Once again, Plaintiffs fail to provide appropriate context. The parties' briefing was directed to the sufficiency of the pleadings based on Plaintiffs' allegations and documents incorporated by reference, including the Coinbase User Agreement. Plaintiffs quote Defendants' motion to dismiss as follows: "[U]sers do not transact directly with, or pass title to or from, a Coinbase entity when they purchase the Tokens on the Platforms." (*Id.* (quoting ECF 59 at 9).) But Plaintiffs omit the preceding language, which states: "consistent with Plaintiffs' ***own allegations*** . . . characterizing 'Coinbase' as an intermediary, the ***User Agreement demonstrates that*** users do not transact directly with, or pass title to or from, a Coinbase entity . . . ." (ECF 59 at 9 (emphasis added).) Without question, Defendants were discussing the terms of the User Agreement and the allegations from Plaintiffs' own complaints, not representing that Coinbase could never fill any transactions using its own inventory in any circumstances.[3]

---

[2] As was made clear to Plaintiffs during discovery, corporate inventory information is not maintained in the ordinary course in a way that would allow Defendants to separate out U.S. user transactions. Thus, Defendants produced additional information to approximate the proportion of transactions filled from Coinbase Inc.'s corporate inventory for users based in the United States.

[3] Plaintiffs cannot feign surprise at the existence of these corporate inventory transactions, as such activity was consistently disclosed in public filings with the Securities and Exchange Commission (which Plaintiffs

Hon. Paul A. Engelmayer
February 4, 2026

Accordingly, Defendants intend to oppose Plaintiffs' motion for summary judgment and look forward to discussing these issues with the Court on February 13.

Respectfully submitted,

/s/ *Lara A. Flath*
Jay B. Kasner
Lara A. Flath
Alexander C. Drylewski
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
One Manhattan West
New York, NY 10001
Telephone: (212) 735-3000
jay.kasner@skadden.com
lara.flath@skadden.com
alexander.drylewski@skadden.com

*Counsel for Defendants Coinbase Global, Inc., Coinbase, Inc., and Brian Armstrong*

cc:    All counsel of record (via ECF)

---

themselves cite in their Amended Complaint). Additionally, discovery was required to determine whether any Plaintiff was a party to any inventory transactions in the Tokens.