# Selendy|Gay



January 28, 2026

**Via ECF**

Hon. Paul A. Engelmayer
United States District Court
Southern District of New York
40 Foley Square, Room 2201
New York, New York 10007

Re:    *Underwood v. Coinbase Global, Inc.*, No. 1:21-cv-8353 (PAE) (S.D.N.Y.)

Dear Judge Engelmayer:

Plaintiffs respectfully submit this pre-motion letter in support of their anticipated motion for partial summary judgment that Defendants are "statutory sellers" for purposes of Section 12(a)(1) of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. § 77*l*(a)(1), and analogous state laws.

In its prior submissions to this Court, Defendants blatantly misrepresented that Coinbase never acted as the direct seller of any of the Tokens. *See, e.g.*, Defs.' Motion to Dismiss, Dkt. 59, at 2 ("Plaintiffs cannot plead that any Defendant directly transacted with them."); *id.* at 9 ("[U]sers do not transact directly with, or pass title to or from, a Coinbase entity when they purchase the Tokens on the Platforms"); Defs.' Am. Answer Am. Compl. ¶ 2, Dkt. 115 (denying that Coinbase "sell[s] digital assets to Users"). That is flatly untrue, as Coinbase subsequently admitted in discovery. Rather, Coinbase now concedes that it *is*, in fact, the direct seller from its corporate inventory of over $300 million worth of the Tokens to users, including Plaintiffs.

**Material Undisputed Facts.** Coinbase operates two trading platforms at issue in this case: Coinbase Advanced (a/k/a Coinbase Pro) and Coinbase Simple (a/k/a Coinbase Consumer). Coinbase Advanced allows users to view the live order book, see resting bids and asks, and decide whether to post their own orders or transact against existing orders. Coinbase's internal matching engine then pairs counterparties and executes trades. Coinbase Simple provides an instant firm price that Coinbase guarantees at which a user can transact for a brief period of time, quoted by Coinbase. When a Coinbase Simple user accepts the quoted price, Coinbase executes the purchase order by matching it against existing sale orders. In either case, Coinbase profits from the transaction by taking a percentage fee based on the size of the transaction. For purchases made on Coinbase Simple, Coinbase further profits by charging the purchaser a "spread" on top of the prevailing market price of an asset. *See, e.g.*, CB00012696, at -700.

Defendants admit that Coinbase Simple transactions are filled from Coinbase's corporate inventory, with Coinbase acting as principal, in at least three circumstances: (1) orders smaller than a minimum order size (which varies by asset), (2) orders made during temporary slowdowns or interruptions in Coinbase's trading systems, and (3) orders for certain newly introduced crypto-assets for which active trading volume and market

Hon. Paul A. Engelmayer
January 28, 2026

depth are initially limited. *E.g.*, CB00012789, at -804–05. During the Class Period, Coinbase directly sold more than $300 million worth of the Tokens from its own corporate inventory to users, including Plaintiffs. *See* CB00013086.

**Standard of Review.** A movant seeking full or partial summary judgment "must 'show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *DeMaria v. N.Y. State Unified Ct. Sys.*, 2025 WL 2298452, at *4 (S.D.N.Y. Aug. 8, 2025) (quoting Fed. R. Civ. P. 56(a)).

**Argument.** "The list of potential defendants in a Section 12(a)(1) case is governed by a judicial interpretation of Section 12 known as the 'statutory seller' requirement." *Oberlander v. Coinbase Glob. Inc.*, 2024 WL 1478773, at *1 (2d Cir. Apr. 5, 2024) (cleaned up) (quoting *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 359 (2d Cir. 2010)). A defendant is a "statutory seller" where it directly "passed title, or other interest in the security, to the buyer for value." *Pinter v. Dahl*, 486 U.S. 622, 642 (1988).[1] "At the very least," Section 12(a)(1) "contemplates a buyer-seller relationship not unlike traditional contractual privity. Thus, it is settled that [Section 12(a)(1)] imposes liability on the owner who passed title, or other interest in the security, to the buyer for value." *Id.* at 642.

Here, the undisputed evidence shows that "Coinbase will use corporate inventory to fill Consumer transactions" under certain circumstances. CB00012789, at -804. "For any orders that are filled with corporate inventory, Coinbase would have control of the Digital Assets that are delivered to the User prior to them being delivered." *Id.* In a non-public letter to the Securities & Exchange Commission, Coinbase admits that "[w]hen the Company is directly involved and primarily responsible for fulfilling a customer Crypto Asset order, it is the principal in that transaction as there is no other counterparty providing a good or service to the customer." CB00012696 (Oct. 15, 2020 letter), at -703 n.14. In corporate testimony pursuant to Fed. R. Civ. P. 30(b)(6), Coinbase concedes it is the "direct seller" or "dealer" in all corporate inventory transactions. *See, e.g.*, 10/3/2025 Brent Paget Dep. Tr. 140:20–141:2 (agreeing that in some cases "Coinbase acts as a direct seller of crypto assets"). In response to Plaintiffs' discovery requests, Coinbase admits—and neither of its two experts contests—that it sold more than $300 million in Tokens from its corporate inventory during the Class Period, including to Plaintiffs. Plaintiffs will therefore move for partial summary judgment that Coinbase is a statutory seller as to Tokens sold from its corporate inventory.[2]

---

[1] Alternatively, a defendant is a statutory seller under 12(a)(1) when it "successfully solicits the purchase, motivated at least in part by a desire to serve [its] own financial interests or those of the securities owner." *Pinter*, 486 U.S. at 647.

[2] Coinbase is also a statutory seller as to other Tokens it offers or sells. However, because certain material facts may be in dispute as to these transactions, Plaintiffs are not seeking summary judgment at this time on such issues. To the extent Coinbase argues that certain transactions are exempt from liability pursuant to Section 4(a) of the Securities Act, any

Hon. Paul A. Engelmayer
January 28, 2026

Respectfully submitted,

| SELENDY GAY PLLC | SILVER GOLUB & TEITELL LLP |
|---|---|
| /s/ *Jordan A. Goldstein* | /s/ *Steven L. Bloch* |
| Jordan A. Goldstein | Steven L. Bloch |
| 1290 Avenue of the Americas, 20th Floor | 1 Landmark Square, 15th Floor |
| New York, NY 10104 | Stamford, CT 06901 |
| (212) 390-9008 | (203) 325-4491 |
| jgoldstein@selendygay.com | sbloch@sgtlaw.com |

*Counsel for Plaintiffs and Proposed Class*

cc:     All counsel of record (via ECF)

---

such argument is premature because, at this stage, the Court has directed the parties to resolve only whether Defendants are statutory sellers for purposes of Section 12(a)(1). Plaintiffs will address the status of each Token as a security and the inapplicability of any exemptions from registration following plenary merits discovery.