**Selendy|Gay** 

February 4, 2026

<u>Via ECF</u>

Hon. Paul A. Engelmayer
U.S. District Court, S.D.N.Y.
40 Foley Square, Room 2201
New York, New York 10007

Re:  *Underwood v. Coinbase Global, Inc.*, No. 1:21-cv-8353 (PAE) (S.D.N.Y.)

Dear Judge Engelmayer:

Plaintiffs respectfully submit this letter in response to Defendants' January 28, 2026, pre-motion letter ("Defendants' Letter," ECF No. 144), concerning whether Defendants are "statutory sellers" of the Tokens.

I.  **Coinbase Is the "Direct Seller" as to All Corporate Inventory Transactions**

Defendants do not contest that Coinbase is the direct seller of all Tokens sold from its corporate inventory. Although Defendants characterize the volume of such transactions as "limited," it is undisputed that they totaled over $300 million during the Class Period. *See* CB00013086. Defendants' claim that "they are exempt" from Section 12(a)(1) liability pursuant to 15 U.S.C. § 77d(a)(1) and (3), Defs.' Ltr. 3 & n.3, fails at multiple levels. This issue is not ripe for resolution at this stage because it does not implicate "whether Coinbase qualifies as a 'statutory seller' amenable to suit under Section 12(a)(1)," Op. & Order 2, ECF No. 94, but instead turns on whether the transactions in question are exempt from the Securities Act's registration requirements. Resolving those questions on a transaction-by-transaction basis falls far outside the scope of the statutory seller issue and would require full-blown merits discovery. For example, "if any person involved in a transaction is a statutory underwriter, then none of the persons involved may claim exemption under [§ 77d(a)(1)]." *S.E.C. v. Kern*, 425 F.3d 143, 152 (2d Cir. 2005). In addition, any transactions deemed to have been made "by a dealer" are not exempt if they either took place "prior to the expiration of forty days after the first date upon which the security was bona fide offered to the public" or involved "securities constituting the whole or a part of an unsold allotment to or subscription by such dealer as a participant in the distribution of such securities by the issuer or by or through an underwriter." 15 U.S.C. § 77d(a)(3)(A), (C). Resolving these fact-specific questions concerning whether the Tokens are exempt from registration goes far beyond the "discrete issue" on which the parties conducted discovery and that the Court directed the parties to resolve at this stage: whether Coinbase qualifies as a "statutory seller" amenable to suit under Section 12(a)(1).

II.  **Substantial Evidence Supports a Finding That Coinbase Is the "Direct Seller" in All Transactions on Coinbase Simple**

On Coinbase Simple, Coinbase determines and quotes a firm purchase price to prospective buyers. *See* 9/26/25 Nadav Night Dep. Tr. 168–69. If that price is accepted,

Hon. Paul A. Engelmayer
February 4, 2026

Coinbase fulfills the order in one of two ways. *First,* in specified circumstances detailed in Plaintiffs' January 28, 2026, pre-motion letter (ECF No. 146), Coinbase "fulfills customer orders using its own inventory." CB00012696, at -702. In such circumstances, Coinbase concedes it "is the principal in that transaction." *Id.* at -703 n.14. *Second*, for all other purchase orders on Coinbase Simple, Coinbase itself, after first determining a price for the transaction, CB00012955, at -58, "carries out a contemporaneous purchase on the [order book] to fulfill the sale," *id.* at -78, and routes the trade through its wholly owned "operational clearance account" before settling the transaction with the buyer, CB00012696, at -701; 10/3/2025 Brent Paget Dep. Tr. 137–39, 149. In addition, from the beginning of the Class Period until February 2021, all purchase orders that could not be matched with a corresponding sale order within 250 milliseconds were "batched" (*i.e.*, aggregated) into Coinbase's "trading omnibus wallet" along with other orders involving the same trading pair for Coinbase itself to then execute as a single "net order," again, with Coinbase acting as the seller of the Tokens. 9/26/25 Nadav Night Dep. Tr. 243–50; CB00012696, at -702. Moreover, for all purchases on Coinbase Simple, Coinbase quoted a firm price for each sale and thereby assumed market risk as to each transaction. CB00012696, at -714; 11/17/25 Expert Report of Kapil Jain ("Jain Report") ¶¶ 50–51; 12/12/25 Rebuttal Expert Report of Kapil Jain ("Jain Rebuttal Report") ¶¶ 22–26.

Like an underwriter or dealer in traditional finance, Coinbase acquires assets from either issuers or the market, then delivers them to Coinbase Simple customers who have agreed to buy them. *See* Jain Report ¶ 27(b) & n.35 (describing traditional dealers); Jain Rebuttal Report ¶ 23 (discussing Coinbase Simple). Further, a sale on Coinbase Simple occurs at a price determined and guaranteed by Coinbase, 9/26/25 Nadav Night Dep. Tr. 117–20, *not* at a price set by any particular user. Coinbase thus assumes market risk for the transaction. *See* Jain Rebuttal Report ¶ 26 (contrasting Coinbase Simple with traditional stock exchanges because Coinbase "bear[s] inventory exposure" and "guarantee[s] the execution price"). To compensate itself for that risk, Coinbase adds a "spread" to the price a user has proposed. Jain Report ¶ 105; CB00012696, at -700. The record thus supports the finding that Coinbase, acting as a principal, "passed title, or other interest in [each Token], to the buyer for value" as to all transactions on Coinbase Simple, making Coinbase a statutory seller under "prong 1" of *Pinter v. Dahl*, 486 U.S. 622, 642 (1988).

### III. Substantial Evidence Supports a Finding That Coinbase Solicits Sales on Both Coinbase Simple and Coinbase Advanced

"The applicability of § 12 liability to brokers and others who solicit securities purchases has been recognized frequently." *Id.* at 646. In *Pinter*, the Supreme Court reaffirmed the established principle that "when a broker acting as agent of one of the principals to the transaction successfully solicits a purchase, he is a person from whom the buyer purchases within the meaning of § 12 and is therefore liable as a statutory seller." *Id*. Coinbase Simple and Coinbase Advanced meet these criteria.

On Coinbase Simple, Coinbase admits that its role "is akin to that of a 'broker.'" CB00012955, at -961(June 30, 2020 letter to SEC). Specifically, "Coinbase acts as an agent that facilitates the purchase and sale of Digital Assets for Users by executing buy and sell orders on the [Coinbase] Trading Platform to fulfill purchases and sales in exchange for a

2

Hon. Paul A. Engelmayer
February 4, 2026

commission." *Id.*; *accord* 10/3/2025 Brent Paget Dep. Tr. 82. Coinbase also solicits purchases on Coinbase Simple by offering users a firm price that is set at Coinbase's discretion, as detailed in Section II above. *See* 9/26/2025 Nadav Night Dep. Tr. 116, 218, 224–28. Thus, in addition to being a direct seller under "prong 1" of *Pinter*, Coinbase "successfully solicits the purchase" of each Token on Coinbase Simple (at a price of Coinbase's choosing), "motivated at least in part by a desire to serve [its] own financial interests," thus making it a statutory seller under "prong 2" of *Pinter*, 486 U.S. at 647.

On Coinbase Advanced, Coinbase similarly describes its "business model [as] similar to a broker-dealer or a financial exchange, providing Users the ability to buy, sell, or transfer Digital Assets." CB00012955, at -959. Specifically, Coinbase acts "as an agent of both the buyer and the seller" on Coinbase Advanced by "matching a transaction for the buyer" and separately "matching a transaction for the seller." 10/3/2025 Brent Paget Dep. Tr. 150–51. As the seller's agent, "Coinbase is translating what the … [seller] would be willing to sell, in the case of a buy example, of where they would be willing to sell their crypto, and communicating that back to the [buyer] in terms of a price." 9/26/2025 Nadav Night Dep. Tr. 217. And Coinbase successfully solicits each purchase on Coinbase Advanced—partly to benefit itself financially through the fee it charges on every transaction—by displaying to users "real time data on bid and ask prices, trading volume, trade history, and order books" for each Token. CB00012955, at -958. Displaying prices is the *sine qua non* of solicitation, as "investors seek[] to buy low and sell high," *Lowinger v. Morgan Stanley & Co. LLC*, 841 F.3d 122, 131 (2d Cir. 2016), and any purchase on Coinbase Advanced is made as a result of the displayed price. Accordingly, Coinbase is a statutory seller under "prong 2" of *Pinter* as to all trades on Coinbase Advanced because it solicits each trade that occurs on the platform at least partly for its own financial benefit.

### IV. Plaintiffs Have Class Standing As To State Claims By Absent Class Members

Defendants do not dispute that Plaintiffs have standing to prosecute claims as to the 60 Tokens they purchased, including under the laws of states other than Plaintiffs' own. *See generally Langan v. Johnson & Johnson Consumer Cos.*, 897 F.3d 88, 96 (2d Cir. 2018) ("[W]hether a plaintiff can bring a class action under the state laws of multiple states is a question of predominance under Rule 23(b)(3), not a question of standing under Article III."); *In re Namenda Indirect Purchaser Antitrust Litig.*, 338 F.R.D. 527, 571 (S.D.N.Y. 2021) ("Whether the existence of state-law claims precludes certification is no different from the rest of the predominance inquiry."). Plaintiffs do not seek to prosecute claims as to Tokens purchased solely by non-party Louis Oberlander.

3

Hon. Paul A. Engelmayer
February 4, 2026

Respectfully submitted,

| | |
|---|---|
| SELENDY GAY PLLC | SILVER GOLUB & TEITELL LLP |
| /s/ Jordan A. Goldstein | /s/ Steven L. Bloch |
| Jordan A. Goldstein | Steven L. Bloch |
| 1290 Avenue of the Americas, 20th Floor | 1 Landmark Square, 15th Floor |
| New York, NY 10104 | Stamford, CT 06901 |
| (212) 390-9008 | (203) 325-4491 |
| jgoldstein@selendygay.com | sbloch@sgtlaw.com |

*Counsel for Plaintiffs and Proposed Class*

cc:   All counsel of record (via ECF)

4